## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

**HANKINS**                                           **CIVIL ACTION**

**VERSUS**                                            **NUMBER 21-1129**

**WHEELER**                                           **SECTION "L"(1)**

### ORDER AND REASONS

Before the Court are the following motions to dismiss: the "HANO Defendants' Rule 8 and Rule 12(b)(6) Motion to Dismiss Plaintiff's First Amended Complaint," R. Doc. 38; "Motion to Partially Dismiss Plaintiff's First Amended Complaint for Failure to State a Complaint on Which Relief May Be Granted" filed by Michael Brenckle, Jamel Brown, Hurstville Security and Neighborhood Improvement District, Darnell Laurent, Kerry Najolia, Orleans Levee District Police, Carl Perilloux, Thaddeus Petit, Ramon Pierre, Kevin Wheeler, and the Southeast Louisiana Flood Protection Authority – East, R. Doc. 39; and the "Lakefront Management Authority's Rule 8 and Rule 12(b)(6) Motion to Dismiss Plaintiff's First Amended Complaint," R. Doc. 40. Plaintiff filed oppositions to each motion. R. Doc. 44 (opposition to R. Doc. 39); R. Doc. 45 (opposition to R. Doc. 38); R. Doc. 60 (in opposition to R. Doc. 40). Defendants replied. R. Doc. 53 (reply to opposition to R. Doc. 39); R. Doc. 55 (reply to opposition to R. Doc. 38); R. Doc. 65 (reply to opposition to R. Doc. 40). Considering the briefing and oral argument of counsel, the record, and the applicable law, the Court now rules as follows.

### I.   BACKGROUND
#### A.  Events

This case arises out of the alleged traffic stop of Plaintiff Bilal Hankins, a Black man, and two other Black males by law enforcement officers who were working a private security detail in New Orleans on Saturday, June 13, 2020. R. Doc. 22 at 1-4. Plaintiff, who was 18-years-old at the

1

time of the incident, alleges that he was socializing at his family's long-time residence in Uptown New Orleans that night with his friend, Tahj Pierre, a college student. *Id.* at 12. Also present with Hankins and Pierre were Diondra Robbins, who leased an apartment in the front of Hankins's family's home, and Robbins's 12-year-old nephew, L.M.[1] *Id.*

After mingling for a period of time, the four individuals realized that Robbins's white chihuahua, Duchess, was missing. *Id.* Duchess allegedly had an "underlying condition for which she needed medication, so it was important to find her quickly." *Id.* Around 11:30 p.m., Plaintiff, Pierre, and L.M. entered Pierre's black BMV—a high school graduation from Pierre's mother— to search for Duchess. *Id.* Pierre sat in the driver's seat. L.M. sat next to him in the front passenger seat, while Plaintiff occupied the rear driver's side seat. Pierre allegedly drove slowly down Camp Street heading west, calling and whistling for the dog. *Id.*

After driving a few blocks, the group observed a white police officer wearing an Orleans Levee District-Police Department ("OLD-PD") uniform. The officer sat in a parked OLD-PD car at the intersection of Camp and Valmont Streets. *Id.* The officer, Defendant Kevin Wheeler, was an off-duty employee of the OLD-PD who was working a private detail for the Hurstville Security and Neighborhood Improvement District ("Hurstville"), a political entity that employs law enforcement officers to patrol the neighborhood. *Id.* at 5. Plaintiff alleges that two entities— the Southeast Louisiana Flood Protection Authority-East ("SLFPA-E") and the Lakefront Management Authority ("LMA")—exercise authority over the OLD-PD. *Id.* at 5.

Pierre allegedly drove alongside Officer Wheeler's vehicle while Plaintiff waived to Officer Wheeler and asked if he had seen a dog. *Id.* at 13. When Officer Wheeler said "No,"

---

[1] The record refers to Robbins's minor-aged nephew only as "L.M."

Plaintiff explained that they were searching for a dog and provided a description of Duchess. Plaintiff asked Officer Wheeler to assist with the search. *Id.*

Plaintiff and his friends continued to drive around searching for Duchess. Unbeknownst to the group, Officer Wheeler allegedly called Defendant Officer Ramon Pierre for backup. Officer Pierre was an off-duty employee of the police department of the Housing Authority of New Orleans ("HANO"). *Id.* at 4. Like Officer Wheeler, Officer Pierre was working that night as a private patrol officer for Hurstville. He was in plain clothes and driving an unmarked vehicle. *Id.* at 13-14.

