UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| BILAL HANKINS, | * | CIVIL ACTION NO. 2:21-CV-01129 |
| Plaintiff | * | |
| VERSUS | * | JUDGE ELDON E. FALLON |
| | * | |
| KEVIN WHEELER, RAMON PIERRE, CARL | * | MAGISTRATE JUDGE |
| PERILLOUX, KERRY NAJOLIA, THE | * | JANIS VAN MEERVELD |
| HOUSING AUTHORITY OF NEW ORLEANS, | * | |
| THE HURTSVILLE SECURITY AND | * | |
| NEIGHBORHOOD IMPROVEMENT | * | |
| DISTRICT, THE SOUTHEAST LOUISIANA | * | |
| FLOOD PROTECTION AUTHORITY – EAST, | * | |
| LAKEFRONT MANAGEMENT AUTHORITY, | * | |
| MICHAEL BRENCKLE, DARNELL | * | |
| LAURENT, THADDEUS PETIT, JAMEL | * | |
| BROWN, TYRONE MARTIN, DEMETRIUS | * | |
| JACKSON, TOMMY MERCADAL, LEONTINE | * | |
| MULLINS, AND DOE INSURANCE | * | |
| COMPANIES 1-6, | * | |
| Defendants | * | |

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

**MEMORANDUM IN SUPPORT OF INDIVIDUAL HANO DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT AS TO QUALIFIED IMMUNITY**

Rachel W. Wisdom, La. Bar No. 21167
Heather S. Lonian, La. Bar No. 29956
Maggie A. Broussard, La Bar No. 33033
Evan P. Lestelle, La. Bar No. 39609
        Of
STONE PIGMAN WALTHER WITTMANN, L.L.C.
909 Poydras Street, Suite 3150
New Orleans, Louisiana  70112-4042
Telephone:  (504) 581-3200
Facsimile: (504) 581-3361
rwisdom@stonepigman.com
hlonian@stonepigman.com
mbroussard@stonepigman.com
elestelle@stonepigman.com

# TABLE OF CONTENTS

Page

TABLE OF CONTENTS ............................................................................................ ii

TABLE OF AUTHORITIES ..................................................................................... iv

LIST OF EXHIBITS ................................................................................................. vi

MEMORANDUM IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT ..................... 1

I.        SUMMARY OF ARGUMENT ................................................................. 1

II.       FACTUAL BACKGROUND .................................................................. 2

    A.    The June 13, 2020 Stop ............................................................... 2

    B.    The HANO Officers ...................................................................... 6

III.      LAW AND ARGUMENT ........................................................................ 9

    A.    Summary Judgment Standard for Qualified Immunity Defense .......... 9

    B.    Qualified Immunity Analysis .................................................... 10

    C.    Plaintiff Has Failed to Establish a Constitutional Violation by Officer Pierre Necessary to Impose Liability on the HANO Officers. ........................................ 11

        1.    Plaintiff was Not Subjected to an Unreasonable Seizure ............... 11

           a.    Officer Wheeler articulated reasonable suspicions in order to effectuate the stop. ..................................... 12

           b.    The stop lasted no longer than necessary to identify Mr. Pierre and obtain additional information from Plaintiff ........................... 13

        2.    Plaintiff was Not Subjected to the Use of Excessive Force. ............ 15

    D.    Even if a Five Minute Stop or Briefly Drawing a Weapon Constituted a Constitutional Violation, the HANO Officers are Entitled to Qualified Immunity ................................ 18

        1.    Plaintiff Must Establish Each Officer's Liability Individually ............ 19

        2.    Plaintiff Cannot Establish any HANO Officer was Deliberately Indifferent to Overcome Their Qualified Immunity. ......................... 20

4143698v.2

      a.     Officer Pierre had No History of Similar Complaints, and Plaintiff Cannot Establish HANO Officers were Deliberately Indifferent to the Need to Train or Supervise Officer Pierre............................................................. 20

      b.     Plaintiff Cannot Establish the HANO Officers Failed to Discipline Officer Pierre. ................................................................................................... 23

IV.     CONCLUSION................................................................................................ 25

4143698v.2

# **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242 (1986) ...........................................................9, 10

*Anokwuru v. City of Houston*, 990 F.3d 956 (5th Cir. 2021)........................................................20

*Bell v. Wolfish*, 441 U.S. 520 (1979) ...........................................................................................16

*Berry v. McLemore*, 670 F.2d 30 (5th Cir. 1982) .........................................................................23

*Brown v. Callahan*, 623 F.3d 249 (5th Cir. 2010) ..........................................................................9

*Burge v. St. Tammany Parish*, 336 F.3d 363 (5th Cir. 2003) .......................................................20

*Camilo-Robles v. Hoyos*, 151 F.3d 1 (1st Cir. 1998) ...................................................................10

*Celotex Corp. v. Catrett*, 477 U.S. 317 (1986) ..............................................................................9

*Collins v. Nagle*, 892 F.2d 489 (6th Cir. 1989)............................................................................16

*Courson v. McMillan*, 939 F.2d 1479 (11th Cir. 1991) ..........................................................14, 15

*Davidson v. City of Stafford, Texa*s, 848 F.3d 384 (5th Cir. 2017) ..............................................21

*Davila v. U.S*, 713 F.3d 248 (5th Cir. 2013)................................................................................16

*Doe v. Taylor Indep. Sch. Dist.*, 15 F.3d 443 (5th Cir. 1994)......................................................10

*Dotson v. Edmonson*, 2018 WL 501512 (E.D. La. Jan 22, 2018) ................................................21

*Edwards v. Giles*, 51 F.3d 155 (8th Cir. 1995) ............................................................................16

*Gen. Universal Sys., Inc. v. Lee,* 379 F.3d 131 (5th Cir. 2004).....................................................9

*Graham v. Connor*, 490 U.S. 386 (1989) .....................................................................................16

*Griggs v. Brewer*, 841 F.3d 308 (5th Cir. 2016)...........................................................................10

*Hare v. City of Corinth*, 135 F.3d 320 (5th Cir. 1998) .................................................................18

*Hill v. New Orleans City*, 643 Fed. Appx 332 (5th Cir. 2016) .....................................................19

*Hinojosa v. City of Terrell*, 834 F.2d 1223 (5th Cir. 1988) ..........................................................17

*Jacobs v. W. Feliciana Sheriff's Dep't*, 228 F.3d 388 (5th Cir. 2000) ..........................................10

4143698v.2

*Lewis v. Pugh*, 289 Fed. Appx. 767 (5th Cir. 2008) ....................................................20, 21, 22

*Little v. Liquid Air Corp.*, 37 F.3d 1069 (5th Cir. 1994) ...................................................9

*Lopez-Rodriguez v. City of Levelland, Texas*, 100 Fed. Appx. 272 (5th Cir. 2004).....................24

*Maryland v. Wilson*, 519 U.S. 408 (1997) ...................................................................16

*Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574 (1986) ............................9

*Estate of Davis ex rel. McCully v. City of N. Richland Hills*, 406 F.3d 375 (5th Cir. 2005) ...............................................................................21, 22

*McNair v. Coffey*, 279 F.3d 463 (7th Cir. 2002)...........................................................17

*Michigan v. Long*, 463 U.S. 1032 (1983) .............................................................16, 17

*Pena v. Givens*, 637 F. App'x 775 (5th Cir. 2015).........................................................11

*Peterson v. City of Fort Worth, Tex.*, 588, F.3d 838 (5th Cir. 2009).............................................21

