UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

|  |  |  |
|---|---|---|
| BILAL HANKINS | * <br> * <br> * | CIVIL ACTION |
|  | * | NO. 21-1129 |
| Plaintiff, | * |  |
|  | * | JUDGE ELDON E. FALLON |
| VERSUS | * |  |
|  | * | MAGISTRATE JUDGE |
|  | * | JANIS VAN MEERVELD |
| KEVIN WHEELER, ET AL. | * |  |
|  | * |  |
| Defendants. | * |  |

**LIST OF MATERIAL FACTS NOT GENUINELY DISPUTED IN SUPPORT OF INDIVIDUAL HANO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

Defendants Tyrone Martin, Demetrius Jackson, Tommy Mercadal, and Leontine Mullins (collectively "HANO Officers") submit the following list of material facts not genuinely disputed in support of their Motion for Summary Judgment on the Basis of Qualified Immunity:

1. On the night of June 13, 2020, at approximately 11:30 p.m., Plaintiff and two companions were driving on Camp Street, New Orleans, Louisiana in a black BMW [1]

2. Plaintiff asserts that his acquaintance had lost her dog that day and that he and the two companions were assisting in the search for the dog. [2]

3. Plaintiff and a twelve-year-old male road as passengers in a vehicle driven by Tahj Pierre. [3]

---

[1] Exhibit A, First Amended Complaint at ¶ 38

[2] Exhibit B, Deposition of Bilal Hankins at 22:8-24:24.

[3] Exhibit B, Deposition of Bilal Hankins at 24:15-24.

    4.       On June 13, 2020, Officers Kevin Wheeler and Ramon Pierre were working private, paid details for Hurstville Security District.[4]

    5.       Plaintiff was sitting in the back seat of the vehicle on the driver side.[5]

    6.       The vehicle Plaintiff occupied was registered to Tahj Pierre's mother, at an address located in New Orleans East, where Tahj Pierre lived.[6]

    7.       Tahj Pierre was the driver of the vehicle on June 13, 2020.[7]

    8.       During the course of the evening, Officer Kevin Wheeler came into contact with Plaintiff and the other occupants of the vehicle. During that encounter, Plaintiff informed Officer Wheeler that the occupants of the vehicle were looking for a lost dog.[8]

    9.       Officer Wheeler has stated that he was suspicious of Plaintiff's story and that he was concerned that the occupants of the vehicle may be attempting to burglarize other vehicles based on the car driving slowly and the positions of the occupants in the vehicles leaning out the windows. Officer Wheeler ran the license plate on the vehicle as a result.[9]

    10.      Officer Wheeler called Officer Ramon Pierre to inform him about his suspicions and inform him of the car's registration address. Based on the information Officer

---

[4] Exhibit A, First Amended Complaint at ¶¶ 41, 45; Exhibit C, Deposition of Kevin Wheeler at 29:9-13, 45:11-20; Exhibit D, Deposition of Ramon Pierre at 35:8-21.

[5] Exhibit A, First Amended Complaint at ¶ 38; Exhibit B, Deposition of Bilal Hankins at 36:18-22.

[6] Exhibit A, First Amended Complaint at ¶ 62; Deposition of Bilal Hankins at 52:25-53:5.

[7] Exhibit A, First Amended Complaint at ¶ 38; Exhibit B, Deposition of Bilal Hankins at 36:18-22.

[8] Exhibit A, First Amended Complaint at ¶¶ 39, 42, 43; Exhibit C, Deposition of Kevin Wheeler at 49:17-51:7.

[9] Exhibit A, First Amended Complaint at ¶ 46; *see* Exhibit C, Deposition of Kevin Wheeler at 49:2-16, 51:20-52:12; *see also* Exhibit D, Deposition of Ramon Pierre at 71:11-22.

Wheeler shared, Officer Pierre realized that the car was registered to an address in New Orleans East.[10]

11. Officer Pierre activated his blue lights.[11]

12. After Officer Pierre activated his blue lights, Tahj Pierre continued to drive the vehicle for approximately one block before bringing the vehicle to a complete stop.[12]

13. Officer Wheeler and Officer Pierre conducted a stop of the vehicle driven by Tahj Pierre.[13]

14. Tahj Pierre, the driver, was asked to step out of the vehicle.[14]

15. None of the occupants of the vehicle, other than Mr. Pierre, exited the vehicle during the course of the investigatory stop.[15]

16. Mr. Pierre provided Officer Wheeler with his identification.[16]

---

[10] Exhibit C, Deposition of Kevin Wheeler at 52:5-53:3, 53:14-19, 62:15-19, 63:4-19; Exhibit D, Deposition of Ramon Pierre at 69:10-71:22; *see also* Exhibit A, First Amended Complaint at ¶ 46.

