## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

**BILAL HANKINS**

**VERSUS**

**KEVIN WHEELER, RAMON PIERRE, CARL PERILLOUX, KERRY NAJOLIA, THE HOUSING AUTHORITY OF NEW ORLEANS, THE HURSTVILLE SECURITY AND NEIGHBORHOOD IMPROVEMENT DISTRICT, THE SOUTHEAST LOUISIANA FLOOD PROTECTION AUTHORITY-EAST, LAKEFRONT MANAGEMENT AUTHORITY, MICHAEL BRENCKLE, DARNELL LAURENT, THADDEUS PETIT, JAMEL BROWN, TYRONE MARTIN, DEMETRIUS JACKSON, TOMMY MERCADAL, LEONTINE MULLINS, and DOE INSURANCE COMPANIES 1-6**

**CIVIL ACTION NO.: 2:21-cv-001129**

**JUDGE: ELDON E. FALLON**

**MAGISTRATE JUDGE: JANIS VAN MEERVELD**

## MEMORANDUM IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT

**MAY IT PLEASE THE COURT:**

Defendants, Kevin Wheeler, Ramon Pierre and Carl Perilloux (hereinafter collectively referred to as the "Hurstville Officers"); and Kerry Najolia, Michael Brenckle, Darnell Laurent, Thaddeus Petit and Jamel Brown (collectively the "SLFPA-E Officers"), respectfully submit their Memorandum in Support of Motion for Summary Judgment on the issue of qualified immunity, seeking dismissal of the claims of Plaintiff, Bilal Hankins. The Hurstville and SLFPA-E Officers are entitled to qualified immunity from Plaintiff's claims as there was no violation of Plaintiff's constitutional rights. Alternatively, even assuming a constitutional violation occurred—which is denied—Plaintiff cannot demonstrate that the Officers' alleged conduct violated a constitutional

1

right that was clearly established at the time of the challenged conduct. Further, because there was no constitutional violation by Officers Wheeler and Pierre, there can be no individual/constitutional violation on the part of Carl Perilloux, Kerry Najolia, Michael Brenckle, Darnell Laurent, Thaddeus Petit and Jamel Brown for failure to train or supervise Officers Wheeler and Pierre. In addition, as Officer Wheeler was working a paid detail for Hurtsville and was not "on the clock" for the SLFPA-E at the time of the incident, the SLFPA-E Defendants have no supervisory responsibility for Officer Wheeler and likewise there is no individual capacity violation of Plaintiff's constitutional rights based on a failure to train or supervise. Plaintiff's remaining claims should be dismissed with prejudice.

## I.  Factual Background

On June 13, 2020, shortly before midnight, on Octavia Street in an Uptown New Orleans residential neighborhood, Officers Wheeler and Pierre conducted an investigatory stop of a vehicle in which Plaintiff was a backseat passenger.[1] The stop lasted just under 5 minutes, and Plaintiff, who remained in the vehicle at all times, was not searched, handcuffed or arrested by the officers.[2] GPS records showed that Officer Wheeler's vehicle was stopped for a total of 3 minutes, 48 seconds and that Pierre's vehicle was stopped for a total of 4 minutes, 27 seconds.[3] Plaintiff claims the Officers' actions in the course of this stop constituted the use of excessive force. (R. Doc. 1).

Officer Wheeler holds a current statewide peace officer commission from the superintendent of the state police, and is a certified field training officer.[4] He has law enforcement authority inside of the East Bank of Orleans Parish.[5] Hurtsville Security District is within Orleans

---

[1] Exhibit A Deposition of Hankins 19:9-20:5; 24:13-24
[2] Exhibit B Deposition of Pierre, 94:4-9; Exhibit A Deposition of Hankins; 75:21-78:7; 77:5-78:17
[3] See Exhibit E Declaration of Vance Bieniemy, Jr.
[4] Exhibit C Deposition of Wheeler 14:2-5; 15:11-14
[5] Exhibit C Deposition of Wheeler 16:6-13

Parish.[6] Officer Pierre holds a current statewide peace officer commission.[7]

Minutes before the investigatory stop, the vehicle in which Plaintiff was a passenger was moving slowly along Camp Street and stopped beside Wheeler's parked police vehicle at Camp and Valmont Street. Plaintiff admits that they were driving slowly, less than 5 miles per hour, shortly before the stop.[8]  Wheeler was on his regular security patrol for Hurstville Security District and the headlights of his patrol car were on.[9] In fact, Wheeler informed Plaintiff that he was working for the Hurstville security detail at the time of the alleged incident.[10] Plaintiff spoke to Wheeler through the open rear left passenger window and told Wheeler he was helping look for a missing dog.[11] Plaintiff admits that Officer Wheeler was clearly in uniform and was in a marked police vehicle.[12]

Wheeler saw the vehicle continue along Camp Street at a slow speed with the front seat passenger and Plaintiff leaning out of the open windows of the vehicle.[13] Knowing the neighborhood had been subject to multiple car thefts and break-ins and that often car thieves hang out of the windows of a slowly moving car and pull on door handles of parked cars prior to burglarizing the cars, Wheeler suspected the occupants of the vehicle were looking for cars to burglarize or steal.[14] Wheeler made a U-turn on Camp Street and began following the vehicle, ran a database search of the vehicle's license plate, and learned it was registered to a resident of New Orleans East, a neighborhood Wheeler knew to be approximately 15 miles from the Camp Street

---

[6] Exhibit C Deposition of Wheeler 16:11-13.
[7] Exhibit B Deposition of Pierre 19:9-11; 20:4-5
[8] Exhibit A Deposition of Hankins 87:8-13.
[9] Exhibit C Deposition of Wheeler, 47:9-49:23; 55:3-14
[10] Exhibit C Deposition of Wheeler, 95:13-15
[11] Exhibit C Deposition of Wheeler, 49:24-51:9
[12] Exhibit A Deposition of Hankins 45:12-23.
[13] Exhibit C Deposition of Wheeler, 49:4-16.
[14] Exhibit C Deposition of Wheeler, 49:2-16; 51:20-52:1; 84:20-85:8; Exhibit D Deposition of Perilloux, 11:21-12:10

location.[15] Given this information, and considering the late hour of the night, the history of vehicle break-ins in the neighborhood, his personal experience seeing car burglars drive slowly along residential streets and hang out of car windows pulling on door handles of parked cars, Wheeler called Officer Pierre to discuss whether to make an investigatory stop.[16]