Officer Wheeler allegedly informed Officer Pierre of his encounter with Plaintiff. Officer Wheeler expressed skepticism that Plaintiff was truly searching for a dog. Officer Wheeler allegedly based his skepticism on the slow speed at which Pierre was driving and his belief that "it was common for 'certain people' to drive slowly in search of potential targets for burglary and carjacking, leaning out of windows and pulling on car door handles to see if they were unlocked." *Id.* Officer Wheeler also allegedly ran a license plate check on Pierre's BMW; the check showed that the vehicle had not been reported as stolen.

The officers, each in their respective vehicles, followed Plaintiff and his companions for several blocks. *Id.* at 14. The officers allegedly "decided together to conduct an illegal traffic stop." *Id.* at 15.

After driving slowly for several more blocks, the officers turned on their vehicles' flashing lights. *Id.* at 15. Plaintiff and his friends allegedly kept driving at the same slow speed because they initially did not believe that the flashing lights were for them given that they had approached Officer Wheeler for help. Instead, Plaintiff and his friends assumed the police were called to some other emergency and that officers were flashing their car lights to signal that they

needed to pass. *Id.* Pierre thus turned down a side street to allow the officers to continue along the narrow road they were driving along. But, to the group's surprise, the officers turned down the same side street. *Id.* Officer Wheeler then allegedly ordered the driver, Pierre, to exit the car with his hands up. *Id.* Pierre quickly complied, pulling over near a neighborhood elementary school and exiting the BMW with his hands up. *Id.* at 15-16.

As Pierre did so, Plaintiff put his hands out the car window to show he was unarmed, and L.M. moved his head outside of the window to see what was happening. *Id.* at 16. Plaintiff and his friends saw that both officers were brandishing firearms at them. *Id.*

Attempting to remain calm, Plaintiff asked the officers the reason for the stop. Officer Wheeler stated that he had run a license plate check showing that the car was registered to a woman in New Orleans East, a neighborhood located across the city. *Id.* at 17. Officer Wheeler allegedly demanded to know what the group was doing in this neighborhood. *Id.* Plaintiff explained that he resided in the neighborhood, that Pierre was visiting, and that the car was registered to Pierre's mother, who lived in New Orleans East. *Id.* Plaintiff suggested that Officer Wheler check the address on Pierre's driver's license. *Id.* Plaintiff stated that the address on the license would match the address on the car registration. *Id.* at 17. Pierre then produced his license. Officer Wheeler took Pierre's license and returned to his patrol car. *Id.* Meanwhile, Officer Pierre "kept his weapon up, providing cover." *Id.*

When Officer Wheeler returned from his vehicle, "his whole demeanor changed." *Id.* at 17. Officer Wheeler asked Plaintiff to repeat the details about the lost dog and to provide his address. Officer Wheeler allegedly then said, "I thought you guys were yanking my chain," adding, in an attempt at a joke, "you know, three young men, in a nice car, in this neighborhood." *Id.* The officers allowed Plaintiff, Pierre, and L.M. to leave. *Id.* at 18.

4

Plaintiff alleges that, following the incident, Officers Wheeler and Pierre conspired to coverup their conduct. Specifically, Officer Wheeler allegedly submitted false narratives in his police reports documenting the incident and knowingly made false statement in post-incident interviews. *Id.* at 22. For example, he allegedly falsely stated that both officers decided to conduct the stop based on their shared suspicion that Plaintiff and his friends were engaged in or about to engage in car burglary or carjacking and that Plaintiff and his friends violated traffic laws by failing to wear a seatbelt and driving the wrong way on a one-way street. *Id.* at 18-19. And Officer Pierre's police report allegedly omitted material facts that would have contradicted Officer's Wheeler's report. Officer Pierre also allegedly made a material misstatement in his post-incident interview when he denied that he removed his firearm and pointed it at Plaintiff or his companions. *Id.* at 20.

### B.  Claims

Plaintiff asserts the following 10 claims: (1) excessive force under the Fourth and Fourteenth Amendments against Officers Wheeler and Pierre; (2) unreasonable seizure under the Fourth and Fourteenth Amendments against Officers Wheeler and Pierre; (3) conspiracy to violate Plaintiff's Fourth and Fourteenth Amendments against Officers Wheeler and Pierre; (4) failure to train, supervise, and discipline Officers Wheeler and Pierre against Defendants Hurstville, HANO, Southeast Louisiana Flood Protection Authority – East,  and Kerry Najolia, Michael Brenckle, Darnell Laurent, Thaddeus Petit, Jamel Brown, Carl Perilloux, Tyrone Martin, Demetrius Jackson, Tommy Mercadal, Leontine Mullins; (5) *Monell* violationsd for policies, patterns, or practices that subjected Plaintiff to an unreasonable search and excessive use of force against Hurstville, HANO, SLFPA-E, and the LMA (collectively, the ("Municipal Defendants"); (6) aggravated assault against Officers Wheeler and Pierre; (7) assault against Officers Wheeler

and Pierre; (8) intentional infliction of emotional distress against Officers Wheeler and Pierre;

(9) negligent infliction of emotional distress against Officers Wheeler and Pierre; (10) negligent

hiring/supervision against Hurstville, Officer Preilloux, SLFPA-E, and LMA. *Id.* at 25-34.