*Phillips Oil Co. v. OKC Corp.*, 812 F.2d 265 (5th Cir. 1987) .........................................9

*Pierce v. Smith*, 117 F.3d 866 (5th Cir.1997) .............................................................18

*Pleasant v. Zamieski*, 895 F.2d 272 (6th Cir. 1990) ......................................................16

*Poe v. Leonard*, 282 F.3d 123 (2d Cir. 2002) ...................................................10, 11, 19

*Rankin v. Klevenhagen*, 5 F.3d 103 (5th Cir. 1993) .......................................................18

*Roberts v. City of Shreveport*, 397 F.3d 287 (5th Cir. 2005).........................................16

*Sanders-Burns v. City of Plano*, 594 F.3d 366 (5th Cir. 2010).....................................20

*Shreve v. Franklin Cnty., Ohio*, 743 F.3d 126 (6th Cir. 2014) ........................................9

*Smith v. Heap*, 31 F.4th 905 (5th Cir. 2022).............................................................11

*Tarver v. City of Edna*, 410 F.3d 745 (5th Cir. 2005).....................................................10

*United States v. Bake*r, 47 F.3d 691 (5th Cir.1995).......................................................17

*United States v. Lopez-Moreno*, 420 F.3d 420 (5th Cir. 2005)...................................11, 12, 13, 14

*United States v. Sharpe*, 470 U.S. 675 (1985) ....................................................13, 14

4143698v.2

# <u>LIST OF EXHIBITS</u>

First Amended Complaint ................................................................................Exhibit A

Excerpts of Depositon of Bilal Hankins ........................................................Exhibit B

Excerpts of Depositon of Kevin Wheeler .......................................................Exhibit C

Excerpts of Depositon of Ramon Pierre .........................................................Exhibit D

Declaration of Carl Perilloux .........................................................................Exhibit E

Declaration of Vance Bienemy, Jr. ................................................................ Exhibit F

Declaration of Tyrone Martin ........................................................................Exhibit G

Declaration of Demetrius Jackson ..................................................................Exhibit H

Declaration of Tommy Mercadal .................................................................... Exhibit I

Declaration of Leontine Mullins .....................................................................Exhibit J

4143698v.2

<u>**MEMORANDUM IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT**</u>

Defendants Tyrone Martin, Demetrius Jackson, Tommy Mercadal, and Leontine Mullins (collectively "HANO Officers") file this memorandum in support of their Motion for Summary Judgment.  Plaintiff Bilal Hankins (hereinafter "Plaintiff") seeks to hold the HANO Officers liable in their supervisory capacity for actions taken by Officer Ramon Pierre during a stop made while he was off-duty and working a private paid detail for Hurstville Security District.  As explained in greater detail in this Memorandum, Plaintiff's constitutional rights were not violated by or during the stop.  Furthermore, Plaintiff cannot establish that any of the HANO Officers violated clearly established law in their supervision, training, or discipline of Officer Pierre. Consequently, the HANO Officers are entitled to qualified immunity, and there can be no vicarious liability in their capacities as supervisors of Officer Pierre.  Plaintiff's claims against the HANO Officers must be dismissed as a matter of law.

I.      **SUMMARY OF ARGUMENT**

As set forth more fully below, the Court should grant summary judgment and dismiss Plaintiff's claims against the HANO Officers.  In the present case, Plaintiff has not alleged and does not have colorable evidence to establish facts sufficient to show a genuine issue as to any material fact that would preclude granting summary judgment to the HANO Officers on the issue of qualified immunity.  Plaintiff's Petition is noticeably lacking in any specific information which supports his allegations, and his deposition testimony did not provide any additional support that would warrant the imposition of supervisory liability on any of the HANO Officers.  Instead, Plaintiff makes sweeping and unsubstantiated claims against the HANO Officers, asserting that their failure to train and/or supervise Officer Pierre resulted in a violation of Plaintiff's constitutional rights in connection with a stop.  As an initial matter, Plaintiff cannot establish that Officer Pierre's conduct was unreasonable or excessive under the circumstances, thereby negating

- 1 -

Plaintiff's claims regarding the alleged violation of his Fourth Amendment rights. If there is no constitutional violation, there can be no supervisory liability. Furthermore, even if the Court were to determine that Plaintiff's constitutional rights were violated, Plaintiff cannot provide any specific facts to support his claim that the HANO Officers were deliberately indifferent to his constitutional rights sufficient to establish supervisory liability and overcome their qualified immunity. Therefore, the HANO Officers are entitled to a finding of qualified immunity and a summary judgment, dismissing Plaintiff's claims against them.

## II.   FACTUAL BACKGROUND

### A.   The June 13, 2020 Stop

On the evening of June 13, 2020, Officers Kevin Wheeler and Ramon Pierre were working a private, paid security detail for the Hurstville Security District in the uptown neighborhood.[1] At the time, Officer Wheeler's regular job was serving as an officer for the Orleans Levee District ("OLD")[2] and Officer Pierre's was (and still is) serving as a police officer for the Housing Authority of New Orleans ("HANO").[3]

Plaintiff, a resident of the Uptown neighborhood of New Orleans during the relevant time period, asserts that his acquaintance lost her dog that day and that he assisted in a search for the dog.[4] Plaintiff claims that to conduct the search, Plaintiff and a twelve year old male, L.M, rode as passengers in a vehicle driven by Tahj Pierre.[5] L.M. rode in the front passenger seat, and

---

[1]   Uncontested Material Fact No. 4.

[2]   *See* Exhibit A, First Amended Complaint at ¶ 8; Exhibit C, Deposition of Kevin Wheeler at 17:16-18, 29:1-17.

[3]   *See* Exhibit A, First Amended Complaint at ¶ 9; Exhibit D, Deposition of Ramon Pierre at 22:17-18, 26:10-14.

[4]   Uncontested Material Fact Nos. 1, 2. Plaintiff's recitation of the facts are uncontested for purposes of Defendants' Motion for Summary Judgment only.

[5]   Uncontested Material Fact Nos. 2, 3, 7.

4143698v.2

Plaintiff rode in the back seat on the driver's side.[6]  Mr. Pierre was a resident of New Orleans East and driving a vehicle registered in his mother's name, who lived at the same address in New Orleans East.[7]

Near midnight, Officer Wheeler was patrolling the neighborhood in his vehicle when he saw Mr. Pierre's car driving very slowly down Camp Street.[8]  Officer Wheeler saw passengers hanging out the windows of the vehicle.[9]  Plaintiff does not deny that Mr. Pierre was driving slowly while he and the teen-aged passenger looked for the dog from the vehicle.[10]  When Plaintiff saw Officer Wheeler in his patrol car, Plaintiff approached Officer Wheeler, telling him the group was searching for a dog.[11]  Officer Wheeler was suspicious of Plaintiff's story given that he had witnessed car burglars driving in a similar manner, so he ran the license plate of the vehicle.[12]  He discovered that the car was registered to a woman at an address he did not recognize.  Officer Wheeler contacted Officer Pierre, who informed him that the address of the vehicles' registration was located in New Orleans East based on the zip code, which further raised Officer Wheeler's suspicions as to why a person who lived in New Orleans East would be searching for a dog uptown.[13]  At that point, both Officers Pierre and Wheeler began to follow the suspect car and the

---

[6]    Uncontested Material Fact No. 5.

[7]    Uncontested Material Fact No. 6.