[11] Exhibit A, First Amended Complaint at ¶ 54; Exhibit C, Deposition of Kevin Wheeler at 70:2-7.

[12] Exhibit A, First Amended Complaint at ¶ 54; Exhibit C, Deposition of Kevin Wheeler at 70:19-71:11.

[13] Exhibit A, First Amended Complaint at ¶¶ 55-56.

[14] Exhibit A, First Amended Complaint at ¶ 55; Exhibit B, Deposition of Bilal Hankins at 66:15-20; Exhibit C, Deposition of Kevin Wheeler at 72:23-25; Exhibit D, Deposition of Ramon Pierre at 84:12-16.

[15] Exhibit B, Deposition of Bilal Hankins at 64:1-5, 71:22-72:7.

[16] Exhibit A, First Amended Complaint at ¶ 62; Exhibit B, Deposition of Bilal Hankins at 67:19-20, 68:8-19; Exhibit C, Deposition of Kevin Wheeler at 96:6-9; Exhibit D, Deposition of Ramon Pierre at 115:20-25.

17. After Mr. Pierre's identity was verified and Officer Wheeler took notes regarding the lost dog, Plaintiff, Mr. Pierre, and the other occupant of the vehicle were permitted to leave.[17]

18. At no time during the interaction was Plaintiff ordered to get out of the vehicle.[18]

19. At no time during the interaction did Officer Pierre verbally threaten that he was going to shoot Plaintiff or any other occupant of the vehicle.[19]

20. At no time during the interaction was Plaintiff fired upon.[20]

21. At no time during the interaction did Officer Wheeler or Officer Pierre lay hands on or handcuff Plaintiff.[21]

22. Following the stop, Officer Wheeler contacted Orleans Levee District Police to inform them of the investigatory stop.[22]

23. Both Officer Wheeler and Officer Pierre recorded the stop on their Hurstville time cards.[23]

---

[17] Exhibit A, First Amended Complaint at ¶¶ 62, 63; Exhibit B, Deposition of Bilal Hankins at 75:21-78:24; Exhibit C, Deposition of Kevin Wheeler at 84:20-85:19; *see also* Exhibit D, Deposition of Ramon Pierre at 116:1-21.

[18] Exhibit B, Deposition of Bilal Hankins at 77:5-7.

[19] *See generally* Exhibit A, First Amended Complaint.

[20] *See generally* Exhibit A, First Amended Complaint.

[21] *See generally* Exhibit A, First Amended Complaint; Exhibit B, Deposition of Bilal Hankins at 77:15-19, 78:7-17.

[22] Exhibit C, Deposition of Kevin Wheeler at 88:22-25, 89:17-90:3.

[23] *See* Exhibits E-1 and E2, GPS records.

24. Per GPS records maintained on both Officer Wheeler and Officer Pierre's vehicles, the alleged interaction lasted no more than 5 minutes.[24]

25. GPS records provided by Hurstville to Orleans Levee District during the course of its investigation indicate that Officer Wheeler's vehicle was stopped a total of 3 minutes and 48 seconds during the incident in question.[25]

26. GPS records provided by Hurstville to Orleans Levee District during the course of its investigation indicate that Officer Pierre's vehicle was stopped a total of 4 minutes and 27 seconds during the incident in question.[26]

27. Lieutenant Tyrone Martin was not present at the scene of the stop described in Plaintiff's Amended Complaint on the night of June 13, 2020.[27]

28. Sergeant Demetrius Jackson was not present at the scene of the stop described in Plaintiff's First Amended Complaint on the night of June 13, 2020.[28]

29. Sergeant Tommy Mercadal was not present at the scene of the stop described in Plaintiff's Amended Complaint on the night of June 13, 2020.[29]

---

[24] Ehibitis E-1 and E-2, GPS records; *see also* Exhibit D, Deposition of Ramon Pierre at 94:4-9.