Officer Pierre, who was on patrol nearby in the neighborhood, drove his unmarked truck equipped with blue dashboard lights onto Camp Street and followed the vehicle. Pierre saw the vehicle moving slowly with the front seat passenger leaning out of the window in a manner consistent with an attempt to pull on car door handles.[17] Wheeler pulled up beside Pierre and Pierre activated his truck's dashboard mounted blue flashing light. The vehicle did not stop, but instead turned off Camp onto Octavia, a side street. Wheeler activated his siren in short bursts and the vehicle stopped at Coliseum and Octavia Streets.[18]

Wheeler, who noticed that the driver was a male, knew the vehicle was registered to a female in New Orleans East and was suspicious of the vehicle traveling around Uptown New Orleans late at night looking for a lost dog.[19] The vehicle had not stopped when Pierre activated his blue light, but turned off Camp Street.[20] Therefore, Wheeler suspected the occupants of the vehicle may have been looking for vehicles to burglarize and that the initial encounter had been an attempt by Plaintiff to divert attention away from the driver and occupants' activities.[21]

Wheeler exited his patrol car and told the driver to get out of the vehicle. The driver got out and stood beside the vehicle. Wheeler asked the driver for his license and the driver handed

---

[15] Exhibit C Deposition of Wheeler, 52:5-16
[16] Exhibit C Deposition of Wheeler, 52:13-53:19; 84:23-25; 85:1-8; Exhibit B Deposition of Pierre 60:9-15; 62:23; 70:15-21; 71:9-22; 72:11-25
[17] Exhibit B Deposition of Pierre, 80:12-16
[18] Exhibit C Deposition of Wheeler, 66:16-70:25; Exhibit B Deposition of Pierre, 73:11-20; 80:17-18
[19] Exhibit C Deposition of Wheeler, 52:10-12
[20] Exhibit C Deposition of Wheeler, 70:3-25; 71:1-6.
[21] Exhibit C Deposition of Wheeler, 78:23-25; 79:1

Wheeler the license.[22] Wheeler asked the driver for the address of the house where the dog lived and the driver gave an address of 1100 Camp Street which is several miles from the location of the stop.[23] Plaintiff then spoke to Wheeler and explained he lived at 4700 Camp Street, a location a few blocks from the stop, and that the address given by the driver was incorrect.[24] Plaintiff testified that Officer Pierre had pointed his gun at the 12 year old minor, L.M., who was seated in the front passenger seat.[25] However, Plaintiff testified that Wheeler's hands were raised, but he did not know for certain that Wheeler had a gun in his hands.[26] In fact, Plaintiff could only say, "I can say I felt in danger with whatever was in his hands pointed at my direction."[27] Further, Plaintiff could not deny that Wheeler was possibly holding a flashlight which was shone into the vehicle.[28] In fact, Plaintiff admits that at no time was a weapon pointed directly at him, rather, the guns were pointed at the other occupants of the vehicle, Taj Pierre and L.M.[29]

Wheeler walked back to his patrol car with the license.[30] After confirming the address on the driver's license matched the registration address of the vehicle, Wheeler walked to the driver, returned the license, and told the driver he was free to go.[31] Plaintiff essentially admitted the same thing; that is, that once the driver's license was matched to the vehicle's registration, the vehicle was allowed to proceed.[32] Plaintiff admits that at no time were all of the occupants of the car ordered out of the vehicle or to lay on the ground and place hands on the hood of the vehicle or

---

[22] Exhibit C Deposition of Wheeler, 72:23-25
[23] Exhibit C Deposition of Wheeler, 78:8-25; 79:1
[24] Exhibit C Deposition of Wheeler, 71:7-74:4; 77:24-80:15; Exhibit B Deposition of Pierre, 84:13-16; 88:7-12
[25] Exhibit A, Deposition of Hankins 61:13-16. It should be noted that Hankins was seated in the backseat of the vehicle directly behind the driver.
[26] Exhibit A, Deposition of Hankins 65:1-25.
[27] Exhibit A, Deposition of Hankins 65:1-25.
[28] Exhibit A, Deposition of Hankins 63:1-25.
[29] Exhibit A, Deposition of Hankins 90:1-25-92:1-25.

[31] Exhibit C Deposition of Wheeler, 84:20-85:19; Exhibit B Deposition of Pierre, 115:20-116:7; 116:12-17
[32] Exhibit A, Deposition of Hankins 67:25, 68:1-7.

any similar instruction.[33] Plaintiff remained in the vehicle at all times, was never touched by the officers (other than possibly shaking the officers' hands at the conclusion of the stop), was not handcuffed, and was not arrested. The entire stop lasted less than 5 minutes.[34]

Tyler Higgins witnessed the traffic stop on June 13, 2020 from the living room of his dwelling.[35] Mr. Higgins stated that he was watching TV in his living room located at the front of his home when he saw blue flashing lights through the window and looked outside.[36] Mr. Higgins stated that at no time did he witness any heated exchange between the officers and the occupants of the vehicle, nor did he witness any guns drawn.[37] Mr. Higgins stated that the traffic stop appeared to be nothing more than a simple pull-over for questioning, after which the occupants of the vehicle were free to go.[38]

Plaintiff filed his suit against Officers Wheeler, Pierre, Perrilloux, Najolia, Brenckle, Laurent, Petit, and Brown as individual defendants and the other governmental entity defendants asserting alleged violations of his Constitutional rights and invoking this Court's federal question of jurisdiction over Defendants' actions under 42 U.S.C. §1983. (R. Doc. 1). Defendants Wheeler, Pierre, Perrilloux, Najolia, Brenckle, Laurent, Petit and Brown all asserted qualified immunity as an affirmative defense by way of answer to the original Complaint (R. Doc. 20) and/or in answer to the First Amended Complaint of the plaintiff. (R. Doc. 90).