## II.   PRESENT MOTIONS

Various Defendants have filed motions to dismiss Plaintiff's operative, first amended

complaint. Defendants HANO, Lieutenant Martin, Sergeant Jackson, Sergeant Mercadal, and

Sergeant Mullins (collectively, "the HANO Defendant") argue that Plaintiff's complaint is

deficient because it "improperly lumps together claims" and Defendants within individual counts

and because its factual allegations are too non-specific to support claims for *Monell* and

supervisory liability. R. Doc. 38.[2] Defendant Hurstville and Officers Wheeler, Pierre, and

Perilloux (collectively, "Hurstville Defendants"); and SLFPA-E and Officers Najolia, Brenckle,

Laurent Petit and Brown (collectively, the "SLFPA-E Defendants") also filed a motion to

dismiss, contending that Plaintiff fails to sufficiently plead claims for municipal or individual

liability. R. Doc. 39. Similarly, the LMA contends that Plaintiff has not stated a *Monell* or state

law negligent hiring or supervision claims against it. R. Doc. 40; R. Doc. 40-1 at 3-8.

In opposition, Plaintiff argues that he has adequately pleaded *Monell* and individual

claims and that Defendants improperly seek to ratchet up the pleading standard. R. Doc. 45 at 8-

9. Plaintiff also argues that, rather than simply "lumping together" Defendants, his complaint

---

[2] The Court notes that, in his original complaint, Plaintiff named the "Orleans Levee District Police" as a Defendant. R. Doc. 1. The Orleans Levee District Police then moved to dismiss claims against it, asserting that it is not a juridical entity and therefore is not capable of being sued. R. Doc. 19-1 at 1-2. Plaintiff subsequently filed his "First Amended Complaint," which is his operative pleading in this case. R. Doc. 22. Unlike the earlier pleading, the amended complaint does not name the Orleans Levee District Police as a Defendant. Consequently, the Orleans Levee District Police is no longer is party to this action. *See Fawzy v. Wauquiez Boats SNC*, 873 F.3d 451, 455 (4th Cir. 2017) ("Because a properly filed amended complaint supersedes the original one and becomes the operative complaint in that case, it renders the original complaint 'of no effect'"); *see also Ledford v. Eastern Band of Cherokee Indians*, No. 1:20-CV-005, 2020 WL 1042235 at 1 (W.D.N.C. March 3, 2020) ("It is well settled that a timely-filed amended pleading supersedes the original pleading, and that motions directed at superseded pleadings may be denied as moot"). The motion to dismiss the Orleans Levee District Police is thus moot.

contains allegations of conduct establishing deliberate indifference that are specific to each of Defendant. *Id.* at 9. Last, Plaintiff requests leave to amend if any part of his operative complaint is dismissed. *Id.* at 10.

## III.    LEGAL STANDARD

A defendant may seek a dismissal of a complaint based on the "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). In considering a motion to dismiss under Rule 12(b)(6), the Court accepts all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *In re Katrina Canal Breaches Litig.,* 495 F.3d 191, 205 (5th Cir. 2007). But the Court is not bound to accept "as true conclusory allegations, unwarranted factual inferences, or legal conclusions." *Plotkin v. IP Axess Inc.,* 407 F.3d 690, 696 (5th Cir. 2005). A pleading that offers "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do." *Iqbal*, 556 U.S. at 678 (quoting *Bell Atlantic Corp. et al. v. Twombly*, 550 U.S. 544, 545 (2007)). Dismissal is appropriate only if the complaint fails to plead "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft*, 556 U.S. at 678.

## IV.    DISCUSSION

Defendants' respective motions to dismiss largely challenge the same claims and make overlapping arguments. Accordingly, in considering the three pending motions, the Court will organize its discussion by reviewing in turn each legal claim that Defendants challenge.