[8]    Uncontested Material Fact Nos. 8, 9; *see also* Exhibit C, Deposition of Kevin Wheeler at 49:2-16.

[9]    Uncontested Material Fact No. 9; Exhibit C, Deposition of Kevin Wheeler at 49:2-16.

[10]   Exhibit B, Deposition of Bilal Hankins at 41:2-22; *see also* Exhibit D, Deposition of Ramon Pierre at 80:9-18.

[11]   Uncontested Material Fact No.  8.

[12]   Uncontested Material Fact Nos. 9, 10.

[13]   Uncontested Material Fact No. 10.

4143698v.2

officers decided to make an investigatory stop of the vehicle.[14]

Although the participants to the stop give somewhat differing details regarding the encounter, the parties agree that Officers Wheeler and Pierre conducted a stop of the vehicle near the intersection of Octavia and Chestnut, near Benjamin Franklin Elementary.[15]  Plaintiff admits that the officers activated the blue lights of their vehicles and that Mr. Pierre did not pull over the vehicle immediately because he claims he was unaware that he was being pulled over.[16]  Officer Wheeler ordered Mr. Pierre out of the vehicle.[17]  Officer Wheeler questioned Mr. Pierre as to the registration of the car, and Mr. Pierre and/or Mr. Hankins explained to Officer Wheeler that the vehicle was registered to Mr. Pierre's mother, and Mr. Pierre provided Officer Wheeler with his identification showing the same address in New Orleans East to which the car was registered.[18]  Plaintiff claims that during the stop, both officers drew their weapons—Officer Wheeler allegedly pointed his weapon only at Mr. Pierre, and Officer Pierre allegedly pointed his weapon at L.M. when he stuck his head out of the car window.[19]  Plaintiff now claims that Officer Pierre also aimed his weapon in the general direction of the vehicle.[20]  Plaintiff testified that once Officer Wheeler confirmed Mr. Pierre's identity, both officers put their firearms away.[21]  Officer Wheeler then took down information from Plaintiff regarding the dog and his contact information, and the occupants

---

[14]   *See* Exhibit C, Deposition of Kevin Wheeler at 54:15-58:15, 63:4-19; Exhibit D, Deposition of Ramon Pierre at 69:10-73:20.

[15]   *See* Exhibit B, Deposition of Bilal Hankins at 49:12-51:4, 89:5-8; Exhibit C, Deposition of Kevin Wheeler at 61:6-24; Exhibit D, Deposition of Ramon Pierre at 80:9-18.

[16]   Uncontested Material Fact Nos. 11, 12, 13.

[17]   Uncontested Material Fact No. 14.

[18]   Uncontested Material Fact No. 16; Exhibit B, Deposition of Bilal Hankins at 70:7-24.

[19]   Exhibit A, First Amended Complaint at ¶ 57; Exhibit B, Deposition of Bilal Hankins at 60:5-16, 64:9-65:17, 107:7-109:6.

[20]   Exhibit B, Deposition of Bilal Hankins at 107:7-109:6

[21]   Exhibit B, Deposition of Bilal Hankins at 113:13-114:14.

4143698v.2

of the car were permitted to leave.[22]

GPS data confirms that Officer Pierre's vehicle was stopped on Octavia Street shortly after midnight for only four minutes and twenty-seven seconds.[23]  Thus, the entirety of the stop, including the time that Officer Wheeler took down Plaintiff's contact information, lasted no more than five minutes.[24]  Plaintiff has offered no proof of the length of the stop other than his own subjective belief and has admitted that he does not know how long the stop lasted.[25]

Following the stop, Plaintiff had no further direct contact with Officers Wheeler or Pierre. He lodged complaints with and provided statements to both HANO and the Orleans Levee District ("OLD").  Both agencies investigated Plaintiff's claims and determined that his complaints were unfounded.[26]  Sergeant Demetrius Jackson conducted the investigation on behalf of HANO.[27]  As part of his investigation, he took the statement of Officer Pierre, interviewed Plaintiff, interviewed the other occupants of the vehicle, interviewed a resident of the area where the stop occurred who had witnessed a portion of the stop, and canvassed the area where the stop occurred.[28]  During the course of the investigation, Officer Pierre was not permitted by HANO to work private paid details services.[29]  Ultimately, Sergeant Jackson concluded (based on the investigation, statements made by the witness and conflicting statements of the complainants) that there was "no evidence to

---

[22]  Uncontested Material Fact No. 17.

[23]  Uncontested Material Fact Nos. 24, 26.

[24]  Uncontested Material Fact No. 24.  Officer Wheeler's vehicle was stopped a total of 3 minutes and 48 seconds during the incident in question.  Uncontested Material Fact No. 25.

[25]  Exhibit B, Deposition of Bilal Hankins at 75:8-20.

[26]  Uncontested Material Fact No. 57; *see* Exhibit F, Declaration of Vance Bienemey, Jr. at ¶ 11.

[27]  Uncontested Material Fact Nos. 37, 55.

[28]  Uncontested Material Fact No. 55.

[29]  Uncontested Material Fact No. 56.

4143698v.2

support misconduct or departmental policy violations by Officer Ramon Pierre."[30]

### B.    The HANO Officers

There is no dispute that none of the HANO Officers were present at any time during the stop on the night of June 13.[31]   Rather, Plaintiff seeks to hold the HANO Officers liable under a theory of supervisory liability.   Defendant Lieutenant Tyrone Martin is the current Operations Commander of the HANO police department.[32]   He has served as a HANO officer since 2011.  He was promoted to the rank of Sergeant in 2012 and to the rank of Lieutenant in 2015.[33]   Sergeant Demetrius Jackson was hired as a HANO office in July 2012 and was promoted to Sergeant in June 2015.[34]   Sergeant Tommy Mercadal has served as a HANO officer since January 2011 and was promoted to Sergeant in January 2015.[35]   Sergeant Leontine Mullins has served as a HANO officer since 2011 and was promoted to Sergeant in 2015.[36]

None of the HANO Officers had any involvement in the hiring of Officer Pierre.[37]   All of the HANO Officers have general supervisory responsibilities of other officers at HANO in the performance of their duties for HANO, including over Officer Pierre, and have had occasion to supervise officers in the performance of their duties, including their interactions with persons in the community and duties that relate to stops, seizures, and use of force.[38]   Lieutenant Martin

---

[30]   Uncontested Material Fact No. 57.

[31]   Uncontested Material Fact Nos. 27, 28, 29, 30.

[32]   Exhibit G, Declaration of Tyrone Martin at ¶ 4.

[33]   *Id.* at ¶ 6.

[34]   Exhibit H, Declaration of Demetrius Jackson at ¶ 5.

[35]   Exhibit I, Declaration of Tommy Mercadal at ¶ 5.

[36]   Exhibit J, Declaration of Leontine Mullins at ¶ 5.

[37]   Exhibit G at ¶ 7; Exhibit H at ¶ 6; Exhibit I at ¶ 6; Exhibit J at ¶ 6.