[25] Exhibit F, Declaration of Vance Bieniemy, Jr. at ¶ 9; F-1 (Investigative Review) at Exhibit L. (HANKINS-SLFPA-E-00359-361).

[26] Exhibit F, Declaration of Vance Bieniemy, Jr. at ¶ 9; Exhibit F-1 (Investigative Review) at Exhibit M (HANKINS-SLFPA-E-00364-366).

[27] Exhibit B, Deposition of Bilal Hankins at 98:11-12; Exhibit G, Declaration of Tyrone Martin at ¶ 17.

[28] Exhibit B, Deposition of Bilal Hankins at 98:2-6; Exhibit H, Declaration of Demetrius Jackson at ¶ 12.

[29] Exhibit B, Deposition of Bilal Hankins at 98:7-8; Exhibit I, Declaration of Tommy Mercadal at ¶ 13.

30. Sergeant Mullins was not present at the scene of the stop described in Plaintiff's Amended Complaint on the night of June 13, 2020.[30]

31. In Lieutenant Martin's role as Operations Commander of the HANO police department, he acts as a supervisor of Officer Pierre.[31]

32. In Sergeant Jackson's role as a sergeant, he has general supervisory responsibility over HANO officers, including Officer Pierre.[32]

33. In Sergeant Mercadal's role as a sergeant, he has general supervisory responsibilities over HANO officers, including Officer Pierre.[33]

34. Sergeant Mercadal has no role in the implementation or administration of HANO's paid detail program.[34]

35. In Sergeant Mullins' role as a sergeant, she has general supervisory responsibilities over HANO officers, including Officer Pierre.[35]

36. Sergeant Mullins has no role in the implementation or administration of HANO's paid detail program.[36]

37. In June 2020, Sergeant Jackson performed an investigation into the complaint made by Plaintiff in connection with a stop that was alleged to have occurred on June

---

[30] Exhibit B, Deposition of Bilal Hankins at 98:13-14; Exhibit J, Declaration of Leontine Mullins at ¶ 14.

[31] Exhibit G, Declaration of Tyrone Martin at ¶¶ 4, 8.

[32] Exhibit H, Declaration of Demetrius Jackson at ¶ 7.

[33] Exhibit I, Declaration of Tommy Mercadal at ¶ 7.

[34] Exhibit I, Declaration of Tommy Mercadal at ¶ 8.

[35] Exhibit J, Declaration of Leontine Mullins at ¶ 7.

[36] Exhibit J, Declaration of Leontine Mullins at ¶ 9.

13, 2020, performed by Officer Kevin Wheeler and Officer Pierre during an off-duty, paid detail for the Hurstville Security District.[37]

38. Other than the complaint made by Plaintiff, HANO has not received a complaint from any citizen regarding a HANO police officer's conduct while working a private paid detail for Hurstville Security District.[38]

39. Lieutenant Martin had no knowledge of complaints made regarding any alleged use of excessive force by Officer Pierre prior to June 13, 2020.[39]

40. Sergeant Jackson had no knowledge of complaints made regarding any alleged use of excessive force by Officer Pierre prior to June 13, 2020.[40]

41. Sergeant Mercadal had no knowledge of complaints made regarding any alleged use of excessive force by Officer Pierre prior to June 13, 2020.[41]

42. Sergeant Mullins had no knowledge of complaints made regarding any alleged use of excessive force by Officer Pierre prior to June 13, 2020.[42]

43. Lieutenant Martin had no knowledge of complaints made regarding any alleged improper stops by Officer Pierre prior to June 13, 2020.[43]

---

[37] Exhibit H, Declaration of Demetrius Jackson at ¶ 11.

[38] Exhibit G, Declaration of Tyrone Martin at ¶ 11.

[39] Exhibit G, Declaration of Tyrone Martin at ¶ 23.

[40] Exhibit H, Declaration of Demetrius Jackson at ¶ 22.

[41] Exhibit I, Declaration of Tommy Mercadal at ¶ 14.

[42] Exhibit J, Declaration of Leontine Mullins at ¶ 15.

[43] Exhibit G, Declaration of Tyrone Martin at ¶ 23.