## II. Law and Argument

### A. Summary Judgment Standard

---

[33] Exhibit A, Deposition of Hankins 71:19-25, 72:1-7
[34] Exhibit B Deposition of Pierre, 94:4-9; Exhibit A Deposition of Hankins, 75:21-78:7; 77:5-78:17; Exhibit D Deposition of Perilloux, 44:10-46:34; (See Exhibit 2 of depo of Perilloux); Exhibit E Declaration of Bienemy. It should be noted that neither Taj Pierre nor Latrell Miller filed any lawsuit asserting similar alleged constitutional violations as Plaintiff has alleged.
[35] Exhibit F Hano Investigative Report, Exhibit 4 to the Deposition of Demetrius Jackson
[36] Exhibit F Hano Investigative Report, Exhibit 4 to the Deposition of Demetrius Jackson
[37] Exhibit F Hano Investigative Report, Exhibit 4 to the Deposition of Demetrius Jackson
[38] Exhibit F Hano Investigative Report, Exhibit 4 to the Deposition of Demetrius Jackson

Summary judgment is appropriate if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A dispute is "genuine" if the evidence is sufficient for a reasonable jury to return a verdict for the nonmoving party. *Hamilton v. Segue Software, Inc.,* 232 F.3d 473, 477 (5th Cir. 2000). A fact issue is "material" if its resolution could affect the outcome of the action. *Id.*

"Although [qualified immunity is] nominally an affirmative defense, the Plaintiff has the burden to negate the defense once properly raised." *Poole v. City of Shreveport,* 691 F.3d 624, 627 (5th Cir. 2012) (quoting *Brumfield v. Hollins*, 551 F.3d 322, 326 (5th Cir. 2008). This standard, even on summary judgment, "gives ample room for mistaken judgments by protecting all but the plainly incompetent or those who knowingly violate the law." *Id*. (internal quotation marks omitted).

## B. Qualified Immunity

Qualified immunity shields government officials from civil damages liability unless the official violated a statutory or constitutional right that was clearly established at the time of the challenged conduct. *Thomas v. City of New Orleans*, 883 F. Supp. 669, 681 (E.D. La. 2012) (citing *Reichle v. Howards*, 566 U.S. 658, 663 (2012)); *Harlow v. Fitzgerald*, 457 U.S. 800 (1982). The doctrine of qualified immunity protects government officials "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (quoting *Harlow*, 457 U.S. at 818).

As noted above, qualified immunity shields "all but the plainly incompetent or those who knowingly violate the law." *Thompson v. Mercer*, 762 F.3d 433, 437 (5th Cir. 2014) (quoting *Ashcroft v. al-Kidd*, 563 U.S. 731, 743, 131 S.Ct. 2074, 179 L.Ed.2d 1149 (2011)). The doctrine

applies "regardless of whether the government official's error is a 'mistake of law, a mistake of fact or mistake based on mixed questions of law and fact.'" *Pearson v. Callahan*, 555 U.S. 223, 231 (2009).

The purpose of qualified immunity is to shield public servants not only from liability, but also from defending a lawsuit.  Once a defendant invokes the qualified immunity defense, the Plaintiff carries the burden of demonstrating its inapplicability because of clearly established law. *Club Retro, LLC v. Hilton*, 568 F.3d 181, 194 (5th Cir. 2009).  "A government official's conduct violates clearly established law when, at the time of the challenged conduct, '[t]he contours of [a] right [are] sufficiently clear that *every reasonable official* would have understood that what he is doing violates that right.'" *Ashcroft v. al-Kidd*, 563 U.S. 731, (2011) (quoting *Anderson v. Creighton*, 483 U.S. 635, 640 (1987)) (emphasis added). Courts must also assess the reasonableness of each defendant's actions separately, even if those defendants acted in unison. *Pratt v. Harris Cty., Tex.*, 822 F.3d 174, 181 (5th Cir. 2016) (citing *Meadours v. Ermel*, 483 F.3d 417, 422 (5th Cir. 2007).

### C.   Plaintiff Cannot Establish Unreasonable Seizure

The Fourth Amendment protects "[t]he right of the people to be secure in their persons… against unreasonable searches and seizures…" U.S. Const. amend. IV. "[T]he ultimate touchstone of the Fourth Amendment is 'reasonableness.'" *Heien v. North Carolina*, 135 S.Ct. 530, 536 (2014) (quoting *Riley v. California*, 134 S.Ct. 2473, 2482 (2014)). A seizure has occurred when "a reasonable person would have believed that he was not free to leave." *United States v. Mendenhall*, 446 U.S. 544, 554, 100 S. Ct. 1870, 64 L. Ed. 2d 497 (1980). However, "police can stop and briefly detain a person for investigative purposes" without probable cause, referred to as a *Terry* stop, "if the officer has reasonable suspicion." *United States v. Sokolow*, 490 U.S. 1, 7, 109

S. Ct. 1581, 104 L. Ed. 2d 1 (1989). A *Terry* stop is warranted if, under the totality of the circumstances, the officer has reasonable suspicion based on "specific and articulable facts" that the person is involved in criminal activity. *Terry v. Ohio*, 392 U.S. 1, 21-22, 88 S. Ct. 1868, 20 L. Ed. 2d 889 (1968).

Here, the initial stop was justified, as Wheeler reasonably believed the occupants in the vehicle may have been in the process of committing a crime. Minutes before the investigatory stop, the vehicle was moving slowly along Camp Street and stopped beside Wheeler's parked police vehicle at Camp and Valmont Street. Plaintiff admits that they were driving slowly, less than 5 miles per hour, shortly before the stop.[39] Wheeler saw the vehicle continue along Camp Street at a slow speed with the front seat passenger and Plaintiff leaning out of the open windows of the vehicle.[40] Wheeler suspected the occupants of the vehicle were looking for cars to burglarize or steal.[41] Officer Wheeler based this suspicion off of his prior experiences where he witnessed car burglars use this tactic to pull up alongside a car, pull on the car's door handle to see if it is open, and when an open car is located, the driver pulls forward and the occupants exit and burglarize the unlocked car.[42] Officer Wheeler was also suspicious when he ran the vehicle's license plate and determined it was registered to a female upon noticing that a male was driving the vehicle.[43] Additionally, the plate returned to an address in the New Orleans East area, which was nowhere near the Hurtsville or Uptown area.[44]  Therefore, the initial stop of Plaintiff's vehicle was justified, as Officers Wheeler and Pierre reasonably believed that the occupants of the vehicle were in the process of committing a crime.

---

[39] Exhibit A Deposition of Hankins 87:8-13.
[40] Exhibit C Deposition of Wheeler 49:4-16.
[41] Exhibit C Deposition of Wheeler, 49:2-16; 51:20-52:1; 84:20-85:8; Exhibit D Deposition of Perilloux, 11:21-12:10
[42] Exhibit C Deposition of Wheeler 84:23-25, 85:1-8
[43] Exhibit C Deposition of Wheeler 52:10-12
[44] Exhibit C Deposition of Wheeler 52:5-16

In determining whether the traffic stop was "reasonably related in scope" to the initial justification, the key issue is the length of the detention. In *United States v. Sharpe*, 470 U.S. 675, 105 S. Ct. 1568, 84 L. Ed. 2d 605 (1985), the Court explained that there are no rigid time limitations on *Terry* stops and that the controlling determination is whether, under the circumstances, the officer pursued his investigation in a quick, diligent and reasonable manner to either confirm or dispel his suspicion of criminal activity by the detained person. A *Terry* detention "must be temporary and last no longer than is necessary to effectuate the purpose of the stop, unless further reasonable suspicion, supported by articulable facts, emerges." *United States v. Brigham*, 382 F.3d 500, 507 (5th Cir. 2004).