### A.  Claims Under 42 U.S.C. § 1983

Defendants first argue that Plaintiff has not met the pleading standards under Federal

Rule of Civil Procedure 8 with respect to Counts IV and V, which allege municipal and individual supervisorial liability claims. R. Doc. 38-1 at 10-14; R. Doc. 39-1 at 7-9; R. Doc. 40-1 at 3-9. They assert that the amended complaint improperly "lumps together" Defendants, both individuals and entities, and collectively accuses them of failing to train, supervise, and discipline Officers Wheeler and Pierre. R. Doc. 38 at 13-14; R. Doc. 40-1 at 9-10. Second, Defendants argue that Plaintiff has failed to plausibly plead claims under Rule 12(b)(6) for failure to train, supervise, or discipline. R. Doc. 38 at 16-21; R. Doc. 39-1 at 9-14.

The Court will begin by considering Defendants' arguments concerning whether Plaintiff's complaint should be dismissed for failure to comply with Rule 8's formal requirements for pleading before addressing their arguments regarding whether the complaint meets the plausibly pleading standard. *See Body by Cook, Inc. v. State Farm Mut. Auto. Ins.*, 869 F.3d 381, 385 (5th Cir. 2017) (explaining that a "complaint may simultaneously satisfy Rule 8's technical requirements but fail to state a claim under Rule 12(b)(6)" because it does not plausibly state a claim for relief) (citing *Bank of Abbeville & Tr. Co. v. Commonwealth Land Title Ins. Co.,* 201 F. App'x 988, 990 (5th Cir. 2006)).

Rule 8 states that a pleading must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(1). This minimal standard requires only that a complaint "give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." *Swierkiewicz v. Sorema N.A.,* 534 U.S. 506, 512 (2002). A complaint is not defective under Rule 8's notice requirement merely because it "plead[s] conclusory allegations of fact or law." *Gen. Elec. Cap. Corp. v. Posey*, 415 F.3d 391, 396 n.5 (5th Cir. 2005) (quoting 2 James Wm. Moore, Moore's Federal Practice § 8.04 (3d ed. 2005)) (observing that the Appendix of Forms to former Federal Rule of Civil Procedure 84

included as an example of a complaint for negligence that complied with Rule 8 a statement merely that "defendant negligently drove a motor vehicle against plaintiff"). Pleadings that fall short of Rule 8's notice standard are subject to dismissal. *Martin v. Lennox Int'l Inc.*, 342 F. App'x 15, 18 (5th Cir. 2009).

Count IV alleges violations of § 1983 by fourteen different Defendants—four municipal entities and ten individuals—for failure to supervise, train, and discipline Officers Pierre and Wheeler. R. Doc. 22 at 28-29. This count asserts that Defendants had responsibility for and "were aware of the need to supervise, train, investigate, and disciple in their subordinates. *Id.* at 3-8, 28-29. Nevertheless, these Defendants "ignored" these needs by "fail[ing] to train and/or supervise" Officers Pierre and Wheeler "to ensure that th[ese] subordinate[s] did not violate members of the public's rights" under the Fourth and Fourteenth Amendments. *Id.* 22 at 28-29. The "failure to train and/or supervise was a moving force" behind the off-duty officers' use of excessive force. *Id.* Similarly, Count V asserts that the Municipal Defendants "establish[ed] and maintain[ed] policies, patterns, customs, trainings, or practices that they knew would fail to prevent excessive uses of force against members of the public" and would cause unreasonable searches. *Id.* at 29-30.

Defendants complain that the allegations do not comply with Rule 8 because they are not specific as to what any of Defendants did or failed to do. In other words, Defendants argue that Counts IV and V should be dismissed because they fail to differentiate between the purportedly unlawful acts or omissions of different Defendants. R. Doc. 38-1 at 14; R. Doc. 39 at 7-9.

There is some support in the caselaw for the proposition that a complaint fails to meet Rule 8's low bar for pleading when it merely "lump[s] all the defendant together in each claim and provid[es] no factual basis to distinguish their conduct." *Atuahene v. City of Hartford*, 10 F.

App'x 33, 34 (2d Cir. 2001); *accord Lane v. Capital Acquisitions and Mgmt. Co.,* No. 04–60602 CIV, 2006 WL 4590705, at *5 (S.D. Fla. 2006). However, this Court is not aware of, nor have Defendants cited, any Fifth Circuit cases so holding. And at least the Seventh Circuit appears to have limited the application of the rule against "lumping together" defendants in a complaint to the context of claims for fraud under Rule 9(b)—a provision that imposes a significantly heightened pleading standard as compared to Rule 8. *See Vicom, Inc. v. Harbridge Merch. Servs., Inc.,* 20 F.3d 771, 778 (7th Cir. 1994) (analyzing case under Rule 9(b) and explaining that, "in a case involving multiple defendants, such as the one before us, the complaint should inform each defendant of the nature of his alleged participation in the fraud" in order to put each defendant on notice of their "purported role in the scheme"). When, as here, fraud is not pled, the concerns about ensuring that defendants have adequate notice regarding their alleged roles in a fraudulent scheme simply are not present. Ultimately, the touchstone under Rule 8 is whether defendants have notice of the claim asserted against them and the basis for the claim. *Swierkiewicz,* 534 U.S. at 512.