[38]   Uncontested Material Fact Nos. 31, 32, 33, 35.

exercises additional supervisory responsibilities in that as the Operations Commander of the HANO police department, he collaborated with the former HANO Director of Public Safety/Chief of Police and others to provide guidance, management, planning and assistance to the HANO police department and to oversee and coordinate all operations of the HANO police department.[39] Also in his capacity as Operations Commander, Lieutenant Martin is aware that Officer Pierre has been POST (Peace Officers Standards & Training) certified in the State of Louisiana, including firearms certification, and that Officer Pierre has met his annual training requirements since being hired by HANO as a police officer.[40]  Officer Pierre's annual POST training has included courses on use of force, search and seizure, and firearms.[41]  Plaintiff has made no allegation that the training required for police officers by the State of Louisiana is insufficient.[42]

At the time relevant to the claims of the First Amended Complaint, Lieutenant Martin assisted in the administration of HANO's paid detail program and was involved in approving various paid details worked by Officer Pierre.[43]  Sergeant Jackson assists in the administration of the paid detail program by keeping and/or maintaining program records, including requests for authorization to work a paid detail, maintaining a list of information about paid details worked by HANO officers, and submitting the list for review and approval.[44]  Sergeant Mercadal and Sergeant Mullins have had no role with respect to a paid detail program for HANO officers.[45]  Through the HANO paid detail program, HANO assures that its officers are only working details permitted by

---

[39]   Exhibit G at ¶ 9.

[40]   *See* Uncontested Material Fact Nos. 52, 53; Exhibit G at ¶¶ 14, 15, 16; *see also* Exhibits G-1 and G-2.

[41]   Uncontested Material Fact No. 54; *see also* Exhibits G-1 and G-2.

[42]   *See generally* Exhibit A, First Amended Complaint.

[43]   Exhibit G at ¶ 9

[44]   Exhibit H at ¶ 10.

[45]   Uncontested Material Fact Nos. 34, 36.

4143698v.2

HANO policy and that HANO knows when and where its officers are working paid details.  It does not undertake to supervise those officers working off hours on private details for other entities.

With regard to investigation and discipline of Officer Pierre during his time as an officer of HANO, other than the investigation associated with the activities of June 13, 2022, Lieutenant Martin, Sergeant Mercadal, and Sergeant Mullins are aware of internal human resources investigations and disciplinary action involving Officer Pierre.[46]  The investigations of which they were aware concerned alleged insubordinate conduct and a dispute with a co-worker, not complaints regarding Officer Pierre's interaction with citizens.[47]  Sergeant Jackson was not aware of and did not participate in the internal investigations of Officer Pierre unrelated to the stop that occurred on June 13, 2020.[48]  To the knowledge of the HANO Officers, no citizen has ever lodged a complaint against Officer Pierre accusing him of mishandling a stop, conducting an unreasonable seizure, or using excessive force,[49] and HANO has not received any other complaint from a citizen regarding a HANO police officer's conduct while working a private detail for Hurstville.[50]

In response to discovery requests, HANO produced the training records of Officer Pierre.[51] Plaintiff has made no specific allegations as to the alleged deficiency in Officer Pierre's training, and at his deposition Plaintiff could not identify any specific deficiencies with the training that contributed to the alleged violation of his constitutional rights.[52]

---

[46]  *See* Exhibit G at ¶¶ 19-22; Exhibit I at ¶¶ 11-12; Exhibit J at ¶¶ 10-12.

[47]  *Id.*

[48]  Exhibit H at ¶ 21.

[49]  Uncontested Material Fact Nos. 39-50.

[50]  Uncontested Material Fact No. 38.

[51]  *See* Exhibit G-2.

[52]  *See* Exhibit B, Deposition of Bilal Hankins at 102:8-103:2.

4143698v.2

III.    <u>LAW AND ARGUMENT</u>

A.    **Summary Judgment Standard for Qualified Immunity Defense.**

Summary judgment is appropriate if "there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986); *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994).  A fact is material if it "might affect the outcome of the suit under governing law." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986).  "[O]nly those disputes over facts that might affect the outcome of the lawsuit under governing substantive law will preclude summary judgment." *Phillips Oil Co. v. OKC Corp.*, 812 F.2d 265, 272 (5th Cir. 1987).

In determining whether a genuine issue of material fact exists, the Court should "view the evidence and draw inferences in a manner most favorable to the nonmoving party." *Gen. Universal Sys., Inc. v. Lee,* 379 F.3d 131, 142 (5th Cir. 2004).  "A qualified immunity defense alters the usual summary judgment burden of proof."  *Brown v. Callahan*, 623 F.3d 249, 253 (5th Cir. 2010).  Specifically, "[o]nce an official pleads the defense, the burden then shifts to the plaintiff, who must rebut the defense by establishing a genuine fact issue as to whether the official's allegedly wrongful conduct violated clearly established law." *Id.*

Factual differences are not considered material unless the differences are such that a reasonable jury could find for the party contesting the summary judgment motion.  *Id.* at 252.  Thus, the nonmoving party must do more than show some "metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).  Rather, the nonmoving party must present specific facts showing that a genuine factual issue exists by "citing to particular parts of materials in the record."  *Shreve v. Franklin Cnty., Ohio*, 743 F.3d 126, 132 (6th Cir. 2014); *see also Anderson*, 477 U.S. at 252 ("The mere existence of a scintilla of evidence in support of the [nonmoving party's] position will be insufficient; there must be evidence

on which the jury could reasonably find for the [nonmoving party].")  Plaintiff will be unable to point to any material fact that would prevent the Court from finding that the HANO Officers are entitled to qualified immunity.  Thus, the Court should grant the HANO Officers' Motion for Summary Judgment and dismiss all claims against them.

**B.     Qualified Immunity Analysis**

To determine whether an official is entitled to qualified immunity, the court "must determine: (1) whether the plaintiff has alleged a violation of a clearly established constitutional right; and (2) if so, whether the defendant's conduct was objectively unreasonable in light of clearly established law at the time of the incident." *Jacobs v. W. Feliciana Sheriff's Dep't*, 228 F.3d 388, 393 (5th Cir. 2000).  "'If officers of reasonable competence could disagree as to whether the plaintiff's rights were violated, the officer's qualified immunity remains intact.'" *Griggs v. Brewer*, 841 F.3d 308, 313 (5th Cir. 2016) (*Tarver v. City of Edna*, 410 F.3d 745, 750 (5th Cir. 2005)).

"A supervisor may not be held liable under section 1983 merely because his subordinate committed a constitutional tort."  *Poe v. Leonard*, 282 F.3d 123, 140 (2d Cir. 2002).  "When a supervisor seeks qualified immunity in a section 1983 action, the 'clearly established' prong of the qualified immunity inquiry is satisfied when (1) the subordinate's actions violated a clearly established constitutional right, and (2) it was clearly established that a supervisor would be liable for constitutional violations perpetrated by his subordinates in that context." *Camilo-Robles v. Hoyos*, 151 F.3d 1, 6 (1st Cir. 1998) (citing *Doe v. Taylor Indep. Sch. Dist.*, 15 F.3d 443, 456 (5th Cir. 1994)).  "In other words, for a supervisor to be liable there must be a bifurcated 'clearly established' inquiry—one branch probing the underlying violation, and the other probing the supervisor's potential liability." *Id.*  To defeat qualified immunity and establish a supervisor's liability, the plaintiff must establish the supervisor's "deliberate indifference to the rights of others by his failure to act on information indicating unconstitutional acts were occurring or for his gross

4143698v.2

negligence in failing to supervise his subordinates who commit such wrongful acts, provided that the plaintiff can show an affirmative causal link between the supervisor's inaction and [his] injury." *Poe*, at 140.