44. Sergeant Jackson had no knowledge of complaints made regarding any alleged improper stops by Officer Pierre prior to June 13, 2020.[44]

45. Sergeant Mercadal had no knowledge of complaints made regarding any alleged improper stops by Officer Pierre prior to June 13, 2020.[45]

46. Sergeant Mullins had no knowledge of complaints made regarding any alleged improper stops by Officer Pierre prior to June 13, 2020.[46]

47. Lieutenant Martin had no knowledge of complaints made regarding any alleged unreasonable searches by Officer Pierre prior to June 13, 2020.[47]

48. Sergeant Jackson had no knowledge of complaints made regarding any alleged unreasonable searches by Officer Pierre prior to June 13, 2020.[48]

49. Sergeant Mercadal had no knowledge of complaints made regarding any alleged unreasonable searches by Officer Pierre prior to June 13, 2020.[49]

50. Sergeant Mullins had no knowledge of complaints made regarding any alleged unreasonable searches by Officer Pierre prior to June 13, 2020.[50]

---

[44] Exhibit H, Declaration of Demetrius Jackson at ¶ 22.

[45] Exhibit I, Declaration of Tommy Mercadal at ¶ 14.

[46] Exhibit J, Declaration of Leontine Mullins at ¶ 15.

[47] Exhibit G, Declaration of Tyrone Martin at ¶ 23

[48] Exhibit H, Declaration of Demetrius Jackson at ¶ 22.

[49] Exhibit I, Declaration of Tommy Mercadal at ¶ 14.

[50] Exhibit J, Declaration of Leontine Mullins at ¶ 15.

51. Officer Pierre has not received any other complaints regarding his conduct during a stop while working for Hurstville.[51]

52. Officer Pierre is POST certified.[52]

53. Officer Pierre has met his annual training requirements every year while working as a HANO police officer.[53]

54. Officer Pierre's annual training has included courses on use of force, search and seizure, firearms, and officer safety, which includes training on traffic stops, and racial profiling.[54]

55. In the course of his investigation, Sergeant Jackson reviewed written complaint statements provided by Plaintiff and Tahj Pierre; review an email complaint from Lona Edward Hankins, conduct telephone interviews Plaintiff and Tahj Pierre; canvassed the area where the stop occurred; interviewed eye witness Tyler Higgins; took the statement of Lattrell Miller; reviewed the statement of Officer Pierre; and asked Officer Pierre additional questions.[55]

56. During the course of the investigation, Officer Pierre was not permitted to work private security detail.[56]

---

[51] Exhibit D, Deposition of Ramon Pierre at 66:24-67:3.

[52] *See* Exhibit G, Declaration of Tyrone Martin at ¶ 14; Exhibit G-1, Officer Pierre's POST certificate.

[53] Exhibit G, Declaration of Tyrone Martin at ¶ 15; Exhibit D, Deposition of Ramon Pierre at 117:6-118:7.

[54] Exhibit G, Declaration of Tyrone Martin at ¶ 16; Exhibit G-2, Ramon Pierre's annual training records.

[55] Exhibit H, Declaration of Demetrius Jackson at ¶ 13; Exhibit H-1 June 25, 2020 Memorandum and Exhibits.

[56] Exhibit D, Deposition of Ramon Pierre at 30:20-31:3.

57. Sergeant Jackson concluded Plaintiff's complaint to HANO was non-sustained. Based on the investigation, the statements made by the witness, the conflicting statements made by the complainants, and his canvassing of the neighborhood, Sergeant Jackson concluded there was no evidence to support misconduct or departmental policy violations by Officer Pierre.[57]

Dated: March 7, 2023

Respectfully submitted,

*/s/Maggie A. Broussard*
Rachel W. Wisdom, La. Bar No. 21167
Heather S. Lonian, La. Bar No. 29956
Maggie A. Broussard, La Bar No. 33033
Evan P. Lestelle, La. Bar No. 39609
  Of
Stone Pigman Walther Wittmann, L.L.C.
909 Poydras Street, Suite 3150
New Orleans, Louisiana  70112-4042
Telephone:  (504) 581-3200
Facsimile: (504) 581-3361
rwisdom@stonepigman.com
hlonian@stonepigman.com
mbroussard@stonepigman.com
elestelle@stonepigman.com

*Attorneys for Defendants Tyrone Martin, Demetrius Jackson, Tommy Mercadal, and Leontine Mullins*

---

[57] Exhibit H, Declaration of Demetrius Jackson at ¶ 18; Exhibit H-1, June 25, 2020 Memorandum at p. 6.