In this case, the entire stop lasted less than 5 minutes.[45] GPS records showed that Officer Wheeler's vehicle was stopped for a total of 3 minutes, 48 seconds and that Pierre's vehicle was stopped for a total of 4 minutes, 27 seconds.[46] After confirming the address on the driver's license matched the registration address of the vehicle, Wheeler walked to the driver, returned the license, and told the driver he was free to go.[47] Plaintiff essentially admitted the same thing; that is, that once the drivers license was matched to the vehicle's registration, the vehicle was allowed to proceed.[48]

Wheeler and Pierre conducted the routine traffic stop in a diligent and reasonable manner. The short amount of time in which the stop was conducted in considerably less than that in other cases in which the delay has been held to have been reasonable under the circumstances. *See United States v. Sharpe*, 470 U.S. 675, 685, 105 S.Ct. 1568, 1575, 84 L. Ed. 2d 605 (1985) (20

---

[45] Exhibit B Deposition of Pierre, 94:4-9; Exhibit A Deposition of Hankins, 75:21-78:7; 77:5-78:17; Exhibit D Deposition of Perilloux, 44:10-46:34; (See Exhibit 2 of depo of Perilloux); Exhibit E Declaration of Bienemy. It should be noted that neither Taj Pierre nor Latrell Miller filed any lawsuit asserting similar alleged constitutional violations as Plaintiff has alleged.

[46] *See* Exhibit E Declaration of Vance Bieniemy, Jr.

[47] Exhibit C Deposition of Wheeler, 84:20-85:19; Exhibit B Deposition of Pierre, 115:20-116:7; 116:12-17

[48] Exhibit A, Deposition of Hankins 67:25, 68:1-7.

minutes delay); *United States v. Brigham*, 382 F.3d 500 (5th Cir. 2004) (29 minutes); *United States v. Padilla*, 233 F.3d 575, 2000 WL 1468728 (5th Cir. 2000) (45 minute delay)*; United States v. Alpert*, 816 F.2d 958 (4th Cir. 1987) (50 minute delay). As soon as Wheeler and Pierre matched the license to the vehicle's registration, the occupants of the vehicle were free to go.[49] It is difficult to image Wheeler and Pierre could have executed a routine traffic stop more expeditiously than this. Therefore, the stop of the vehicle was constitutionally permissible because the seizure was supported by reasonable suspicion that criminal activity was afoot and was reasonably affected and limited to a reasonably short period of time during which Wheeler and Pierre dispelled their suspicion.

### D. Excessive Force

"Excessive force claims are necessarily fact-intensive; whether the force used is 'excessive' or 'unreasonable' depends on 'the facts and circumstances of each particular case.'" *Deville v. Marcantel,* 567 F.3d 156, 167 (5th Cir.2009) (quoting *Graham v. Connor,* 490 U.S. 386, 396, 109 S. Ct. 1865, 104 L. Ed. 2d 443 (1989)); *see also Brosseau v. Haugen*, 543 U.S. 194, 201, 125 S.Ct. 596, 160 L.Ed.2d 583 (2004) (observing that this "area is one in which the result depends very much on the facts of each case"). The "reasonableness" of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight. *Graham*, 490 U.S. at 396 (citing *Terry v. Ohio,* 392 U.S. 1, 20–22 (1968)). "The calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving—about the amount of force that is necessary in a particular situation." *Graham*, 490 U.S. at 396–97. "The 'reasonableness' inquiry in an excessive force case is an objective one: the

---

[49] Exhibit C Deposition of Wheeler 85:16-19

question is whether the officers' actions are 'objectively reasonable' in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation. *Graham v. Connor*, 490 U.S. at 397 (citing *Scott v. United States*, 436 U.S. 128, 137–139 (1978); *Terry*, 392 U.S. at 21).

To overcome the claim of qualified immunity on his claim of excessive force, Plaintiff must show "(1) an injury, (2) which resulted directly and only from a use of force that was clearly excessive, and (3) the excessiveness of which was clearly unreasonable." *Poole, supra* (quoting *Ontiveros v. City of Rosenberg*, 564 F.3d 379, 382 (5th Cir. 2009)). In determining whether the use of force was clearly excessive and clearly unreasonable, the Court evaluates each officer's actions separately, to the extent possible. *Id*. (citing *Meadours v. Ermel*, 483 F.3d 417, 421–22 (5th Cir. 2007) (holding that each officer's individual actions should be considered in determining whether qualified immunity applies).

### E. Plaintiff Cannot Establish Excessive Force in Violation of His Constitutional Rights[50]

As noted above, a threshold showing necessary to overcome the Officers' defense of qualified immunity on his claims of excessive force is that Plaintiff suffered an injury. Plaintiff testified that Wheeler's hands were raised, but he did not know for certain that Wheeler had a gun in his hands.[51] In fact, Plaintiff could only say, "I can say I felt in danger with whatever was in his hands pointed at my direction."[52] Further, Plaintiff could not deny that Wheeler was possibly holding a flashlight which was shone into the vehicle.[53] Because Plaintiff can show only a *de*

---

[50] Plaintiff's excessive force claim invokes both the Fourth Amendment and the Fourteenth Amendment to the United States Constitution. The United States Supreme Court has held that "all claims that law enforcement officers have used excessive force . . . in the course of an arrest, investigatory stop, or other 'seizure' of a free citizen should be analyzed under the Fourth Amendment." *Tyson v. City. of Sabine*, 2022 U.S. App. LEXIS 20902, at *9 (5th Cir. July 28, 2022) (quoting *Graham v. Connor*, 490 U.S. 386, 395, 109 S. Ct. 1865, 104 L. Ed. 2d 443 (1989)). Because the alleged conduct of the Officers occurred during an investigative stop, the claims come within the Fourth Amendment.
[51] Exhibit A, Deposition of Hankins 65:1-25.
[52] Exhibit A, Deposition of Hankins 65:1-25.
[53] Exhibit A, Deposition of Hankins 63:1-25.