　　In the instant case, the allegations in Counts IV and Count V meet Rule 8's relaxed pleading standard. These Counts specify the nature of the claim, as they identify § 1983 as the source of Defendants' liability. The complaint also describes the § 1983 claims' bases, stating that Municipal Defendants acted with deliberate indifference to the need to provide training, supervision, or discipline to their subordinates regarding the appropriate use of force and that certain individual officers who supervised Officers Wheeler and Pierre implemented policies they knew would be inadequate to prevent unreasonable stops and excessive force. Although Defendants assert that these allegations are conclusory, that alone does not render them deficient. *See Gen. Elec. Cap. Corp. v. Posey*, 415 F.3d at 396. Here, the Plaintiff relates the specific facts

and allegedly improper actions which he attributes to inadequate training. The Court thus finds that Counts VI and V satisfy the minimal pleading standards of Rule 8. Accordingly, the Court must determine whether Plaintiff's claims survive the greater hurdle presented by the plausibility pleading standard. *See Body by Cook, Inc.*, 869 F.3d at 385.[3]

Understandably, the Defendants and Plaintiff analyze the official liability claims separately from the individual supervisorial liability claims. These are separate causes of action with distinct elements. *Compare Pineda v. City of Houston,* 291 F.3d 325, 328 (5th Cir. 2002) (explaining that *Monell* claims require "(1) an official policy (or custom), of which (2) a policy maker can be charged with actual or constructive knowledge, and (3) a constitutional violation whose 'moving force' is that policy (or custom)"), *with Gates v. Tex. Dep't of Protective & Regulatory Servs.*, 537 F.3d 404, 435 (5th Cir.2008) (observing that a claim for an individual supervisor's liability requires that the supervisor "affirmatively participates in the acts that cause the constitutional deprivation, or (2) he implements unconstitutional policies that causally result in the constitutional injury"). Accordingly, the Court will discuss the *Monell* claims separately from the supervisory liability claims.

However, within the discussions of these distinct claims, *i.e.*, *Monell* and individual liability claims, the parties analyze separately the various *legal theories* supporting these claims in Count IV—failure to train, supervise, and discipline. In other words, the parties discuss three theories of *Monell* liability and three theories of supervisorial liability for Count IV.

"Under Rule 12(b)(6), district courts may dismiss claims, not legal theories." *Gibson v. Half*, No. 21 C 04160, 2021 WL 4804083, at *1 (N.D. Ill. Oct. 14, 2021); *see also Bevrotte ex*

---

[3] Defendants do not appear to present any further challenge to the sufficiency of Plaintiff's pleading as to Count V, so the Court's analysis as to this count need go no further.

*rel. Bevrotte v. Caesars Ent. Corp.,* No. CIV.A. 11-543, 2012 WL 629815, at *2 (E.D. La. Feb. 27, 2012). And when a plaintiff asserts multiple theories of recovery as supporting a single claim, "the pleading is sufficient if the factual allegations support liability . . . under any legal theory." *Murphy v. City of Tulsa*, No. 15-CV-528, 2016 WL 11619779, at *2 (N.D. Okla. Feb. 29, 2016) (citing Fed. R. Civ. P. 8(d)(2) ("A party may set out 2 or more statements of a claim or defense alternatively or hypothetically, either in a single count or defense or in separate ones. If a party makes alternative statements, *the pleading is sufficient if any one of them is sufficient*." (emphasis added)). Therefore, if Plaintiff has pleaded facts that would support a *Monell* claim or a supervisorial liability claim under any theory, then Defendants' motions to dismiss that claim must be denied. Additionally, it is worth nothing that there is some overlap to the Court's analysis of the *Monell* and supervisorial liability claims because both claims require plaintiff to plead that defendants were deliberately indifferent. *See Doe v. Taylor Indep. Sch. Dist.,* 15 F.3d 443, 453 (5th Cir. 1994) (en banc) ("The legal elements of an individual's supervisory liability and a political subdivision's liability . . . are similar enough that the same standards of fault and causation should govern. A municipality . . . is liable under § 1983 if it supervises its employees in a manner that manifests deliberate indifference to the constitutional rights of citizens. We see no principled reason why an individual to whom the municipality has delegated responsibility to directly supervise the employee should not be held liable under the same."). The Court proceeds to review Defendants' challenges to the *Monell* and supervisorial claims asserted.