**C.    Plaintiff Has Failed to Establish a Constitutional Violation by Officer Pierre Necessary to Impose Liability on the HANO Officers.**

Federal courts agree that absent an underlying constitutional violation, there cannot be supervisory liability for a failure to train or supervise. *Pena v. Givens*, 637 F. App'x 775, 785 (5th Cir. 2015) ("Supervisory liability requires a constitutional violation by a subordinate."); *see also Smith v. Heap*, 31 F.4th 905, 913 (5th Cir. 2022) (holding that plaintiff's failure to adequately plead a constitutional violation "doom[ed]" his other claims for supervisory liability because "[a]bsent a constitutional violation, [the supervisor] can't be liable for supervising one, ratifying one, or for failing to train his deputies to avoid one."). Accepting all of Plaintiff's allegations as true, Plaintiff cannot show that the stop nor Officer Pierre's participation in the stop violated Plaintiff's constitutional rights to be free from unreasonable seizure or excessive force.

**1.    Plaintiff was Not Subjected to an Unreasonable Seizure.**

Plaintiff first claims that he was subjected to an unreasonable seizure in violation of his Fourth Amendment rights.[53]  The Complaint and Plaintiff's testimony provide little in the way to explain why he contends that the stop performed by Officers Wheeler and Pierre was unreasonable. The only allegation that the stop was unreasonable is that "[Plaintiff] and his friend had only shortly before requested Defendant Wheeler's assistance in locating the lost chihuahua."[54]

Traffic stops are considered seizures for the purposes of the Fourth Amendment. *See United States v. Lopez-Moreno*, 420 F.3d 420, 430 (5th Cir. 2005).  In *Lopez-Moreno*, the United

---

[53]    Exhibit A, First Amended Complaint at ¶¶ 88-91.

[54]    *Id.* at ¶ 91.

4143698v.2

State Fifth Circuit discussed the appropriate framework for analyzing the legality of a traffic stop

pursuant to *Terry v. Ohio*:

> Under the two-part *Terry* reasonable suspicion inquiry, we ask whether the officer's action was: (1) "Justified at its inception"; and (2) "reasonably related in scope to the circumstances which justified the interference in the first place."
>
> For a traffic stop to be justified at its inception, an officer must have an objectively reasonable suspicion that some sort of illegal activity, such as a traffic violation, occurred, or is about to occur, before stopping the vehicle. The Supreme Court has stated that in making reasonable suspicion inquiry, a court "must look at the 'totality of the circumstances' of each case to see whether the detaining officer has a 'particularized and objective basis' for suspecting legal wrongdoing." We have stated previously that reasonable suspicion exists when the officer can point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant the search and seizure. . . . It is also clear, however, that reasonable suspicion need not rise to the level of probable cause.

*Id.* (citations omitted).

### a.     Officer Wheeler articulated reasonable suspicions in order to effectuate the stop.

Plaintiff cannot dispute that Officer Wheeler articulated multiple factors to support his

reasonable suspicion:  Mr. Pierre's car was driving very slowly uptown near midnight, the

occupants appeared to be hanging out the window, the occupants did not appear to be buckled,

Plaintiff approached Officer Wheeler regarding a missing dog, the car was registered to a woman,

and it was registered not at an address in uptown New Orleans but in New Orleans East.[55]

Plaintiff's own testimony agrees that (1) Mr. Pierre's vehicle is registered to his mother,[56] (2) Mr.

Pierre was a resident of New Orleans East, where the car was registered,[57] (3) Plaintiff approached

Officer Wheeler regarding the missing dog,[58] and (4) Mr. Pierre was driving his vehicle slowly

---

[55]   *See* Uncontested Material Fact Nos. 8, 9, 10; *see also* Exhibit F-1, Investigative Review of the Orleans Levee District.

[56]   Uncontested Material Fact No. 6.

[57]   Uncontested Material Fact No. 6.

[58]   Uncontested Material Fact No. 8.

through the uptown neighborhood near midnight.[59]  Officer Wheeler, therefore, articulated a reasonable suspicion based on the totality of circumstances to stop the vehicle.  Officer Pierre provided assistance in performing the stop based on Officer Wheeler's articulated suspicion.  These factors alone serve as an objectively reasonable basis to perform a stop of the vehicle under the law as articulated in *Lopez-Marino*, and the reasonableness of the officers' actions were confirmed by the internal investigations performed by HANO and OLD.[60]  Plaintiff cannot provide any credible evidence that rebuts the officers' reasonable suspicion.  Rather, he points only to his own belief that his first approaching Officer Wheeler regarding the missing dog should have negated all suspicion.  An officer does not have to be correct in his suspicion in order to avoid liability, as his suspicion not even need to rise to the level of probable cause.  *See Lopez-Marino* at 430.  The officers here articulated reasonable suspicion in order to make a valid *Terry* stop and did not violate Plaintiff's constitutional rights.

> **b.      The stop lasted no longer than necessary to identify Mr. Pierre and obtain additional information from Plaintiff.**

Once a court determines whether the officer had a reasonable suspicion to conduct the stop, the court then must determine whether the detention lasted "no longer than is necessary to effectuate the purpose of the stop."  *Id.* at 430  "In the course of effectuating the stop, a police officer may permissibly examine the driver's license and registration and run a computer check on them to investigate whether the drive has any outstanding warrants and if the vehicle is stolen.  An officer may also ask the drive about the purpose and itinerary of his trip."  *Id.* at 430-431 (citations omitted).  There is no bright line rule regarding the duration of a stop; instead "common sense and

---

[59]   Uncontested Material Fact No. 9; Exhibit B, Deposition of Bilal Hankins at 41:2-22; *see also* Exhibit D, Deposition of Ramon Pierre at 80:9-18.

[60]   *See* Exhibit F-1, Investigative Review of the Orleans Levee District; Exhibits H-1 and H-2, June 25, 2020 and July 6, 2020 Memoranda by Sgt. Demetrius Jackson.

4143698v.2

ordinary human experience" govern.  *United States v. Sharpe*, 470 U.S. 675, 685 (1985).  The Eleventh Circuit addressed this issue in *Courson v. McMillan*, in which a plaintiff claimed she was subjected to unreasonable seizure when she was detained as a passenger while the driver of the vehicle and another passenger were arrested.  939 F.2d 1479 (11th Cir. 1991).  The court noted that other than being asked her identity, the plaintiff was not interrogated, she was not touched physically, and she was not taken from the scene of the stop.  *Id.* at 1493.  There was no material issue of fact in question, and the officer's conduct was determined to be reasonable, even though the stop lasted over thirty minutes and the plaintiff was required to lay on the ground while the officer's weapon was drawn during the stop.  *Id*. at 1484, 1493.  The appellate court, accordingly, remanded the matter to the trial court to render summary judgment dismissing plaintiff's claim of unreasonable seizure.  *Id.* at 1493.

According to Plaintiff's own testimony, the stop of Mr. Pierre's vehicle ended once Officer Wheeler checked Mr. Pierre's driver's license and asked the occupants of the vehicle additional details regarding the missing dog and obtained their contact information.[61]  Per the GPS records that indicated each officers' coordinates and location, the stop lasted a maximum four minutes and twenty-seven seconds.[62]  The stop was of such a short duration that it could not have lasted any longer than necessary to confirm Mr. Pierre's address and ask additional details regarding the missing dog, which conforms with Plaintiff's own testimony.  Unlike the plaintiff in *Courson*, Plaintiff was not even required to step out of the vehicle.[63]  Per his own testimony, Plaintiff voluntarily provided information to Officer Wheeler in order to address the officer's questions to

---

[61]  Uncontested Material Fact No. 17 (citing Exhibit B, Deposition of Bilal Hankins at 75:21-78:24).