*minimis* injury as a result of Officers Wheeler and Pierre conducting an investigative stop and allegedly pointing their service revolvers at the car, he cannot satisfy an essential element of his excessive force claim and cannot overcome qualified immunity. Further, because there was no excessive force used by Officers Wheeler and Pierre, it follows that Carl Perilloux, Kerry Najolia, Michael Brenckle, Darnell Laurent, Thaddeus Petit and Jamel Brown, can have no liability for failure to supervise and/or train.

### 1.    No Injury Can be Proven by Competent Medical Evidence

The Fourth Amendment grants individuals the right to be free from unreasonable search and seizure, including the right to be free from the use of excessive force by law enforcement. *Dotson v. Edmonson*, 2018 U.S. Dist. LEXIS 9602, at *22 n.105 (E.D. La. Jan. 22, 2018) (citing *Ikerd v. Blair*, 101 F.3d 430, 433-34 (5th Cir. 1996)). In the Fifth Circuit, to succeed on an excessive force claim, the Plaintiff bears the burden of showing: "(1) an injury (2) which resulted directly and only from the use of force that was clearly excessive to the need and (3) the force used was objectively unreasonable." *Id*. (quoting *Goodson v. City of Corpus Christi*, 202 F.3d 730, 740 (5th Cir. 2000)).

With regard to the injury requirement, the Fifth Circuit has held that although the Plaintiff need not show a significant injury, he must have suffered at least some injury. *Id*. (citing *Jackson v. Culbertson*, 984 F.2d 699, 700 (5th Cir. 1993); see also *Thomas v. Town of Jonesville*, 2013 U.S. Dist. LEXIS 9176, at *13 (W.D. La. Jan. 23, 2013) (noting that the Fifth Circuit has held that *de minimis* injuries are insufficient to support an excessive force claim as a matter of law and finding the evidence demonstrated only *de minimis* injury in this case where Plaintiff neither asserts specific injury, nor offers evidence of continued treatment for any physical or emotional symptoms). Further, "[o]nly substantial psychological injuries are sufficient to meet the injury

element of a claim for excessive force under the Fourth Amendment. *Carter v. Diamond URS Huntsville, LLC*, 2016 U.S. Dist. LEXIS 136955, at *17 (S.D. Tex. Sep. 30, 2016) (citing *Flores v. City of Palacios*, 381 F.3d 391, 397-98 (5th Cir. 2004)).

Louisiana federal courts have followed the requirement of *Flores* and require a plaintiff to show his injury is greater than a *de minimis* psychological injury. The Eastern District of Louisiana has applied *Flores* to include that momentary fear when looking down the barrel of a police handgun is *de minimis*, without allegations of any more long-term or serious effects. *Casto v. Plaisance*, 2016 U.S. Dist. LEXIS 64171, at *18 (E.D. La. May 16, 2016); *see also Elphage v. Gautreaux*, 969 F. Supp. 2d 493, 509 (M.D. La. 2013) (dismissing the plaintiff's claim because he was unable to show that he suffered any psychological injuries that were not *de minimis*).

There is no allegation or evidence of any concrete injury suffered by Plaintiff. To the extent he is claiming a specific psychological injury, he has not produced any evidence in support. "[T]o survive summary judgment when alleging causation of an injury or condition outside of common knowledge, a § 1983 Plaintiff in Louisiana must produce competent medical evidence that, when combined with other direct and circumstantial evidence, allows a jury to rationally infer that the defendant's conduct caused the injury or condition." *Moore v. LaSalle Corr., Inc*., 2020 U.S. Dist. LEXIS 203241, at *31 (W.D. La. Oct. 30, 2020) (quoting *Perry v. City of Bossier City*, 2019 U.S. Dist. LEXIS 69820, at *11 (W.D. La. Apr. 23, 2019)).

Beyond Plaintiff's generalized allegations of emotional distress in connection with the investigative stop, there is no evidence in the record sufficient to establish anything more than a *de minimis* injury. Any injury rising above the level of *de minimis*, to the extent it is outside of common knowledge, such as a psychological injury, would require competent medical evidence. Plaintiff has produced no medical records documenting any physical or psychological injuries in

connection with the investigative stop. Nor has Plaintiff identified any medical records or the identities of any treating medical providers in his Initial Disclosures.[54] Therefore, Plaintiff is unable to establish this essential element of his claim of excessive force.

### 2.   Plaintiff Cannot Demonstrate the Show of Force Was Clearly Excessive and Objectively Unreasonable

In excessive force cases, officers are generally entitled to qualified immunity "even when [they] act negligently, or when they could have used another method to subdue a suspect, or when they created the dangerous situation, or when the law governing their behavior in particular circumstances is unclear." *Albert v. City of Petal*, 2019 WL 10736149, *11 (S.D. Miss. Sept. 30, 2019) (quoting *Mason v. Paul*, 929 F.3d 762, 763 (5th Cir. 2019). Moreover, courts are not permitted to "hold officers liable from the safety of our 20/20 vision of hindsight for decisions taken in a split-second under potentially life-threatening conditions." *Id.* Rather, the Court "applies an objective standard based on the viewpoint of a reasonable official in light of the information then available to the defendant and the law was clearly established at the time of the defendant's actions." *Freeman v. Gore*, 483 F.3d 404, 411 (5th Cir. 2007).

Wheeler and Pierre deny they pulled their service revolvers and deny pointing the revolvers at the vehicle or Plaintiff. However, solely for the purpose of this summary judgment motion, Plaintiff's assertions that the officers pointed their revolvers at the vehicle and "through him" are accepted as true. Nevertheless, Plaintiff cannot establish a constitutional violation by Wheeler and Pierre, as he cannot show that simply drawing service weapons and pointing them at a vehicle during an investigatory stop is objectively unreasonable behavior. This case does not involve a use of deadly force. Instead, it involves an alleged minimal show of force by officers who suspected Plaintiff and his companions were engaged in attempts to possibly steal and burglarize cars and

---

[54] See Exhibit G Plaintiff's Initial Disclosures

could flee the scene if the driver did not stop and get out of the vehicle. As stated above, Plaintiff testified that Wheeler's hands were raised, but he did not know for certain that Wheeler had a gun in his hands.[55] A reasonable officer could also have feared the occupants of the vehicle had weapons in the vehicle or on their persons. Accordingly, Plaintiff cannot establish an excessive force claim arising out of the simple pointing of the service revolvers, and Wheeler and Pierre are entitled to qualified immunity.