### 1.  *Monell* Claims[4]

To prevail on a claim that a municipality is liable for failing to train, supervise, or

---

[4] Count IV asserts *Monell* claims against the Municipal Defendants. It also asserts claims against officers employed by these municipalities, in both the officers' individual and official capacities. R. Doc. 22 at 28. Each official capacity claim in Count IV is thus redundant of the claims asserted against the municipalities. Under Fifth Circuit precedent, the proper step is for the Court to dismiss the "duplicat[ive]" official capacity claims in Count IV.

discipline an employee, a plaintiff must plead facts plausibly establishing (1) that the municipality's training, supervisory, or disciplinary policies or practices were inadequate, (2) that the municipality was deliberately indifferent in adopting this deficient policy, and (3) that the inadequate training, supervisory, or disciplinary policy directly caused the violations in question. *See Ratliff v. Aransas Cnty., Texas*, 948 F.3d 281, 285 (5th Cir. 2020). "[T]o show deliberate indifference, a plaintiff normally must allege a 'pattern of similar constitutional violations by untrained employees.' But where a plaintiff does not allege such a pattern, it is still possible to establish deliberate indifference through the single-incident exception." *Hutcheson v. Dallas Cnty., Texas*, 994 F.3d 477, 482 (5th Cir. 2021) (quoting *Connick v. Thompson*, 563 U.S. 51, 62 (2011)). This exception is "extremely narrow" and requires a plaintiff to allege "that the highly predictable consequence of a failure to train would result in the specific injury suffered." *Id.* An injury is "highly predictable" where the municipality "fail[s] to train its employees concerning a clear constitutional duty implicated in recurrent situations that a particular employee is certain to face." *Id.* (*Littell v. Hous. Indep. Sch. Dist.*, 894 F.3d 616, 624-25 (5th Cir. 2018)).

In the context of municipal liability, only minimal factual allegations are required at the motion to dismiss stage. *See Thomas v. City of Galveston, Texas*, 800 F. Supp. 2d 826, 842–43 (S.D. Tex. 2011). This is so because, at the pleading stage, plaintiffs usually will not have access to or personal knowledge of the specific details of a municipality's internal training or supervisory policies and procedures. *See id.* On the other hand, Plaintiffs must do more than merely recite the elements of a cause of action. *See Iqbal*, 556 U.S. at 678.

In this case, Plaintiff alleges that the Municipal Defendants failed to train, supervise, and

---

*Castro Romero v. Becken*, 256 F.3d 349, 355 (5th Cir. 2001).

discipline their subordinates, despite their awareness that training was needed "in order to ensure that the[ir subordinates] did not violate the Fourth and Fourteenth Amendment rights of members of the public." R. Doc. 22 at 28-20. It is true that Plaintiff's allegations are relatively sparse. But Plaintiff simply is not positioned at this stage of the proceedings to provide greater elaboration on the specific deficiencies of Defendants' training policies; further factual enhancement can only come through discovery. *See Thomas*, 800 F. Supp. 2d 826, 842. Nonetheless, it is inferable from the amended complaint that the Municipal Defendants had a policy of failing to adequately train their employees. And it can further be plausibly inferred, at this stage of the litigation, that Defendants' knowing failure to adequately train employees would, predictably, lead to the deprivation of the Fourth Amendment and Fourteenth Amendment rights that Plaintiff allegedly suffered in this case.

Notably, Plaintiff alleges that OLD-PD and HANO authorized their officers to work off-duty details. R. Doc. 11 at 22. It is highly foreseeable that Municipal Defendants' alleged failure to train, supervise, or discipline theirs officers while simultaneously permitting those same officers to work off-duty details would result in constitutional violations when officers conduct off-duty patrols.[5] And if Hurstville merely relied on the inadequate training provided by Officer Wheeler's and Pierre's other employers—*i.e.*, OLD-PD and HANO, respectively—without providing any additional training, then it, too, may be liable for failure to train.

The LMA asserts that Plaintiff's *Monell* claims against it fails because Plaintiff does not

---

[5] As noted, Plaintiff alleges that Officers Wheeler and Pierre were employed by OLD-PD and HANO, respectively, as well as Hurstville. Although Plaintiff alleges that the officers were "off-duty," he also alleges that these officers were "acting within the scope of their employment" at the time of the incident R. Doc. 22 at 4. Plaintiff does not specify the entity or entities as to which the officers were acting within the course of their employment. Whether these officers were acting within the course and scope of their employment with any particular Municipal Defendant requires further factual development and is thus inappropriate for resolution at this time.

allege that the LMA hired, employed, trained, or supervised Officer Wheeler. R. Doc. 40-1 at 3-5. The LMA also argues that the operative pleading is deficient because it does not allege the identity of any policymaker within the LMA. *Id.* at 8. Neither argument is availing.