[62]  Uncontested Material Fact No. 26; Exhibits E-1 and E-2, GPS activity of Officer Pierre on June 13, 2020.

[63]  Uncontested Material Fact Nos. 15, 18.

4143698v.2

Mr. Pierre.[64]  At no time during the stop did the officers verbally threaten to shoot Plaintiff or the occupants of the vehicle, nor did they fire upon Plaintiff or the others, nor did they lay hands or handcuff the Plaintiff or other occupants of the vehicle.[65]  In fact, Plaintiff does not recall Officer Pierre speaking to him at all during the entirety of the stop with perhaps the exception of giving a command to show his hands.[66]  The length and nature of the stop were far less than what the court found to be appropriate in *Courson*.  There is no jurisprudence that suggests that such a short investigatory stop amounts to an unreasonable seizure when the officer has articulated a reasonable suspicion leading to the stop.

The evidence establishes that Officer Wheeler and Officer Pierre articulated a reasonable suspicion to stop Mr. Pierre's vehicle and that the stop lasted no longer than necessary to determine Mr. Pierre's identity.  Because the stop of the vehicle conforms with the requirements of *Terry*, Plaintiff was not subjected to an unreasonable seizure.

### 2.      Plaintiff was Not Subjected to the Use of Excessive Force.

Plaintiff also asserts that his Constitutional rights were violated when Officer Pierre, who was providing backup to Officer Wheeler, drew his weapon and pointed it at the twelve year old occupant of the vehicle, L.M.[67]  Plaintiff claims that in order for Officer Pierre to point his weapon at L.M., he aimed at the vehicle generally, which placed Plaintiff in fear.[68]  Plaintiff further testified that Officer Pierre allegedly holstered his weapon after Officer Wheeler confirmed Mr. Pierre's identity.[69]  Officers Wheeler and Pierre offer different accounts, both testifying that neither drew

---

[64]   Exhibit A, First Amended Complaint at ¶¶ 61, 62; Exhibit B, Deposition of Bilal Hankins at 70:7-71:5.

[65]   Uncontested Material Fact Nos. 19, 20, 21.

[66]   Exhibit B, Deposition of Bilal Hankins at 94:15-19.

[67]   *See* Exhibit A, First Amended Complaint at ¶ 57.

[68]   *See* Exhibit B, Deposition of Bilal Hankins at 107:7-109:6

[69]   Exhibit B, Deposition of Bilal Hankins at 113:13-114:14.

4143698v.2

their weapon.  But even accepting all of Plaintiff's allegations as true, Plaintiff cannot establish

either officer used excessive force during the short stop, as the law does not support that merely

drawing a weapon (if that is what actually occurred) supports a finding of excessive force.[70]

When a plaintiff brings a claim for excessive force pursuant to § 1983, the Supreme Court

has stated that the "analysis begins by identifying the specific constitutional right allegedly

infringed by the challenged application of force."  *Graham v. Connor*, 490 U.S. 386, 394 (1989).

Additionally, where a plaintiff alleges that excessive force has been used in the context of an

"arrest, investigatory stop, or other 'seizure' of a free citizen," the claim should be analyzed under

the Fourth Amendment's "reasonableness" standard.  *Id.* at 395.  The *Graham* court opined that

because the "reasonableness" standard is "'not capable of precise definition or mechanical

application,' . . . its proper application requires careful attention to the facts and circumstances of

each particular case . . . ."  *Id.* at 396 (quoting *Bell v. Wolfish*, 441 U.S. 520, 559 (1979)).

"Fourth Amendment jurisprudence has long recognized that the right to make an arrest or

investigatory stop necessarily carries with it the right to use some degree of physical coercion or

threat thereof to effect it."  *Graham v. Connor*, 490 U.S. 386, 396, 109 S.Ct. 1865, 104 L.Ed.2d

443 (1989). With regard to traffic stops, the Fifth Circuit has remarked that "the Supreme Court

has repeatedly observed that traffic stops (even those far more innocuous than the one at issue in

this case) are inherently dangerous."  *Roberts v. City of Shreveport*, 397 F.3d 287, 294 (5th Cir.

2005) (citing *Maryland v. Wilson*, 519 U.S. 408, 413 (1997); *Michigan v. Long*, 463 U.S. 1032,

---

[70]   *See Davila v. U.S*, 713 F.3d 248, 260 (5th Cir. 2013) (drawing gun and handcuffing driver and
occupants not unreasonable); *Pleasant v. Zamieski*, 895 F.2d 272, 276 (6th Cir. 1990) (officer's decision
to draw gun during traffic stop was reasonable); *Collins v. Nagle*, 892 F.2d 489, 497 (6th Cir. 1989)
(plaintiff's allegation that an officer pointed a gun at him and requested that he leave did not rise to the
level of a constitutional violation); *Edwards v. Giles*, 51 F.3d 155, 157 (8th Cir. 1995) (the mere act of
drawing and pointing a gun without any indication that the officer intended to or attempted to fire the
gun will not rise to the level of a constitutional violation).

4143698v.2

1049 (1983); *United States v. Bake*r, 47 F.3d 691, 694–95 (5th Cir.1995). The Fifth Circuit has also recognized that there is a distinction between using force by firing a gun and displaying force as a conditional threat to use actual force if necessary. *Hinojosa v. City of Terrell*, 834 F.2d 1223, 1231 (5th Cir. 1988).

"Fourth amendment analysis should depend on an objective assessment of the officers' conduct, rather than a subjective assessment of the suspect's reaction to that conduct." *McNair v. Coffey*, 279 F.3d 463, 466 (7th Cir. 2002). "[T]he fourth amendment does not duplicate the tort of negligent infliction of emotional distress." *Id.* at 467. In *McNair*, the defendant officer had probable cause to stop the plaintiffs and requested backup in making the stop after plaintiffs delayed in pulling over after the officer initiated his flashing lights. *Id.* at 464. When plaintiffs eventually stopped, they were surrounded by eight squad cars, and many of the officers had their weapons drawn and pointed at the plaintiffs. *Id.* The plaintiffs "were not roughed up [and] matters were handled peaceably." *Id.* While the court recognized the back-up response may have been disproportional to the need for back-up, the court was unable to find any support for the proposition "that an excessive number of squad cars or drawn guns can violate the fourth amendment by giving fright or offense if the seizure is supported by probable cause and otherwise reasonable." *Id.* at 467. As discussed above, the stop initiated by Officers Wheeler and Pierre was based on reasonable suspicion and was lawful. Drawing a weapon is not inherently unreasonable, and as articulated by the courts, the inherent danger in conducting a stop of a vehicle lends itself to displaying force until the officer has made a determination that the situation is safe.

Acting reasonably does not mean the conduct in question is without blemish or imperfection. Things often look clearer with the benefit of hindsight, which is the very reason that courts look to what a reasonable officer *at the scene* would have done. When considered from the

appropriate vantage point, Officer Pierre's conduct falls well within the purview of reasonableness. Assuming *arguendo* that Officer Pierre brandished his weapon during the brief stop,[71] as Plaintiff claims, such conduct is reasonable given that the stop occurred after midnight; Officer Pierre did not know how many occupants were in the car or whether they were armed; and one occupant stuck his head out of the car during the stop.  Accordingly, Plaintiff has failed to allege facts sufficient to illustrate that the conduct he attributes to Officer Pierre was unreasonable and, thus, will be unable to establish a constitutional violation.  Therefore, the HANO Officers are entitled to summary judgment due to Plaintiff's failure to establish an underlying violation of his constitutional rights for which they might be held responsible.