**F.  Plaintiff Cannot Point to Any Cleary Established Law to Defeat Qualified Immunity**

Even assuming that Plaintiff can create a factual issue as to whether any constitutional violation occurred, the Officers are nonetheless entitled to qualified immunity because Plaintiff cannot show a violation of clearly established law.  "A government official's conduct violates clearly established law when, at the time of the challenged conduct, '[t]he contours of [a] right [are] sufficiently clear that *every reasonable official* would have understood that what he is doing violates that right.'" *Ashcroft v. al-Kidd*, 563 U.S. 731 (2011) (quoting *Anderson v. Creighton*, 483 U.S. 635, 640 (1987)) (emphasis added). The United States Supreme Court has repeatedly instructed that clearly established law should not be defined at a high level of generality.  *Ashcroft*, 563 U.S. at 742 (2011). "The general proposition, for example, that an unreasonable search or seizure violates the Fourth Amendment is of little help in determining whether the violative nature of particular conduct is clearly established." *Id*. Rather, the question must be "frame[d] . . . with specificity and granularity." *Garcia v. Blevins*, 957 F.3d 596, 600 (5th Cir. 2020) (quoting *Morrow v. Meachum*, 917 F.3d 870, 874–75 (5th Cir. 2019)).

With the more specific inquiry the Supreme Court requires, "the question becomes whether there is either 'directly controlling authority . . . establishing the illegality of such conduct' or 'a

---

[55] Exhibit A, Deposition of Hankins 65:1-25.

consensus of cases of persuasive authority such that a reasonable officer could not have believed that his actions were lawful.'" *Gonzalez v. Huerta*, 826 F.3d 854, 858 (5th Cir. 2016) (quoting *McClendon v. City of Columbia*, 305 F.3d 314, 328–29 (5th Cir. 2002) (quoting *Wilson v. Layne*, 526 U.S. 603, 617 (1999)). Although the Supreme Court's case law "does not require a case directly on point for a right to be clearly established, existing precedent must have placed the statutory or constitutional question beyond debate." *Kisela v. Hughes*, 138 S.Ct. 1148, 1152 (2018) (citing *White v. Pauly*, 137 S.Ct. 548, 551 (2017). In *White*, the Court reminded lower courts that clearly established law must be "particularized" to the facts of the case, and the judgment of the appellate court was vacated because it relied on general constitutional principles that did not identify a case where an officer acting under similar circumstances was held to have violated the Fourth Amendment. *Id.*

Overcoming qualified immunity is "especially difficult in excessive-force cases" as it "is an area of the law 'in which the result depends very much on the facts of each case,' and thus police officers are entitled to qualified immunity unless existing precedent 'squarely governs' the specific facts at issue." *Morrow*, 917 F.3d at 876 (quoting *Kisela*, 138 S.Ct. at 1153).

Here, controlling Fifth Circuit case law has established that the pointing of a weapon at passengers in a vehicle during an investigatory stop can be reasonable given the circumstances. "Fourth Amendment jurisprudence has long recognized that the right to make an arrest or investigatory stop necessarily carries with it the right to use some degree of physical coercion or the threat thereof to effect it. We previously held that pointing a gun can be reasonable given the circumstances, and that 'the momentary fear experienced by the plaintiff when a police officer pointed a gun at him did not rise to the level of a constitutional violation.'" *Crane v. City of Arlington*, 50 F.4th 453, 468 (5th Cir. 2022), (quoting *Graham v. Connor,* 490 U.S. 386, 396, 109

S. Ct. 1865; *Hinojosa v. City of Terrell,* 834 F.2d 1223, 1230-31 (5th Cir. 1988); *Dunn v. Denk*, 54 F.3d 248, 250 (5th Cir. 1995), *on reh'g en banc*, 79 F.3d 401 (5th Cir. 1996) (discussing *Hinojosa*, 834 F.2d at 1230-31).

In *Hinojosa*, the Fifth Circuit determined that a show of force by gun-pointing is not constitutionally excessive force. *Hinojosa*, 834 F.2d at 1231. The court further determined that a plaintiff's alleged damages as a result of having an officer's gun pointed at him was not redressable under § 1983, considering that plaintiff was not struck or even touched and did not produce sufficient evidence to support a finding of excessive force. *Id*; *see also Petta v. Rivera*, 143 F.3d 895, 906 (5th Cir. 1998).

Furthermore, the Fifth Circuit has held that the mere pointing of a gun by an officer at a person is not objectively unreasonable and the plaintiff could not state a valid excessive force claim due to psychological injuries. *See Hodges v. Laryisson*, 226 F.3d 642, 2000 WL 1029029, *3 (5th Cir. 2000) (rejecting the plaintiff's excessive force claim that she suffered psychological injuries when the officer-defendant pointed a gun at her face because the show of force under the circumstances was not objectively unreasonable).

In *Martin v. City of Alexandria Municipality Police Dep't*, 2005 U.S. Dist. LEXIS 44087, *40 (W.D. La. Sept. 16, 2005), the court rejected plaintiffs' claim for excessive force where they were questioned at gunpoint by the officer-defendant for seven to ten minutes, only a short period of time, and the officer did not arrest, handcuff, or even physically touch the plaintiffs. Further, the court noted that it is irrelevant whether hindsight showed that there was no need to point the gun at the plaintiffs. *Id*. at 41. The court determined that the officer's gun-pointing falls squarely under a display of force for officer safety in the course of duty because it occurred during a valid *Terry* stop late at night and he reasonably could not identify what objects the plaintiffs had in their

hands. *Id*. The court found that the plaintiffs could not prove that they suffered substantial psychological injuries as a result of the brief display of force, and even if they could, the officer's brief display of force was not disproportionate to the need to investigate a suspected crime in progress late at night. *Id*. Therefore, the court held that the facts alleged showed that the officer's conduct did not violate the plaintiffs' Fourth Amendment rights and the officer was entitled to summary judgment on their qualified immunity defense. *Id*.

The facts of this case are similar to that of *Hinojosa*, *Hodge*, and *Martin* because Plaintiff merely alleges that Officers Wheeler and Pierre pointed a gun in his direction- no shots were fired and no deadly force was used, and thus, no excessive force occurred.

The action of pointing a service revolver is not a *per se* violation of a suspect's constitutional rights. The actions alleged by Plaintiff in the present case are more similar to that of the officer in *Campbell v. Sturdivant*, 2020 U.S. Dist. LEXIS 233670, at *15 (W.D. La. 11/25/2020) where Magistrate Judge Karen Hayes found the brandishing of a service revolver during a DWI traffic stop did not establish a plausible excessive force claim. Further, Magistrate Judge Hayes concluded that even if there was a constitutional violation, plaintiff did not identify case law to show the officer's actions violated clearly established law, citing *Strickland v. City of Crenshaw*, Miss, 114 F.Supp. 3d 400, 418 (N.D. Miss. 2015).