To begin, Plaintiff specifically alleges that the LMA "has authority over and manages the non-flood assets in the Orleans Levee District, including the OLD-PD." R. Doc. 22 at 5. And Plaintiff alleges that Officer Wheeler is employed by the OLD-PD. *Id.* at 4. From these contentions, it can be reasonably inferred that the LMA exercised control over at least aspects of Officer Wheeler's hiring, training, and supervision, as required to support municipal liability.  In a footnote, the LMA challenges Plaintiff's assertion that it has authority over the OLD-PD. Without citation and without any accompanying exhibit, the LMA avers that the "Non-Flood Protection Asset Management Authority"—the putative precursor to the LMA—transferred management and control over the OLD-PD to the SLFPA-E in 2011. But at this stage, the Court cannot credit the LMA's bare assertion over the facts pleaded in Plaintiff's operative complaint.[6]

Furthermore, the Fifth Circuit has made clear that "for purposes of Rule 12(b)(6), . . . a plaintiff is not required to single out the specific policymaker in his complaint; instead, a plaintiff need only plead *facts* that show that the defendant . . . acted pursuant to a specific official policy, which was promulgated or ratified by the legally authorized policymaker." *Groden v. City of Dallas, Texas*, 826 F.3d 280, 282 (5th Cir. 2016). Here, Plaintiff alleges that Officer Wheeler was an OLD-PD officer and therefore was under the control of the LMA. R. Doc. 22 at 4, 13. Plaintiff further alleges that Officer Wheeler violated his Fourth and Fourteenth Amendment rights as a result of the constitutionally inadequate policies or practices of the LMA with respect

---

[6] With respect to Plaintiff's claims against the LMA, it is of no moment at this juncture that Plaintiff also alleges that SLFPA-E's superintendent of police supervises "the security personnel of the Orleans Levee District." R. Doc. 22 at 5.

to its hiring, training, and discipline of Officer Wheeler. R. Doc. 22 at 28-29. At the motion to dismiss stage, these allegations are sufficient to plausibly allege a *Monell* claim against the LMA. *See Groden*, 826 F. 3d at 282.

In sum, while it is a close call, the Court finds that Plaintiff's allegations are marginally sufficient to plead that the Municipal Defendants were deliberately indifferent to the need to train, supervise, or discipline their subordinates to comply with the aforementioned constitutional rights. *See Charles v. Galliano*, No. CIV.A. 10-811, 2010 WL 3430519, at *6 (E.D. La. Aug. 26, 2010).[7] Accordingly, the Court will deny Defendants' motions to dismiss the *Monell* claims for failure to train.[8] Of course, Plaintiff will ultimately bear the burden in this case of coming forward with facts demonstrating that the Municipal Defendants promulgated policies that were constitutionally inadequate and that were the moving force behind Plaintiff's injuries. *See Ratliff*, 948 F.3d at 285. The Court can expect to encounter additional motions at the summary judgment phase of the litigation after a period of appropriate discovery.

### 2. Individual Capacity Claims

A supervisory official may be held liable under section 1983 only if "(1) he affirmatively participates in the acts that cause the constitutional deprivation, or (2) he implements unconstitutional policies that causally result in the constitutional injury." *Gates v. Tex. Dep't of*

---

[7] SLFPA-E asserts that Plaintiff has failed to plead a failure-to-hire claim. R. Doc. 39-1 at 9-17. But because Plaintiff has properly pleaded a *Monell* claim against it under other theories of recovery, the Court need not decide whether Plaintiff has sufficiently pleaded this additional theory of municipal liability. *See* Fed. R. Civ. P. 8(d)(2).

[8] Plaintiff request that the Court take judicial notice of HANO's website and several documents he obtained through public records requests. R. Doc. 46. In considering a motion to dismiss, the Court may take judicial notice of documents that are not attached to or referenced in the complaint provided the requirements of Federal Rule of Evidence 201 are met. As relevant here, Rule 201 states that a court may take judicial notice of a fact that is "capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b). The Court finds it unnecessary to decide whether to take judicial notice of the Plaintiff's exhibits because, as discussed, Plaintiff has shouldered his pleading-stage burden even without resort to the documents Plaintiff proffers.