> **D.**  **Even if a Five Minute Stop or Briefly Drawing a Weapon Constituted a Constitutional Violation, the HANO Officers are Entitled to Qualified Immunity**

When considering a supervisor's qualified immunity defense, appellate jurisprudence considers whether the supervisor actions were objectively unreasonable in the light of established law in performing his or her duties as a supervisor.  "The second prong of the qualified immunity test is better understood as two separate inquiries: whether the allegedly violated constitutional rights were clearly established at the time of the incident; and, if so, whether the conduct of the defendants was objectively unreasonable in the light of that then clearly established law." *Hare v. City of Corinth*, 135 F.3d 320, 326 (5th Cir. 1998) (citing *Pierce v. Smith*, 117 F.3d 866 (5th Cir.1997); *Rankin v. Klevenhagen*, 5 F.3d 103, 108 (5th Cir. 1993) ("When evaluating whether a plaintiff stated a constitutional violation, we looked to currently applicable constitutional standards.  However, the objective reasonableness of an official's conduct must be measured with

---

[71] As a reminder, the entire stop, including taking down information regarding the missing dog lasted no more than 4 minutes 27 seconds.  *See* Exhibits E-1 and E-2, GPS records of Officers Wheeler and Pierre.

4143698v.2

reference to the law as it existed at the time of the conduct in question.")  As discussed above, when a supervisor's liability under the second prong is analyzed, the court must determine whether the defendant demonstrated "deliberate indifference to the rights of others by his failure to act on information indicating unconstitutional acts were occurring or for his gross negligence in failing to supervise his subordinates who commit such wrongful acts, provided that the plaintiff can show an affirmative causal link between the supervisor's inaction and [his] injury." *Poe v. Leonard*, 282 F.3d 123, 140 (2d Cir. 2002).  Plaintiff cannot meet his burden that any of the HANO Officers acted with deliberate indifference or gross negligence in training, supervising, or disciplining Officer Pierre.

### 1.  Plaintiff Must Establish Each Officer's Liability Individually

As a matter of first importance, to conduct a qualified immunity analysis, "each defendant officer's conduct must be examined individually." *Hill v. New Orleans City*, 643 Fed. Appx 332, 337 (5th Cir. 2016).  "An officer cannot be held individually liable in a §1983 suit merely because he or she was tangentially involved . . . ; there must be some evidence tying the officer to misconduct." *Id.*  The allegations of Plaintiff's First Amended Complaint and the testimony provided by Plaintiff fail to make any allegations regarding any particular HANO Officer.  As discussed in HANO's Motion to Dismiss [R. Doc. 38], Plaintiff improperly lumps all defendants together to assert they are all liable for the failure to train, supervise, or discipline Officers Wheeler and Pierre, not even drawing a distinction between the officers and their individual employers and supervisors.[72]  While each HANO Officer has general supervisory responsibilities over HANO police officers, they each have distinct roles in the supervising of Officer Pierre and have different

---

[72] *See* Exhibit A, First Amended Complaint at ¶¶ 88-91.

knowledge regarding complaints, investigations, discipline, and his training.[73]

      **2.**    **Plaintiff Cannot Establish any HANO Officer was Deliberately Indifferent to Overcome Their Qualified Immunity.**

         **a.**    **Officer Pierre had No History of Similar Complaints, and Plaintiff Cannot Establish HANO Officers were Deliberately Indifferent to the Need to Train or Supervise Officer Pierre.**

In order to plausibly allege that any HANO Officer was deliberately indifferent to the need for training, a plaintiff must allege that the defendant had "'notice of a pattern of similar violations,' which were 'fairly similar to what ultimately transpired.'" *Anokwuru v. City of Houston*, 990 F.3d 956, 966 (5th Cir. 2021) (quoting *Sanders-Burns v. City of Plano*, 594 F.3d 366, 3861 (5th Cir. 2010)). A plaintiff pointing "only to his own incident as proof of a policy of deliberate indifference" is generally insufficient to allege that police training was deliberately indifferent to the plaintiff's rights. *Id.* In rare instances, a single incident could establish deliberate indifference when the municipality provided no training whatsoever. *Anokwuru*, 990 F.3d at 966 (citing *Burge v. St. Tammany Parish*, 336 F.3d 363, 372 (5th Cir. 2003)). However, Plaintiff has made no such allegation, and the undisputed evidence demonstrates that Officer Pierre had received POST training required to become a police officer in the State of Louisiana.[74] Additionally, Officer Pierre received annual training on various policing topics.[75] Relevant to these proceedings, Officer Pierre received additional training on the use of force in 2016, 2017, 2018, and 2019, training on search and seizure in 2019, and eight hours of firearms training every year.[76]

In order to establish deliberate indifference to train or supervise officers, a "plaintiff must

---

[73]   *See* Exhibits G, H, I, and J, Declarations of the HANO Officers.

[74]   Uncontested Material Fact No. 52; *see* Exhibit G-1, POST certification records.

[75]   Uncontested Material Fact Nos. 53, 54; Exhibit G-2, training records.

[76]   Uncontested Material Fact No. 54; Exhibit G-2 (HANO 730-739).

4143698v.2

generally demonstrate that the municipality or supervisor had notice of a pattern of prior acts 'fairly similar to what ultimately transpired.'"  *Lewis v. Pugh*, 289 Fed. Appx. 767, 772 (5th Cir. 2008) (quoting *Estate of Davis ex rel. McCully v. City of N. Richland Hills*, 406 F.3d 375, 383 (5th Cir. 2005)).  In *Estate of Davis ex rel. McCully v. City of North Richland Hills*, the Fifth Circuit Court of Appeals specifically addressed the standard necessary to establish deliberate indifference in connection with a claim for failure to train or supervise:  "To satisfy the deliberate indifference prong, a plaintiff usually must demonstrate a pattern of violations and that the inadequacy of the training is 'obvious and obviously likely to result in a constitutional violation.'"  406 F.3d 375, 381 (5th Cir. 2005).  In *Davis*, the plaintiff alleged that the officer in question had a propensity for violence and that his supervisors had failed to take action when a citizen made a prior complaint about the officer.  *Id.* at 382.  Even accepting the allegations of the plaintiff, the Fifth Circuit did not find that the allegations as a whole demonstrated deliberate indifference on the part of the supervisor defendants, as the plaintiff did not establish a pattern of similar incidents.  *Id.* at 383. And in this district, the court has determined that even three incidents of a similar nature by the department are "insufficient to constitute a 'pattern' in the Fifth Circuit."  *Dotson v. Edmonson*, 2018 WL 501512, *12 (E.D. La. Jan 22, 2018) (citing *Davidson v. City of Stafford, Texa*s, 848 F.3d 384, 396 (5th Cir. 2017) (rejecting a claim of pattern of practice where plaintiff alleges three cases in three and a half years); *Peterson v. City of Fort Worth, Tex.*, 588, F.3d 838 (5th Cir. 2009) (no pattern with twenty-seven complaints of excessive force over a four-year period)).

Even in instances where a specific officer has a history of misconduct, the plaintiff must demonstrate a pattern of similar incidents to which the defendant supervisor was deliberately indifferent.  For example, in *Lewis v. Pugh*, the plaintiff accused an officer of raping and assaulting her and sought to hold both the city and the supervising officer liable pursuant to section 1983.