Further, Plaintiff cannot demonstrate that *every reasonable officer* would understand Wheeler and Pierre's actions in stopping Plaintiff and allegedly pointing service weapons at the vehicle violated Plaintiff's Fourth Amendment rights.  Plaintiff must point to case law clearly establishing that the officers acted unreasonably based on facts similar to the particular circumstances they faced with Plaintiff.  *See Plumhoff v. Rickard*, 572 U.S. 765, 779 (2014); *Cass*

*v. City of Abilene*, 814 F.3d 721, 732 (5th Cir. 2016) (per curiam).  The Officers submit that no

such cases exist, and Plaintiff is unable to satisfy his burden.

### G.  Plaintiff has no Conspiracy Claim Under § 1983 or 1985

Plaintiff alleges that Wheeler and Pierre "knowingly, willfully, and intentionally

conspired" to deprive Plaintiff of his constitutional rights in violation of 42 U.S.C. §§ 1983 and

1985. (R. Doc. 1). To prevail on a § 1983 conspiracy claim, a plaintiff must establish '"the

existence of (1) an agreement to do an illegal act and (2) an actual constitutional deprivation.'"

*Washington v. State of La.*, No. 04-2314, 2005 WL 711598, at \*4 (E.D. La. Mar. 22, 2005) (quoting

*Whisenant v. City of Haltom*, 106 F. App'x 915, 917 (5th Cir. 2004) (citing *Cinel v. Connick*, 15

F.3d 1338, 1343 (5th Cir. 1994))). Mere allegations that a conspiracy existed are insufficient, "a

plaintiff must allege specific facts to show an agreement." *Tebo v. Tebo*, 550 F.3d 492, 496 (5th

Cir. 2008); *Anderson v. Law Firm of Shorty, Dooley & Hall*, 47 F. App'x 214, 217 (5th Cir. 2010)

(citing *Lynch v. Cannatella*, 810 F.2d 1363, 1369-70 (5th Cir. 1987)); *Thompson v. Johnson*, 348

F. App'x 919, 922-23 (5th Cir. 2009))).

As discussed above, the actions of Wheeler and Pierre do not constitute an actual

constitutional deprivation. Because there is no actual constitutional deprivation, Plaintiff's § 1983

conspiracy claim fails. Further, Plaintiff has produced no evidence of any agreement between

Wheeler and Pierre to do any illegal act. "[A]t the summary judgment stage, [courts] require

evidence- not absolute proof, but not mere allegations either." *Ontiveros v. City of Rosenberg*, 564

F.3d 379, 383 (5th Cir. 2009). Here, Plaintiff's claim rests entirely on his unsubstantiated

assertions, which are far from competent summary judgment evidence.

To state a cognizable claim under § 1985(3), a plaintiff must allege: (1) a conspiracy

between two or more individuals; (2) for the purpose of depriving a person or class of people of

the equal protection of the laws or of equal privileges and immunities under the laws; and (3) an act committed in furtherance of the conspiracy that injures a person or deprives him of a right or privilege of a citizen of the United States. *Anderson v. City of Dallas*, 116 F. App'x 19, 32 (5th Cir. 2004).

Plaintiff's § 1985(3) conspiracy claim fails for the same reason his § 1983 conspiracy claim fails: he alleges no specific facts to support the conclusion that Wheeler and Pierre conspired against him. Further, "[t]he essence of a conspiracy is an understanding or agreement between the conspirators." *Holdiness v. Stroud*, 808 F.2d 417, 425 (5th Cir. 1987). "[T]he operative facts of an alleged conspiracy under § 1985(3) must be pled with specificity; conclusory allegations… lack the requisite specificity to support a conspiracy claim." *Mays v. Bd. of Comm'rs Port of New Orleans*, No. 14-1014, 2015 U.S. Dist. LEXIS 33596, at *9 (E.D. La. Mar. 18, 2015). It is well settled in the Fifth Circuit that "mere conclusory allegations of conspiracy cannot, absent reference to material facts, state a substantial claim of conspiracy." *McAfee v. 5th Circuit Judges,* 884 F.2d 221, 222 (5th Cir. 1989). Plaintiff's allegations that Wheeler and Pierre "knowingly, willfully, and intentionally conspired" to deprive Plaintiff of his constitutional rights are conclusory. Plaintiff merely alleges that Wheeler and Pierre "racially profiled" Plaintiff "on the basis that he was in a luxury vehicle with two other Black youth, in an affluent neighborhood," (R. Doc. 1) without providing any material facts in the record to support his allegations.

### III. Najolia, Brenckle, Petit, and Brown Did not Fail to Train or Supervise Wheeler

Supervisory officials cannot be held liable for the actions of their subordinates because section §1983 does not create vicarious, or *respondeat superior* liability. *Oliver v. Scott*, 276 F.3d 736, 742 11. 6 (5th Cir. 2002). A §1983 claim against a police supervisor individually must be grounded in his *personal* conduct. *Alexander v. City Police of Lafayette*, 2021 U.S. Dist. LEXIS

183464, at *30 n.122 (W.D. La. Sep. 23, 2021), *citing Maze v. Garber*, No. 19-953, 2020 U.S.

Dist. LEXIS 97097, at *11 (W.D. La. June 1, 2020); *see also Thompkins v. Belt,* 828 F.2d 298,

304 (5th Cir.1987). Moreover, Louisiana state law does not permit a claim of vicarious liability

against a municipality for police misconduct when the officers were "off-duty, uniformed peace

officers working paid, private details." *Wright v. Skate Country, Inc*., 98-0217 (La. App. 4 Cir.

05/12/99); 734 So.2d 874, 882.

To be liable under § 1983, a supervisory official must be personally involved in the

constitutional deprivation, or there must be a sufficient casual connection between the supervisor's

alleged wrongful conduct and the constitutional violation. *Thompkins v. Belt*, 828 F.2d 298, 303-

04 (5th Cir. 1987). Absent a supervisor's "overt personal participation" in events giving rise to

alleged constitutional violations, a plaintiff alleging § 1983 claims must demonstrate that "(1) the

supervisor either failed to supervise or train the subordinate official; (2) a causal link exists

between the failure to train or supervise and the violation of the plaintiff's rights; and (3) the failure

to train or supervise amounts to deliberate indifference." *Mesa v. Prejean*, 543 F.3d 264, 2008 WL

4319977 (5th Cir. 2008) (citing *Estate of Davis ex rel. McCully v. City of North Richard Hills,* 406

F.3d 375, 381 (5th Cir. 2005)).