*Protective & Regulatory Servs.*, 537 F.3d 404, 435 (5th Cir. 2008). Put another way, "[i]n order to establish supervisor liability for constitutional violations committed by subordinate employees, plaintiffs must show that the supervisor act[ed], or fail[ed] to act, with *deliberate indifference* to violations of others' constitutional rights committed by their subordinates." *Porter v. Epps*, 659 F.3d 440, 446 (5th Cir. 2011) (quoting *Gates*, 537 F.3d at 435)).

Again, the Court finds that Plaintiff has pled sufficient facts—albeit barely—to sustain his supervisorial liability claims in Count IV. The operative complaint pleads that the individual Defendants listed in this count had supervisory responsibility over Officers Wheeler and Pierre. Additionally, these individual Defendants allegedly knew that training and oversight were needed to protect the public from otherwise deficient policing. Nevertheless, these Defendants allegedly consciously disregarded the risks to the public by failing to discharge their duties to train, supervise, and discipline Officers Wheeler and Pierre. R. Doc. 22 at 28-29. That is, these supervisors allegedly carried out their municipal employers' unconstitutional policies. Taken together, these allegations suffice to survive Defendants' Rule 12(b)(6) motions. The specifics of any deficiencies in the training, supervising, and disciplining provided by individual Defendants can only be ferreted out in discovery.[9]

---

[9] HANO argues that Plaintiff fails to state a claim for *Monell* liability as to the Count I excessive force claim, Count II unreasonable seizure claim, and Count III conspiracy claim. R. Doc. 38-1 at 6-8. But as Plaintiff points out, these counts are only asserted against off-duty HANO employee Officer Pierre in his individual capacity (and Officer Wheeler, who is not affiliated with HANO) and therefore do assert *Monell* liability against HANO. R. Doc. 45 at 25 n.11; *see also* R. Doc. 22 at 25-26. Likewise, HANO's argument that Plaintiff fails to state a claim against it as to the state law claims in Counts VI-IX is irrelevant because these claims are asserted against Officer Pierre (and Wheeler) only in his individual capacity. R. Doc. 22 at 30-33.

HANO also asserts that any claims for punitive damages against it must dismissed because it is a political subdivision of the state and because punitive damages are not available against governmental entities for constitutional violations. R. Doc. 38-1 at 5-6 (first citing *UniDev, L.L.C. v. Hous. Auth. of New Orleans*, No. CIV.A. 05-2649, 2008 WL 906308, at *7 (E.D. La. Apr. 2, 2008); then citing *Wright v. City of Harahan*, No. CV 19-13529, 2020 WL 815289, at *6 (E.D. La. Feb. 19, 2020)). Although HANO correctly states the law, Plaintiff has not asserted any claims for punitive damages against HANO, rendering the agency's argument moot.

### B.  Negligent Hiring and Supervision Claim

Last, the LMA asserts that Plaintiff has failed to plead a state law claim for negligently hiring or supervising Officers Wheeler and Pierre. R. Doc. 40-1 at 8. But, as discussed, Plaintiff has pleaded facts from which it can be reasonably inferred that the LMA exercised control over Officer Wheeler's training and supervision. Moreover, Plaintiff alleges that, before Officer Wheeler began serving in the OLD-PD, he was employed as a law enforcement officer with the New Orleans Police Department ("NOPD"). That agency allegedly terminated Officer Wheeler allegedly because he tased an unarmed suspect and then falsely reported to investigators that the suspect was armed and dangerous. R. Doc. 22 at 13, 23, 34. These allegations are sufficient to state a plausible claim that the LMA was negligent in hiring Officer Wheeler.[10]

### V.      CONCLUSION

For these reasons,

**IT IS ORDERED** that the motion to dismiss filed by the Orleans Levee District Police, R. Doc. 19, is **DENIED** as moot. The Clerk of Court is directed to terminate the Orleans Levee District Police as a party to this action.

**IT IS FURTHER ORDERED** that the following Defendants' pending motions to dismiss, R. Docs. 38-40, are **DENIED**.

**IT IS FURTHER ORDERED** that the official capacity claims against each officer in Count IV are **DISMISSED** with prejudice, as duplicative of the corresponding claims against each officers' municipal employer. The claims against the municipal employers in Count IV remain pending.

---

[10] Because Plaintiff plausibly pleaded a state law negligent hiring claim against the LMA, the Court does not reach the question of the plausibility of Plaintiff's other theories of negligence-based liability against the LMA. *See Murphy*, No. 15-CV-528, 2016 WL 11619779, at *2; Fed. R. Civ. P. 8(d)(2).

New Orleans, Louisiana, this 21st day of June, 2022.

**UNITED STATES DISTRICT JUDGE**