289 Fed. Appx. 767, 769-770 (5th Cir. 2008).  Attempting to demonstrate that the officer had a history of prior misconduct, the plaintiff pointed to four excessive force and unlawful arrest claims stemming from one incident.  *Id.* at 772.  In analyzing the plaintiff's evidence, the court observed that "other than the fact that both incidents involved alleged violence committed by [the officer], there is little similarity" between the two incidents.  *Id.* at 773.  Citing to *Estate of Davis*, the court noted that Fifth Circuit "case law requires that 'the prior acts be fairly similar to what ultimately transpired.'"  *Id.* (quoting *Estate of Davis*, 406 F.3d at 383).  Accordingly, the court held that "there is no conduct from which it could be reasonably concluded that [the supervisor] or the City made a deliberate or conscious choice to endanger constitutional rights."  *Id.*  The court thus affirmed the district court's dismissal of the claim.

Here, there is no evidence that Officer Pierre was known to (or even accused) of a pattern of making unreasonable seizures or using excessive force or that there was a history of complaints of excessive force or unreasonable seizures in the HANO police department.  None of the HANO Officers had ever received a complaint or been advised of any complaint with regard to Officer Pierre in connection with any interaction between Officer Pierre and a citizen regarding an alleged unreasonable stop, seizure, or use of excessive force.[77]  Nor had HANO received any other complaint regarding any officer's conduct while working the Hurstville patrol.[78]  Thus, there is simply no evidence that any HANO Officer acted with deliberate indifference with regard to either training or supervising Officer Pierre in connection with either seizures or use of force, particularly given that he received training on these topics.  At most, Officer Pierre's employment history shows instances of insubordination toward his supervisors and making derogatory comments toward his

---

[77]   Uncontested Material Fact Nos. 39-50.

[78]   Exhibit G at ¶ 11.

coworkers, which formed the basis of the complaints made against him during his time as a HANO police officer.[79]  None of these complaints involved allegations of use of force.  Clearly, such interactions with his supervisors and coworkers do not establish that any of the HANO Officers was deliberately indifferent to the constitutional rights of citizens, as such interactions have no similarity to Plaintiff's allegations in these proceedings.

Rather, the undisputed evidence is that Officer Pierre received all training required of Louisiana police officers and had received additional training while working for HANO po specifically on seizures and use of force.[80]  There is nothing in the record that establishes that such training was inadequate or that the HANO Officers were indifferent to the Fourth Amendment rights of citizens.  Thus, Plaintiff cannot create a genuine dispute as to any material fact as to whether the HANO Officers were deliberately indifferent, and the Court must grant their motion for summary judgment, determining they are entitled to qualified immunity on these claims.

> **b.**     **Plaintiff Cannot Establish the HANO Officers Failed to Discipline Officer Pierre.**

Likewise, Plaintiff will be unable to create a material issue of fact that supports deliberate indifference on the part of any HANO Officer for any alleged failure to discipline Officer Pierre. It is well-established that a single incident of a failure to discipline following the plaintiff's complaint of an alleged incident cannot be the cause of the alleged incident.  *See Berry v. McLemore*, 670 F.2d 30, 33 (5th Cir. 1982) (overturned on other grounds).  And there is no allegation that Officer Pierre or any other HANO officer was not appropriately disciplined following any alleged instances of unreasonable seizures or excessive uses of force, particularly given that all of the available evidence indicates Officer Pierre has never been accused of

---

[79]   *See* Exhibit G at ¶¶ 19-22; Exhibit I at ¶¶ 11-12; Exhibit J at ¶¶ 10-12.

[80]   Uncontested Material Fact Nos. 53, 54.

conducting an unreasonable stop or seizure or using excessive force.[81]  Rather, the evidence demonstrates that when accused by Plaintiff, HANO conducted an investigation that included interviewing Plaintiff, interviewing the other occupants of the vehicle, canvassing the area and interviewing a resident who witnessed part of the interaction between Plaintiff and Officers Wheeler and Pierre, and interviewing Officer Pierre.[82]  Officer Pierre was not permitted to work private paid details during the pendency of the investigation.[83]  Rather than demonstrating a failure to discipline, the HANO Officers immediately arranged an investigation.[84]  Plaintiff's complaints were determined to be unfounded given the articulated suspicions of Officers Wheeler and Pierre and the contradictory statements given by Plaintiff and the other occupants of the vehicle and the eyewitness to the stop.[85]  The HANO Officer's actions following Plaintiff's complaint demonstrate a commitment to investigating all complaints made by the public.

In any event, an after-the-fact failure to investigate does not supply the basis for a cause of action.  The Fifth Circuit "will not infer an unconstitutional custom or policy from a municipality's failure to discipline an officer for a single incident."  *Lopez-Rodriguez v. City of Levelland, Texas*, 100 Fed. Appx. 272, 274 (5th Cir. 2004) (citation omitted).  Thus, Plaintiff's failure to establish any instances of a failure to discipline Officer Pierre or any HANO police officer prior June 13, 2020 is fatal to the cause of action, entitles each HANO Officer to qualified immunity, and requires the granting of summary judgment in favor of each of the HANO Officers.

---

[81]   Uncontested Material Fact Nos. 39-50.

[82]   Uncontested Material Fact No. 55.

[83]   Uncontested Material Fact No. 56.

[84]   *See* Uncontested Material Fact No. 37; Exhibit H, Declaration of Demetrius Jackson at ¶¶ 11, 13-20; Exhibits H-1 and H-2.

[85]   Exhibit H, Declaration of Demetrius Jackson at ¶¶ 18, 20; Exhibits H-1 and H-2; Exhibit F, Declaration of Vance Bienimy, Jr. at ¶ 11; Exhibit F-1, Investigative Review.

4143698v.2

IV.     **CONCLUSION**

For the reasons detailed herein, the HANO Officers are entitled to qualified immunity, and all claims against them should be dismissed.  As demonstrated by the testimony and evidence produced in this matter, Plaintiff cannot establish that Officer Pierre's conduct was unreasonable or excessive under the circumstances and, thus, cannot establish violation of his Fourth Amendment rights.  Accordingly, there can be no supervisory liability on the part of the HANO Officers where there is no constitutional violation.

Even if the Court were to find that Plaintiff's constitutional rights were violated, Plaintiff cannot provide any specific facts to support his claim that the HANO Officers were deliberately indifferent to his constitutional rights to establish supervisory liability and overcome their qualified immunity. Therefore, the HANO Officers are entitled to a finding of qualified immunity and a granting of summary judgment, dismissing Plaintiff's claims against them in their entirety.

Respectfully submitted,

*/s/ Maggie A. Broussard*
Rachel W. Wisdom, La. Bar No. 21167
Heather S. Lonian, La. Bar No. 29956
Maggie A. Broussard, La Bar No. 33033
Evan P. Lestelle, La. Bar No. 39609
             Of
Stone Pigman Walther Wittmann, L.L.C.
909 Poydras Street, Suite 3150
New Orleans, Louisiana  70112-4042
Telephone:  (504) 581-3200
Facsimile: (504) 581-3361
Email: rwisdom@stonepigman.com
             hlonian@stonepigman.com
             mbroussard@stonepigman.com
             elestelle@stonepigman.com

*Attorneys for Defendants Tyrone Martin,*
*Demetrius Jackson, Tommy Mercadal, and*
*Leontine Mullins*

- 25 -