In this case, neither Kerry Najolia, Michael Brenckle, Darnell Laurent, Thaddeus Petit or

Jamel Brown were supervising Officer Wheeler at the time of the alleged incident. Officer Wheeler

testified that he was working in his authority as a paid detail with Hurstville Security District, and

even informed Plaintiff that he was working for the Hurstville security detail in the course of the

stop.[56] Further, according to the Orleans Levee District Police policies, at the time of the alleged

incident on June 13, 2020, Officer Wheeler was acting under the authority of the paid detail of

---

[56] Exhibit C Deposition of Wheeler, 47:9-49:23; 55:3-14; 95:13-15.

Hurstville Security and Neighborhood Improvement District, a political subdivision within the State of Louisiana.[57] The Orleans Levee District Police ("OLD") considers a paid detail as employment of any officer of the OLD by any individual, business, establishment, or organization where the officers are privately paid and is primarily performing the duties of a police officer.[58] Therefore, according to OLD policies, while working a paid detail for Hurstville on June 13, 2020, Officer Wheeler was not under the supervision or authority of the OLD, SLFPA-E, or its employees.[59] Notably, of the officers of the OLD named as defendants in this lawsuit, the only named defendant who provided training to Officer Wheeler was Lt. Darnell Laurent, who trained Officer Wheeler in firearms and taser use.[60] Accordingly, Defendants Najolia, Brenckle, Petit, and Brown have no knowledge of Officer Wheeler's training to provide in a deposition, or otherwise.

Moreover, deliberate indifference is a stringent standard requiring proof that a supervisor "disregarded a known or obvious consequence of his action"; a showing of negligence or even gross negligence will not suffice. *Estate of Davis*, 406 F.3d at 381. Moreover, "[p]roof of more than a single instance of the lack of training or supervision causing a violation of constitutional rights is normally required before such lack of training or supervision constitutes deliberate indifference." *Thompson*, 245 F.3d at 459; *Mesa*, 543 F.3d at 274; *Brumfield*, 551 F.3d at 329 (citing *Burge v. St. Tammany Parish*, 336 F.3d 363, 370 (5th Cir. 2003) (quoting *Thompson*, 245 F.3d at 459; *Brown*, 623 F.3d at 253 (citing *Estate of Davis*, 406 F.3d at 381)).

In this case, Plaintiff has failed to demonstrate that Officer Wheeler violated Plaintiff's constitutional rights. The stop on June 13, 2020 lasted just under 5 minutes, and Plaintiff, who

---

[57] Exhibit H Declaration of Michael Brenckle.
[58] Exhibit H Declaration of Michael Brenckle.
[59] Exhibit H Declaration of Michael Brenckle.
[60] Exhibit H Declaration of Michael Brenckle. As previously stated, a deposition of Lt. Laurent has been offered to Plaintiff as to any training provided to Wheeler, despite the fact that Plaintiff cannot even say that Wheeler had a weapon in his hand and no weapon was discharged on the night of the alleged incident.

remained in the vehicle at all times, was not searched, handcuffed or arrested by the officers.[61] In

fact, Plaintiff cannot even say that Wheeler pointed a weapon at him at any time.[62] Further,

according to OLD policies, while working a paid detail for Hurstville on June 13, 2020, Officer

Wheeler was not under the supervision or authority of the OLD, SLFPA-E, or its employees.[63]

Thus, a direct connection between Defendants' alleged inadequate training and supervision and a

constitutional deprivation is lacking. Therefore, Plaintiff has failed to establish that a causal link

exists between the alleged failure to train, supervise, or discipline and any constitutional violation

of Plaintiff's constitutional rights. Plaintiff offers no evidence of Defendants' failure to supervise,

or any other causal connection between his alleged constitutional injuries and any such failure to

supervise.

### IV. Plaintiff's State Law Claims Should be Dismissed for Identical Reasons

In *Roberts v. City of Shreveport,* 397 F.3d 287, 296 (5th Cir. 2005), the Fifth Circuit found

the plaintiffs' state law claims against a police chief should be dismissed under Louisiana's

discretionary immunity statute. Therefore, if this Court finds that Plaintiff's federal claims should

be dismissed against Defendants, then it should also dismiss Plaintiff's state law claims because

the same standard applies.

### V. Alternatively, this Court should Decline to Exercise Jurisdiction over the State Law Claims

"When a court dismisses all federal claims before trial, the general rule is to dismiss any

pendent claims." *See Bass v. Parkwood Hospital*, 180 F.3d 234, 246 (5th Cir. 1999); s*ee also*

*David v. Island Land Co.*, 77 Fed. Appx. 749, 752 (5th Cir. 2003). "This dismissal of the pendent

state law claims should be without prejudice." *Bass*, 180 F.3d at 246. Therefore, if this Court

---

[61] Exhibit B Deposition of Pierre, 94:4-9; Exhibit A Deposition of Hankins; 75:21-78:7; 77:5-78:17
[62] Exhibit A Deposition of Hankins, p. 65.
[63] Exhibit H Declaration of Michael Brenckle.

dismisses all of Plaintiff's federal claims and determines that Plaintiff's state law claims survive, it should follow the Fifth Circuit's general rule and decline to exercise supplemental jurisdiction over Plaintiff's pendent state law claims.

## VI. Conclusion

For the reasons discussed herein, Defendants are entitled to qualified immunity, and summary judgment should be granted.

Respectfully submitted,

**s/ Mark E. Hanna**
MARK E. HANNA (#19336)
TREVOR M. CUTAIAR (#33082)
JOHN M. ZAZULAK (#38452)
MOULEDOUX, BLAND, LEGRAND & BRACKETT, LLC
701 Poydras Street, Suite 600
New Orleans, Louisiana 70139
Telephone: (504) 595-3000
Facsimile: (504) 522-2121
Email: mhanna@mblb.com
        tcutaiar@mblb.com
        jzazulak@mblb.com

*Attorneys for Hurstville Security and Neighborhood Improvement District, Kevin Wheeler, Ramon Pierre and Carl Perilloux; and Southeast Louisiana Flood Protection Authority-East, Orleans Levee District Police, Kerry Najolia, Michael Brenckle, Darnell Laurent, Thaddeus Petit and Jamel Brown*

## CERTIFICATE OF SERVICE

I hereby certify that on March 7, 2023, I electronically filed the foregoing with the Clerk of Court by using the CM/ECF system which will send a notice of electronic filing to all CM/ECF participants.

**s/ Mark E. Hanna**