# UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| BILAL HANKINS, | Case No. 2:21-cv-01129 |
|         Plaintiff, | Judge: Eldon E. Fallon |
| v. | Magistrate Judge: Janis van Meerveld |
| KEVIN WHEELER, RAMON PIERRE, and CARL PERILLOUX (in their individual and official capacities), THE ORLEANS LEVEE DISTRICT POLICE, THE HOUSING AUTHORITY OF NEW ORLEANS, THE HURSTVILLE SECURITY AND NEIGHBORHOOD IMPROVEMENT DISTRICT, and DOE INSURANCE COMPANIES 1-6, | *Jury Trial Demanded* |
|         Defendants. | |

## PLAINTIFF'S MEMORANDUM IN OPPOSITION TO THE MOTION FOR SUMMARY JUDGMENT OF DEFENDANTS KEVIN WHEELER, RAMON PIERRE, CARL PERILLOUX, KERRY NAJOLIA, MICHAEL BRENCKLE, DARNELL LAURENT, THADDEUS PETIT AND JAMEL BROWN

# TABLE OF CONTENTS

**Page**

INTRODUCTION ................................................................................................. 1

STATEMENT OF FACTS ................................................................................... 2

LEGAL STANDARD ........................................................................................... 5

ARGUMENT ........................................................................................................ 5

I.      WHEELER AND PIERRE FAIL TO SHOW THAT THEIR CONDUCT WAS WITHIN THE SCOPE OF THEIR DISCRETIONARY AUTHORITY. ......................... 5

      A.      No Louisiana Statute Relating to Hurstville Grants Wheeler and Pierre the Requisite Discretionary Authority. .......................................................... 6

      B.      No Louisiana Statute Relating to HANO-PD Granted Pierre the Requisite Discretionary Authority. ........................................................................... 6

      C.      No Louisiana Statute relating to the OLD-PD Granted Defendant Wheeler the Requisite Discretionary Authority. .................................................... 7

II.     BILAL'S FEDERAL CLAIMS ARE SUPPORTED BY AMPLE EVIDENCE AND DEFENDANTS ARE NOT ENTITLED TO QUALIFIED IMMUNITY. ............. 8

      A.      Bilal's Unreasonable Seizure Claim is Supported by Robust Evidence and Defendants Are Not Entitled to Qualified Immunity................................. 8

            1.      Bilal's unreasonable seizure claim is supported by the evidence. ............. 8

            2.      Case law clearly establishes that Wheeler and Pierre are not entitled to qualified immunity for Bilal's unreasonable seizure claim....................................................................................................... 12

            3.      Qualified immunity does not apply at all because it is contrary to the Notwithstanding Clause of the original text of Section 1983. ........... 13

      B.      Bilal's Excessive Use of Force Claim Is Supported by Robust Evidence and Defendants Are Not Entitled to Qualified Immunity................................... 14

            1.      Bilal's excessive use of force claim is supported by robust evidence. ................................................................................................... 14

            2.      Clearly established law law shows that Wheeler and Pierre are not entitled to qualified immunity on Bilal's excessive use of force claim....................................................................................................... 17

      C.      Bilal's Conspiracy Claim Is Supported by the Evidence and Defendants Are Not Entitled to Qualified Immunity................................................. 19

      D.      Bilal's Supervisory Liability Claim Against Defendants Perilloux, Najolia, Brenckle, Laurent, Petit and Brown Is Supported By the Evidence and These Defendants Are Not Entitled to Qualified Immunity. .............................. 21

**TABLE OF CONTENTS**
(continued)

**Page**

III.    THIS COURT SHOULD RETAIN SUPPLEMENTAL JURISDICTION OVER
        BILAL'S STATE LAW CLAIMS, WHICH ARE SUPPORTED BY AMPLE
        EVIDENCE........................................................................................................... 22

CONCLUSION................................................................................................................. 25

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Alexander v. City of Round Rock*,
854 F.3d 298 (5th Cir. 2017) ............................................................10

*Bd. of Cnty. Comm'rs v. Brown*,
520 U.S. 397 (1997) ..........................................................................21

*Brown v. Texas*,
443 U.S. 47 (1979).............................................................................10

*Burge v. St. Tammany Parish*,
336 F.3d 363 (5th Cir. 2003) ............................................................21

*Casto v. Plaisance*,
2016 WL 2855468 (E.D. La. May 16, 2016) .....................................15

*Cherry Knoll, LLC v. Jones*,
922 F.3d 309 (5th Cir. 2019) ..............................................................5

*City of Canton v. Harris*,
489 U.S. 378 (1989)...........................................................................20

*Cooper v. Brown*,
844 F.3d 517 (5th Cir. 2016) ............................................................16

*Cox v. Wal-Mart Stores E., L.P.*,
755 F.3d 231 (5th Cir. 2014) ..............................................................5

*Crane v. City of Arlington*,
50 F.4th 453 (5th Cir. 2022) .............................................................18

*Directv, Inc. v. Atwood*,
2003 WL 22765354 (E.D. La. Nov. 19, 2003) .................................24

*Elphage v. Gautreaux*,
969 F. Supp. 2d 493 (M.D. La. 2013)................................................15

*Flores v. Rivas*,
EP-18-CV-297-KC, 2020 WL 563799 (W.D. Tex. Jan. 31, 2020) ..................17, 18

*Gonzalez v. Huerta*,
826 F.3d 854 (5th Cir. 2016) .......................................................10, 12

## TABLE OF AUTHORITIES
(continued)

**Page(s)**

*Goodson v. City of Corpus Christi,*
   202 F.3d 730 (5th Cir. 2000) ..................................................................8

*Graham v. Connor,*
   490 U.S. 386 (1989)...................................................................16, 17, 18

*Graham v. Dallas Area Rapid Transit,*
   288 F. Supp. 3d 711 (N.D. Tex. 2017) ..................................................24

*Hinojosa v. City of Terrell,*
   834 F.2d 1223 (5th Cir. 1988) ...............................................................18

*Hodge v. Laryisson,*
   226 F.3d 642, 2000 WL 1029029 (5th Cir. July 7, 2000)......................18

*Hodge v. Layrisson,*
   1998 WL 564263, 1998 WL 564263 (E.D. La. Sept. 1, 1998)...............14

*Illinois v. Wardlow,*
   528 U.S. 119 (2000).................................................................................8

*Imani v. City of Baton Rouge,*
   2022 WL 2760799 (M.D. La. July 14, 2022) ........................................20

*Jones v. Bd. of Supervisors of the Univ. of La. Sys.,*
   2015 WL 3409477 (E.D. La. May 27, 2015)..........................................20

*Leonard v. Dixie Well Service & Supply, Inc.,*
   828 F.2d 291 (5th Cir. 1987) .................................................................15

*Lockett v. New Orleans City,*
   607 F.3d 992 (5th Cir. 2010) .................................................................20

*Loupe v. O'Bannon,*
   2018 WL 343850 (M.D. La. Jan. 8, 2018)..............................................24

*Mack v. Newton,*
   737 F.2d 1343 (5th Cir. 1984) ...............................................................19

*Malina v. Gonzales,*
   994 F.2d 1121 (5th Cir. 1993) ............................................................6, 7

# TABLE OF AUTHORITIES
(continued)

**Page(s)**

*Mannis v. Cohen*,
  2001 WL 1524434 (N.D. Tex. Nov. 28, 2001) .................................................................14, 18

*Manzanares v. Roosevelt Cnty. Adult Det. Ctr.*,
  331 F. Supp. 3d 1260 (D.N.M. 2018) ...................................................................................13

*Martin v. Am. Midstream Partners, LP*,
  386 F. Supp. 3d 733 (E.D. La. 2019) ....................................................................................22

*Mathieu v. Imperial Toy Corp.*,
  646 So. 2d 318 (La. 1994) ....................................................................................................24

*McClendon v. City of Columbia*,
  305 F.3d 314 (5th Cir. 2002) ................................................................................................13

*Miller v. Salvaggio*,
  2021 WL 3474006 (W.D. Tex. Aug. 6, 2021) .......................................................................18

*Odubela v. Exxon Mobil Corp.*,
  736 F. App'x 437 (5th Cir. 2018) .........................................................................................15

*Painter Fam. Invs., Ltd. v. Underwriters at Lloyds, Syndicate 4242 Subscribing to*
  *Pol'y No. 42-7560009948-L-00*,
  2012 WL 13171208 (S.D. Tex. Jan. 12, 2012) ......................................................................24

*Perkins v. Hart*,
  --- F. Supp. 3d ----, 2022 WL 2952992 (E.D. La. July 26, 2022) ..........................................18

*Rogers v. Jarrett*,
  --- F.4th ----, 2023 WL 2706752 (5th Cir. Mar. 30, 2023) ...................................................13

*Sam v. Richard*,
  887 F.3d 710 (5th Cir. 2018) ..........................................................................................14, 17

*Southard v. Tex. Bd. of Crim. Just.*,
  114 F.3d 539 (5th Cir. 1997) ................................................................................................21

*State in Int. of*
  *C.B., 52,245*, 251 So. 3d 562, 566 (La. App. 2 Cir. June 27, 2018) ......................................23

*Sullivan v. Malta Park*,
  156 So. 3d 751 (La. Ct. App. 2014) ......................................................................................23

**TABLE OF AUTHORITIES**
(continued)

**Page(s)**

*Sweetin v. City of Texas City,*
  48 F.4th 387 (5th Cir. 2022) ......................................................................5, 8

*Tarver v. City of Edna,*
  410 F.3d 745 (5th Cir. 2005) ........................................................................10

*Terry v. Ohio,*
  392 U.S. 1 (1968).............................................................................................8

*United States v. Hill,*
  752 F.3d 1029 (5th Cir. 2014) ...................................................................8, 11

*United States v. Michelletti,*
  13 F.3d 838 (5th Cir. 1994) (en banc) ...........................................................9

*United States v. Padilla,*
  233 F.3d 575, 2000 WL 1468728 (5th Cir. 2000) ........................................11

*United States v. Rodriguez,*
  564 F.3d 735 (5th Cir. 2009) ........................................................................10

*Whisenant v. City of Haltom City,*
  106 F. App'x 915 (5th Cir. 2004) ..................................................................19

*Woods v. Edwards,*
  51 F.3d 577 (5th Cir. 1995) ..........................................................................20

*Zadeh v. Robinson,*
  928 F.3d 457(5th Cir. 2019) ..........................................................................13

*Ziglar v. Abbasi,*
  582 U.S. 120 (2017)........................................................................................13

**Statutes**

LA. R.S.
  14:36 ...............................................................................................................22
  14:37 ...............................................................................................................23

La. Stat. Ann.
  § 40:456.1(A)....................................................................................................6
  § 40:456.1(B)....................................................................................................6

# TABLE OF AUTHORITIES
### (continued)

**Page(s)**

**Other Authorities**

Alexander A. Reinert, *Qualified Immunity's Flawed Foundation*,
111 CALIF. L. REV. 101 ...............................................................................................13

Fourth Amendment .............................................................................................................8

https://californialawreview.org/print/qualified-immunitys-flawed-foundation/ ...........13

LSA R.S.
33:9091.11(E)(5) ......................................................................................................6, 7
38.326(A)(1)(a) ..............................................................................................................7
38.326(A)(1)(b) ..............................................................................................................7
40.1379.1 .......................................................................................................................7
40.1379.1(B) ..................................................................................................................7

FRCP Rule 56 ..................................................................................................................15

Section 1983 ..................................................................................................1, 13, 19, 20

Section 1985(3) .....................................................................................................19, 20

## INTRODUCTION

On June 13, 2020, Bilal and two friends stopped playing video games at his home to help search for a lost dog. As the youths were driving through a neighborhood near Bilal's home, Bilal spotted a police officer—Defendant Kevin Wheeler—in a marked Orleans Levee District Police Department ("OLD-PD") car. They pulled up beside Wheeler. Bilal asked for help finding the lost dog, gave his home address, and asked Wheeler to reach out should he find the lost dog. Wheeler did not help. Instead, he radioed Defendant Ramon Pierre, who along with Wheeler was on patrol for the Hurstville Security and Neighborhood Improvement District ("Hurstville"). Wheeler and Pierre trailed Bilal and his friends, switched on flashing lights, and stopped the youths. Wheeler and Pierre then brandished their deadly firearms at Bilal and the others, only letting them go after Bilal again told the officers what they knew all along—that he was looking for a lost dog.

Wheeler's apology immediately following the stop has done nothing to quell Bilal's anxiety, nightmares, and sleeplessness resulting from this harrowing experience.

To obtain relief for his harm, Bilal asserts claims under Section 1983 against Wheeler and Pierre for their unlawful stop and excessive use of force. The stop was unreasonable as it was based on nothing but a hunch of criminal activity and evidence reveals numerous disputes of material fact. Wheeler and Pierre principally assert that they had reasonable suspicion to conduct the stop given Wheeler's purported experience with car burglaries in the area. But that experience is untethered from the facts in this case. It rests on the absurd assertion that Bilal attempted to preemptively mask his intent to burglarize cars by actively seeking out and soliciting a police officer's help in a red herring search for a lost beloved family dog. Wheeler and Pierre also are not entitled to qualified immunity because case law clearly establishes that the stop was unconstitutional.

Wheeler and Pierre also used objectively unreasonable excessive force, and there are also

material disputes of fact on this issue. Bilal testified that Wheeler and Pierre brandished their deadly firearms at him; Wheeler and Pierre deny this. Wheeler and Pierre are not entitled to qualified immunity for the excessive force claim because their conduct violated Bilal's clearly established rights. Case law clearly establishes that where, as here, all the key factual circumstances weigh against the use of force, officers cannot brandish their deadly weapons at compliant youth. None of Defendants' cases state otherwise.

Bilal also asserts claims against Wheeler's and Pierre's supervisors, at Hurstville and OLD-PD, among others. Evidence shows that these supervisors' disregard for Wheeler's and Pierre's conduct while on patrol in Hurstville amounts to deliberate indifference, establishing their failures to train, supervise, and discipline.

For these reasons, and as discussed below, the Court should deny the Motion for Summary Judgment of Defendants Wheeler, Pierre, Carl Perilloux, Kerry Najolia, Michael Brenckle, Darnell Laurent, Thaddeus Petit, and Jamel Brown.

## STATEMENT OF FACTS

On the night of June 13, 2020, then 18-year-old Bilal, was looking for Duchess, a lost white chihuahua with brown spots, in his neighborhood. Ex. 1, Hankins Tr. 19:2–14; 22:8-21. Bilal and two of his friends, a college student and a 12-year-old child, searched for the dog. *Id.* at 22:8–25:7; 36:23–37:6. Bilal and the others saw Wheeler, a uniformed police officer in a marked OLD-PD police car. *Id*. at 44:12-48:6. While the others were initially hesitant to approach, Bilal asked Wheeler whether he had seen the dog. *Id*. Bilal described the dog and gave Wheeler his home address. *Id.* at 44:12-47:8. But it barely seemed to register with Wheeler, as he did not take notes or ask questions. *Id.* After speaking with Wheeler, Bilal and his friends resumed their search. *Id.*

Wheeler did not help search for the dog, and instead radioed Pierre, who also was on Hurstville patrol, and works full time for the Housing Authority of New Orleans Police Department

("HANO-PD"). Ex. 2, Wheeler Tr. 52:17–25. Wheeler expressed skepticism that Bilal truly was searching for a dog, thinking that three Black males, in a nice car in a nice neighborhood at night, must have been seeking to commit a crime such as, according to him, burglary, general theft, or auto theft. *See id.* at 49:9–51:23; Ex. 1, Hankins Tr. 71:3-5.

For all the time that they followed and tracked Bilal and his friends, Wheeler and Pierre did not observe any behavior by the youths that was inconsistent with them looking for the lost dog. Neither officer reported seeing Bilal or his friends reaching toward or pulling car door handles, or otherwise touching or surveilling parked cars. Ex. 3, Pierre Tr. 80:9–22. Neither officer reported that Bilal or his friends committed any traffic violations. *Id.* at 60:5–15. Wheeler ran a license plate search on the vehicle, and the search confirmed that the vehicle had not been reported stolen and was registered to a New Orleans East address. Ex. 2, Wheeler Tr. 52:5–12.

Wheeler and Pierre spoke as they both tracked Bilal and his friends. Ex. 2, Wheeler Tr. 53:14-54:20. Wheeler and Pierre jointly decided to conduct an illegal traffic stop, pulling the youths over without reasonable suspicion. *Id.* When conducting the stop and exiting his patrol vehicle, Wheeler yelled: "Driver, get the F--- out the car." Ex. 1, Hankins Tr. 56:14. Both Wheeler and Pierre then brandished their guns at Bilal and his friends and accused them of lying about their search for the lost dog. Ex. 1, Hankins Tr. 61:11–16. Wheeler and Pierre brandished their guns, even though the youths were entirely peaceful and compliant, and both officers knew that the youths had just sought help locating the lost dog. *Id.*; *see* Ex. 2, Wheeler Tr. 52:13-25. Only after Bilal and his friends proved they were telling the truth did the officers allow Bilal and his friends to leave. Ex. 3, Pierre Tr. 94:4–9; Ex. 1, Hankins Tr. 75:21–78:7.

On the evening in question, Wheeler was working under OLD-PD's paid detail system, as an officer for Hurstville, a neighborhood adjoining Bilal's own. Pierre was working under HANO-

PD's paid detail system, also as an officer for Hurstville. Moreover, both had prior disciplinary infractions. Wheeler previously was fired from the New Orleans Police Department for tasing an unarmed suspect and lying about it. Ex. 4, Wheeler Termination. Pierre had been reprimanded multiple times by HANO-PD, including for insubordination. Ex. 8, HANO000846-000872.

Wheeler's and Pierre's Hurstville Supervisor Defendant Perilloux, Wheeler's supervisors at the Southeast Louisiana Flood Protection Authority-East ("SLFPA-E) Defendants Najolia, Brenckle, Petit, Laurent, and Brown, and Pierre's supervisors Tyrone Martin, Demetrius Jackson, Tommy Mercadal, and Leontine Mullins (collectively, the "Defendant Supervisors") all disclaim responsibility for supervising Wheeler and Pierre. Under this logic, no one was responsible for supervising Wheeler and Pierre. The Defendant Supervisors, however, testified that Wheeler and Pierre were to follow OLD-PD and HANO-PD police guidelines, respectively. Although Wheeler previously had been fired for using excessive force and lying about it, and Pierre previously had been disciplined for insubordination, both officers were left unsupervised while working a paid detail and carrying guns. During the incident here, Wheeler was in a marked car and wearing his OLD-PD uniform and Pierre was in his personal truck, in plain clothes. Ex. 3, Pierre Tr. 42:17–43:4.

After discovery limited to qualified immunity, material factual issues remain in dispute, including the following:

- Bilal states that Wheeler and Pierre brandished their guns at him and his two friends. Defendants deny this. Whether the officers drew their weapons is critical to determining whether their actions were objectively reasonable under the circumstances.

- Bilal states he offered his address to Wheeler to help search for the dog. Wheeler claims Bilal did not give him an address and it raised his suspicions. The degree to which Bilal actively cooperated with the officers is critical to determining the objective reasonableness of the officers later drawing their guns at Bilal.

- Bilal states that none of the car passengers were hanging out of the car windows prior to the stop. Defendants claim the youths were hanging out of the car windows. Whether

4

Bilal and the other car occupants were hanging out of the windows is critical to determining the objective reasonableness of the officers pulling them over and later drawing their weapons on the unarmed and compliant minors.

- Bilal states that he is deeply traumatized by the events of that night. Defendants claim that Bilal has suffered no emotional distress.

- The Defendant Supervisors state that Wheeler and Pierre were not under the supervision or authority of the OLD-PD, SLFPA-E, or its employees. While Bilal does not contest that there was no supervision of Wheeler and Pierre, there is a material fact dispute as to whether the supervisors should be and are responsible for supervising, training, and discipling Wheeler and Pierre while they are working a paid detail.

## LEGAL STANDARD

Courts must deny a summary judgment motion, absent a showing that "there is no genuine issue as to any material fact." *Cox v. Wal-Mart Stores E., L.P.*, 755 F.3d 231, 233 (5th Cir. 2014) (citations omitted). A genuine dispute regarding a material fact exists where "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Sweetin v. City of Texas City,* 48 F.4th 387, 391 (5th Cir. 2022) (citation omitted). At summary judgment, courts "must view the evidence and draw reasonable inferences in the light most favorable to the nonmoving party." *Cox*, 755 F.3d at 233.

## ARGUMENT

## I. WHEELER AND PIERRE FAIL TO SHOW THAT THEIR CONDUCT WAS WITHIN THE SCOPE OF THEIR DISCRETIONARY AUTHORITY.

To invoke qualified immunity, defendants must first show that their actions fell within the scope of their discretionary authority. *Sweetin*, 48 F.4th at 392. If defendants establish that they were acting within the scope of their authority, only then does the burden shift to plaintiffs. *Id.* State law determines the scope of an official's discretionary authority, and "[a]n official acts within his discretionary authority when he performs non-ministerial acts within the boundaries of his official capacity." *Cherry Knoll, LLC v. Jones*, 922 F.3d 309, 318 (5th Cir. 2019) (citation omitted).

Qualified immunity does not apply where officers act outside of their discretionary authority. *See, e.g.*, *Sweetin,* 48 F.4th at 390-392 (reversing lower court's grant of summary judgment on qualified immunity to a city "permit officer," where officer seized drivers without discretionary authority to do so); *see also Malina v. Gonzales*, 994 F.2d 1121, 1126 (5th Cir. 1993) (affirming denial of qualified immunity to a judge who had made a traffic stop because the judge "is no different than any other person who purchases a red light and stops people on the interstate").

Here, Wheeler and Pierre likewise fail to make the threshold showing that they had the discretionary authority to conduct a traffic stop and brandish their firearms at Bilal. They do not, and cannot, cite to any statute showing that this conduct was within their discretionary authority.

### A.   No Louisiana Statute Relating to Hurstville Grants Wheeler and Pierre the Requisite Discretionary Authority.

Hurstville has the limited authority to "provide or enhance security patrols in the district" and does not authorize Wheeler and Pierre to conduct traffic stops and brandish firearms at adolescents. *See* LSA R.S. 33:9091.11(E)(5). This statute neither authorizes Hurstville to commission peace officers nor persons on "security patrols" to seize individuals. *See id*. Thus, the Hurstville statute does not grant Wheeler and Pierre the requisite discretionary authority.

### B.   No Louisiana Statute Relating to HANO-PD Granted Pierre the Requisite Discretionary Authority.

The Louisiana legislature expressly limited HANO-PD police powers to "interests relating to HANO." *See id.* La. Stat. Ann. § 40:456.1(A) (HANO "may appoint and commission peace officers who shall enforce laws, rules, and regulations to secure the protection of persons, properties, or *interests relating to HANO*" (emphasis added)); *see also id*. § 40:456.1(B).[1] Pierre

---

[1] Additionally, Pierre must identify the statute on which he bases his authority to carry a gun while working a private patrol in Hurstville. Ex. 3, Pierre Tr. 40:8-18. HANO-PD peace officers may only "carry weapons, concealed or exposed while in the performance of their [HANO-PD] duties." § 40:456.1(B). Here, Pierre

cannot show that his Hurstville patrol duties were for the "protection of persons, properties or interests relating to HANO." Here, Pierre was "no different than any other person who purchases a red light and stops people on the interstate." *Malina*, 994 F.2d at 1126. Thus, Pierre fails to show that his conduct was within his discretionary authority and is not entitled to qualified immunity.

### C.   No Louisiana Statute relating to the OLD-PD Granted Defendant Wheeler the Requisite Discretionary Authority.

Wheeler's status as a levee police officer did not authorize him to seize Bilal while on a Hurstville patrol. OLD-PD officers have authority to "maintain[] order and exercis[e] general police power" within their jurisdiction. R.S. 38.326(A)(1)(a); (A)(2). That jurisdiction is "***on and off the levees, within the area of the levee district or levee and drainage district, and upon its surrounding waters***." *Id.* at (A)(1)(a) (emphasis added). Hurstville is not within this jurisdiction, as Defendants' own map of the OLD-PD's jurisdiction makes clear. *See* Ex. 9, HURSTVILLE-SLFPAE-00871-77.

Wheeler also cannot show that he had the statutory authority to conduct the stop and brandish his gun at Bilal. OLD-PD officers shall be commissioned as a special officer by the Department of Public Safety and Corrections. R.S. 38.326(A)(1)(b) (citing R.S. 40.1379.1). A person who receives a special officer's commission only possesses "the same powers and duties as a peace officer" when "performing …. tasks ***directly related*** to the special officer's commission." R.S. 40.1379.1(B) (emphasis added). Otherwise, "he shall be regarded as a private citizen and his commission shall not be in effect." *Id.* Here, Wheeler was not performing tasks "directly related" to his special officer's commission because he was not fulfilling duties for the OLD-PD—the only reason for his "special officer's commission." Thus, Wheeler must "***be***

---

was not performing duties for HANO-PD, and therefore, was not authorized to carry a weapon under the statute—much less aim one at a compliant civilian.

*regarded as a private citizen*" while on patrol. *See id*. Because private citizens cannot seize other citizens, Wheeler lacked discretionary authority and is not entitled to qualified immunity.

Given the above, Wheeler and Pierre fail to establish that their conduct was within their discretionary authority, and this "oft-overlooked threshold requirement is dispositive here." *Sweetin*, 48 F.4th at 392. Accordingly, Wheeler and Pierre are not entitled to qualified immunity and bear the burden of proving any entitlement to summary judgment.

## II.     BILAL'S FEDERAL CLAIMS ARE SUPPORTED BY AMPLE EVIDENCE AND DEFENDANTS ARE NOT ENTITLED TO QUALIFIED IMMUNITY.

### A.     Bilal's Unreasonable Seizure Claim is Supported by Robust Evidence and Defendants Are Not Entitled to Qualified Immunity.

#### 1.     *Bilal's unreasonable seizure claim is supported by the evidence.*

Evidence shows material disputes of fact about whether Wheeler and Pierre lacked reasonable suspicion to stop Bilal. "Warrantless searches and seizures are per se unreasonable under the Fourth Amendment—subject only to a few specifically established and well-delineated exceptions." *United States v. Hill*, 752 F.3d 1029, 1033 (5th Cir. 2014) (citation and internal quotes omitted). One exception is the *Terry* stop, whereby "police officers may stop and briefly detain an individual for investigative purposes if they have reasonable suspicion that criminal activity is afoot." *Goodson v. City of Corpus Christi*, 202 F.3d 730, 736 (5th Cir. 2000) (citing *Terry v. Ohio*, 392 U.S. 1 (1968)). Under this exception, "if a law enforcement officer can point to specific and articulable facts that lead him to reasonably suspect that a particular person is committing, or is about to commit, a crime, the officer may briefly detain—that is, seize—the person to investigate." *Hill*, 752 F.3d at 1033 (citation and internal quotes omitted). "The officer must be able to articulate more than an inchoate and unparticularized suspicion or hunch of criminal activity." *Illinois v. Wardlow*, 528 U.S. 119, 123-24 (2000) (citation and internal quotes omitted).

It is undisputed that Bilal and his friends first approached Wheeler by driving toward his vehicle and requesting assistance finding a lost dog. Ex. 2, Wheeler Tr. 49:6-51:5. Wheeler then ran a computer search on the license plate and determined that the car was registered to an address in New Orleans East. After this encounter, Wheeler concluded that a stop was not necessary. *Id*. 62:11–63:3. Wheeler then recounted his interaction to Pierre, who himself had not witnessed Bilal's vehicle or interacted with the passengers. Ex. 3, Pierre Tr. 70:22–71:17; 80:23–81:5. Based on this discussion—and before Pierre ever encountered Bilal in the vehicle—Pierre decided that "something is not right here." Ex. 2, Wheeler Tr. 63:4–19; *see also id.* at 69:5–14. Thereafter, Pierre and Wheeler jointly decided to stop the vehicle (Ex. 2, Wheeler Tr. 62:20-63:19), although no new information since Wheeler's first encounter with Bilal supported a stop.

This is not reasonable suspicion. Rather, determining that "something is not right" based on a secondhand account of an officer being approached by individuals asking for help is just the type of "inchoate and unparticularized suspicion" that cannot support a lawful stop. Reasonable suspicion requires "more than a hunch." *United States v. Michelletti*, 13 F.3d 838, 840 (5th Cir. 1994) (en banc). Yet by all accounts, a hunch is, at absolute best, all that Defendants Pierre and Wheeler had when they decided to conduct the stop of three young Black males in an affluent neighborhood where they were perceived by police officers as looking out of place. As Pierre testified, Wheeler and Pierre decided to conduct the stop before Pierre had even seen the vehicle— meaning that Pierre learned no new information about the vehicle or its occupants after Wheeler called and before the stop took place. Ex. 3, Pierre Tr. 70:15–73:10.

Yet Defendants assert that they were justified in conducting the stop because the vehicle was moving slowly and because car burglaries had previously occurred in the neighborhood. Ex. 3, Pierre Tr. 60:5–24. They also assert that the car was not registered to a location close to the

encounter—although a license plate search did not show the vehicle as stolen. Ex. 2, Wheeler Tr. 52:10–12. Taken together, these post hoc justifications fall far short of reasonable suspicion. They are also disputed by Bilal's evidence, which describes an ordinary scene of three youth searching for a lost dog. While Pierre asserts that he saw the front passenger "leaning outside the vehicle as to suggest he was pulling on car door handles," (Ex. 3, Pierre Tr. 80:12–18), Bilal disputes this fact. Bilal testified that neither he nor the other occupants leaned out of the vehicle's windows during the stop and he recalls this as the vehicle's seat belt indicator did not go off—which it would have if the passengers were not wearing seat belts and were hanging out of the windows. Ex. 1, Hankins Tr. 39:6–40:2.[2] Pierre admits that he did not observe any of the vehicle occupants attempt to open a car door, before he initiated the stop. Ex. 3, Pierre Tr. 80:19–22. Bilal also not only testified that he voluntarily approached Wheeler, but also that he told Wheeler his current address during their first interaction—an action that is inconsistent with a person who is in the process of committing a crime. Ex. 1, Hankins Tr. 45:10–46:13.

In similar circumstances, courts have declined to find that reasonable suspicion existed as a matter of law. In *Gonzalez v. Huerta*, for example, the Fifth Circuit concluded that an officer unconstitutionally seized the plaintiff, where the seizure was based solely on "the bare report of a 'suspicious' vehicle in the school parking lot" and "a recent history of burglaries of motor vehicles at the same location." 826 F.3d 854, 857–58 (5th Cir. 2016); *see also Brown v. Texas*, 443 U.S. 47, 52 (1979) (police stop of a suspect was not supported by reasonable suspicion, where the suspect merely "looked suspicious" in a "neighborhood frequented by drug users"); *Alexander v. City of Round Rock*, 854 F.3d 298, 305 (5th Cir. 2017) (declining to find reasonable suspicion

---

[2]  This behavior is entirely consistent with Bilal's explanation to Wheeler, recounted to Pierre:  the search for a lost dog.  In any event, any credibility determination to be made between Bilal's and Defendants' versions of events leading up to the stop is inappropriate for summary judgment. *See Tarver v. City of Edna*, 410 F.3d 745, 753 (5th Cir. 2005).

existed as a matter of law where "the most [the officer] could have observed was a man ([plaintiff]) briefly looking around a vehicle in the parking lot, turning to get into a car, noticing a police car, continuing to get into the car, and beginning to drive further into the parking lot").

Defendants point to no "specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant" the stop. *United States v. Rodriguez*, 564 F.3d 735, 741 (5th Cir. 2009) (citation omitted). Rather, the circumstances are analogous to those in *Hill*, where the court noted the government's "attempt[] to put an ominous gloss on what appears almost entirely ordinary." 752 F.3d at 1034. By contrast to circumstances where reasonable suspicion might exist, Bilal and his friends "were not offending any traffic ordinance; there was no evidence of recent crimes in the neighborhood, no reason to suspect that [Bilal] or [the] passenger[s] were wanted by the police, and no other reason to believe that anything unusual was taking place." *Id.* (citation omitted). This might explain why Defendants cite *no* cases supporting their conclusion that the stop was justified. *See* Rec. Doc. 143-2 at 9. And the cases they rely on in support of their position that the stop was conducted in a "diligent and reasonable manner" are inapposite, because in those cases the courts analyzed the length of the stop *only after* first determining that the stop itself was supported by reasonable suspicion, *see id.* at 10–11.[3]

Bilal's expert, Dan Busken, who has 35 years of law enforcement experience, agrees that Wheeler's and Pierre's conduct was not justified.  *See, e.g.*, Ex. 6, Busken Report at 18, 21 ("Officer Wheeler's and Officer Pierre's detaining Hankins and the others was inconsistent with law enforcement training as well as recognized, accepted law enforcement practices."). As Mr. Busken explains in his report, while "[p]olice officers learn through training that subjective

---

[3] *E.g.*, *United States v. Padilla*, 233 F.3d 575 (table), 2000 WL 1468728 (5th Cir. 2000) (finding that "the information available to the officers gave them reasonable suspicion to think that [the suspect] was dealing cocaine," justifying the 45-minute delay between the initial stop and arrival of the drug-sniffing dog).

suspicious activity may draw their attention to some situation or occurrence that may be criminal in nature, . . . without specific, articulable facts, this subjective feeling alone does not constitute objective reasonable suspicion to detain, nor does it provide probable cause to arrest." *Id.* at 19. Mr. Busken also explains that the objective facts did not indicate that any criminal activity was taking place: "the location of the vehicle (away from the location where it was registered), initiating consensual contact with a police officer requesting assistance looking for a lost dog, remaining in the area to look for the dog, rather than leave the area to avoid further contact with the police, and a computer check that revealed the car was not reported stolen." *Id.* at 18.

Thus, there is a genuine dispute of material fact that precludes summary judgment on the issue of whether Bilal's stop was supported by reasonable suspicion.

### 2. *Case law clearly establishes that Wheeler and Pierre are not entitled to qualified immunity for Bilal's unreasonable seizure claim.*

Defendants are not entitled to qualified immunity for this claim. Controlling Fifth Circuit precedent established that Wheeler's and Pierre's conduct was not objectively reasonable when they stopped Bilal's vehicle simply because they felt—based on no objectively reasonable facts— that "something's not right." Ex. 2, Wheeler Tr. 69:10-14.

In *Gonzalez*, the Fifth Circuit held that a police officer detained an individual without reasonable suspicion where the officer received a "bare report of a 'suspicious' vehicle in the school parking lot" and knew that there was "a recent history of burglaries of motor vehicles at the same location." 826 F.3d at 857–58. There, as here, the officer "did not receive any information connecting the 'suspicious' vehicle to any of the alleged burglaries" before conducting the stop. *Id.* The Fifth Circuit held that the officer encountering a "reportedly suspicious person in an area where criminal activity had occurred in the past" did not constitute reasonable suspicion. *Id.*

Wheeler and Pierre violated Bilal's constitutional rights by stopping him without reasonable suspicion, simply based on their hunch that "something's not right" and that car burglaries had occurred in the same area. Considering clearly established law like *Gonzalez*, the stop lacked reasonable suspicion and thus was objectively unreasonable.[4]

3.    ***Qualified immunity does not apply at all because it is contrary to the Notwithstanding Clause of the original text of Section 1983.***

There is a "growing, cross-ideological chorus of jurists and scholars" recognizing that qualified immunity has no basis in the text of Section 1983 or the common law. *Zadeh v. Robinson*, 928 F.3d 457, 480-81(5th Cir. 2019) (Willet, J. concurring); *Ziglar v. Abbasi*, 582 U.S. 120, 159-60 (2017) (Thomas, J., concurring) (courts applying the doctrine are not "engaged in 'interpret[ing] the intent of Congress in enacting'" § 1983 and further "the sort of 'freewheeling policy choice[s]'" that is antithetical to the judicial role.) (citations omitted). For example, recent scholarship illuminates that the doctrine of qualified immunity "has no place in Section 1983" because it was adopted on the mistaken presumption that a relevant statute was silent about the common law. *See generally* Alexander A. Reinert, *Qualified Immunity's Flawed Foundation*, 111 CALIF. L. REV. 101, 166–67 (forthcoming)[5]; *see also Rogers v. Jarrett*, --- F.4th ----, 2023 WL 2706752, at *7 (5th Cir. Mar. 30, 2023) (Willett, J., concurring) (describing "Professor Reinert's scholarship" as "game-changing" because it "supercharges the critique that" the doctrine of qualified immunity

---

[4] The *Gonzalez* court found that the police officer's conduct was not objectively unreasonable in light of no clearly established law that put the officer on notice. But that decision was issued in 2016, and therefore constitutes the "directly controlling authority" "establishing the illegality of such conduct" in this case. *McClendon v. City of Columbia*, 305 F.3d 314, 328–29 (5th Cir. 2002).

[5] https://californialawreview.org/print/qualified-immunitys-flawed-foundation/

"does not merely *complement* the text—it brazenly *contradicts* it," which is especially key "in this text-centric judicial era when jurists profess unswerving fidelity to the words Congress chose").[6]

For these reasons, the Court should not apply the doctrine of qualified immunity at all.

**B.**     **Bilal's Excessive Use of Force Claim Is Supported by Robust Evidence and Defendants Are Not Entitled to Qualified Immunity.**

**1.**     ***Bilal's excessive use of force claim is supported by robust evidence.***

To prove an excessive force claim, a plaintiff must demonstrate "(1) an injury that (2) resulted directly and only from the use of force that was excessive to the need and that (3) the force used was objectively unreasonable." *Sam v. Richard*, 887 F.3d 710, 713 (5th Cir. 2018).

Bilal has suffered constitutionally cognizable injury, including nightmares, anxiety, and distress. *See* Ex. 5, Hankins Decl. ¶¶ 9-16. Defendants misstate the law in arguing that "[o]nly *substantial* psychological injuries are sufficient to meet the injury element" of an excessive force claim. Rec. Doc. 143-2 at 13-14 (emphasis added). Rather, "whether an injury is cognizable depends on the reasonableness of the force, not just the extent of injury." *Sam*, 887 F.3d at 714 (citation omitted). Therefore, "*[a]ny* force found to be objectively unreasonable necessarily exceeds the *de minimis* threshold" and "as long as a plaintiff has suffered some injury, even relatively insignificant injuries and purely psychological injuries will prove cognizable when resulting from an officer's unreasonably excessive force." *Id.* at 713.

Here, Bilal's psychological harm exceeds the *de minimis* threshold because he has suffered severe emotional distress resulting from Pierre's and Wheeler's unreasonably excessive force. *See, e.g.*, *Hodge v. Layrisson*, 1998 WL 564263, 1998 WL 564263, at *6 (E.D. La. Sept. 1, 1998)

---

[6] Moreover, courts should be cautious before curbing individuals' right to a jury of their peers. *See Manzanares v. Roosevelt Cnty. Adult Det. Ctr.*, 331 F. Supp. 3d 1260, 1294 n.10 (D.N.M. 2018) ("[I]n a day when police shootings and excessive force cases are in the news, there should be a remedy when there is a constitutional violation, and jury trials are the most democratic expression of what police action is reasonable….").

(finding "emotional distress" satisfies the injury requirement of an excessive force claim where it resulted from a police officer brandishing his firearm in an excessive use of force); *Mannis v. Cohen*, 2001 WL 1524434, at *8 (N.D. Tex. Nov. 28, 2001) (similar). As set forth in detail in Bilal's declaration, this incident has had a significant negative impact on Bilal's mental health. It has caused him to experience traumatizing and deeply disturbing nightmares. Hankins Decl. ¶ 10. His nightmares have involved flashing cop lights, officers in uniform driving cop cars, and swarms of policemen drawing their guns on him. *Id.* It has caused Bilal to regularly experience severe stress, including acute anxiety and extreme panic and fright when he is near police officers. *Id.* ¶ 11. Bilal no longer feels safe in his own neighborhood, regularly experiencing flashbacks to the incident. *Id.* ¶ 12. He also has become antisocial, retreating from friends and family, deleting his social media accounts, and feeling like the incident "has broken [his] mental state." *Id.* ¶¶ 13-15. Crucially, this incident "has had a lasting impact on [Bilal's] sense of self and self-worth." *Id.* ¶ 16.

The Court can rely on Bilal's undisputed testimony and recitation of the facts, where not contrary to any other evidence in the record. *See Odubela v. Exxon Mobil Corp.*, 736 F. App'x 437, 441 (5th Cir. 2018) ("[The Court] will not evaluate credibility or weigh evidence" at the motion for summary judgment stage); *Leonard v. Dixie Well Service & Supply, Inc.*, 828 F.2d 291, 294 (5th Cir. 1987) ("The party opposing a motion for summary judgment, with evidence competent under Rule 56, is to be believed."). Indeed, Defendants' cases only reinforce that Bilal's injury is constitutionally cognizable. Unlike Bilal, the plaintiffs in those cases did not present any evidence of emotional distress, including nightmares, anxiety, or sleeplessness. *See, e.g.*, *Casto v. Plaisance*, 2016 WL 2855468, at *6 (E.D. La. May 16, 2016) (concluding plaintiff's psychological harm was not constitutionally cognizable, where he testified only that he was "pretty upset"); *Elphage v. Gautreaux*, 969 F. Supp. 2d 493, 509-10 (M.D. La. 2013) (noting plaintiff's failure to

present any evidence of psychological injury). Bilal's testament of how Defendants' conduct has caused him severe and prolonged emotional distress establishes more than *de minimis* injury.

Next, Wheeler's and Pierre's use of force was excessive relative to the need and objectively unreasonable because they brandished their guns at Bilal who posed no threat whatsoever to them. To determine whether force was objectively unreasonable, courts assess the "facts and circumstances of each particular case," including (1) "the severity of the crime at issue"; (2) "whether the suspect poses an immediate threat to the safety of the officers or others"; and (3) "whether he is actively resisting arrest or attempting to evade arrest by flight." *Cooper v. Brown*, 844 F.3d 517, 522 (5th Cir. 2016) (quoting *Graham v. Connor*, 490 U.S. 386, 396 (1989)).

*First*, although Wheeler and Pierre attempt to reframe their stop as an investigation of a potential car burglary, no crime was at issue because Wheeler and Pierre did not even have reasonable suspicion to conduct a stop. *See supra* at § II.A.1; *see* Rec. Doc. 143-2 at 15.

*Second*, evidence establishes that at no point did Bilal or any of his friends pose any threat at all to Wheeler and Pierre. For example, it is undisputed that Bilal and his friends affirmatively approached Wheeler, seated in his marked police car, and sought his help in finding the lost dog. Ex. 1, Hankins Tr. 44:12-46:13; Ex. 2, Wheeler Tr. 50:21-51:7; Ex. 3, Pierre Tr. 71:4-17. Bilal told Wheeler his home address during this first encounter and described the lost dog. Ex. 1, Hankins Tr. 45:21-46:6. Neither Wheeler nor Pierre testified that they observed Bilal and his friends committing any traffic violations, and both admitted that Bilal and his friends were kids. Ex. 2, Wheeler Tr. 49:10-16; 94:16-95:3; Ex. 3, Pierre Tr. 60:5-24; 72:5-7. All of these facts show that Bilal posed no immediate threat to the safety of Wheeler and Pierre.

*Third*, Bilal never at all resisted any interaction with Wheeler and Pierre or otherwise attempted to evade them. Despite Bilal's understandable shock of being pulled over after just

having sought Wheeler's help, Bilal and his friends stopped promptly when Wheeler flashed his car lights and used his loudspeaker. Ex. 1, Hankins Tr. 55:16-56:17. Wheeler and Pierre immediately drawing their weapons on Bilal and his friends was thus an extreme escalation of force that was completely unwarranted and objectively unreasonable given the circumstances.

Defendants cannot overcome the undisputed fact that Bilal and his friends did not resist any interaction with Wheeler and Pierre or otherwise attempt to evade them by mischaracterizing Bilal's testimony to assert that "he did not know for certain that Wheeler had a gun in his hands." Rec. Doc. 143-2 at 5. In fact, Bilal testified repeatedly that both Wheeler and Pierre brandished their guns at him. Ex. 1, Hankins Tr. 64:6–25, 65:15–17.  Defendants also argue that Bilal cannot establish a constitutional violation because "[t]his case does not involve a use of deadly force." Rec. Doc. 143-2 at 15. But unconstitutional uses of force are far broader than just deadly force. Here, it was objectively unreasonable for Wheeler and Pierre to brandish their deadly weapons at compliant youths who had previously sought Wheeler's help finding a lost dog. Bilal's expert agrees that Wheeler's and Pierre's conduct was unjustified. *See* Busken Report at 17-18 ("[I]t is my opinion that the use of force as alleged by Bilal Hankins in his complaint and in his testimony was not justified based on the totality of the circumstances, inconsistent with generally accepted police practices, or what is generally understood by law enforcement to be appropriate.").

2.   ***Clearly established law shows that Wheeler and Pierre are not entitled to qualified immunity on Bilal's excessive use of force claim.***

Defendants are not entitled to qualified immunity where their "use of force violated clearly established statutory or constitutional rights of which a reasonable person would have known." *Sam*, 887 F.3d at 713 (citation omitted). Defendants argue that "controlling Fifth Circuit case law has established that the pointing of a weapon at passengers in a vehicle during an investigatory stop can be reasonable given the circumstances." Rec. Doc. 143-2 at 17. But Defendants

conveniently ignore the circumstances here. Wheeler and Pierre could not reasonably have perceived Bilal and his friends to be threats. Ex. 3, Pierre Tr. 83:19-84:16; 92:24-93:7; 96:9-13.

Case law clearly establishes that where "all *Graham* factors counsel against the use of force, it is objectively unreasonable for a police officer to brandish a deadly weapon at . . . compliant suspects." *Flores v. Rivas*, EP-18-CV-297-KC, 2020 WL 563799, at *7–9 (W.D. Tex. Jan. 31, 2020). In *Flores*, an officer "allegedly brandished his weapon at a group of compliant children, despite the absence of any fact or circumstance which would lead a reasonable person to believe that [p]laintiffs committed or were committing any offense, whatsoever." *Id.*, at *7 (internal citation and quotation marks omitted).

That is precisely what has occurred here. No facts would lead a reasonable person to believe that Bilal—who had just requested Wheeler's assistance with help finding a lost dog—was committing a crime. *See supra* at § II.A.1. Wheeler even described Bilal and his friends as "kids." Ex. 7 at 6-7 (Wheeler Interview). Under these circumstances, courts routinely hold that a right was clearly established. *See Mannis*, 2001 WL 152443, at *7–8 (denying qualified immunity on unlawful seizure and excessive force claims, where evidence showed an officer brandished a gun at plaintiff lacking "legal justification in using any force whatsoever," including because plaintiff was "not resist[ing] lawful police authority"); *see Miller v. Salvaggio*, 2021 WL 3474006, at *9–10 (W.D. Tex. Aug. 6, 2021) (finding it "objectively unreasonable for [d]efendants to point their guns at [p]laintiffs," where all "*Graham* factors counsel against the use of force"); *see also Perkins v. Hart*, --- F. Supp. 3d ----, 2022 WL 2952992, at *12–13 (E.D. La. July 26, 2022) (denying qualified immunity, finding that "pointing a taser at [a young person] and threatening to use it was unreasonable" and noting "robust consensus that pointing a gun at compliant children is objectively unreasonable"), *appeal filed*.

18

Defendants' cases only further show that Bilal's right was clearly established because they involve violent or non-compliant suspects, or officers investigating under a warrant. *See, e.g.*, *Crane v. City of Arlington*, 50 F.4th 453, 467 (5th Cir. 2022) (evading arrest); *Hinojosa v. City of Terrell,* 834 F.2d 1223, 1225, 1230–31 (5th Cir. 1988) (stopping fight); *Hodge v. Laryisson*, 226 F.3d 642, 2000 WL 1029029, at *3 (5th Cir. July 7, 2000) (conducting drug raid). Defendants cite to no case law where the suspects were wholly compliant, which is undisputed in this case.

Accordingly, case law clearly established that it was objectively unreasonable for Wheeler and Pierre to brandish their guns at Bilal, who was compliant at all times. Or, alternatively, that the questions about whether the officers drew their weapons create significant disputes of material fact that preclude a ruling on summary judgment.

### C.    Bilal's Conspiracy Claim Is Supported by the Evidence and Defendants Are Not Entitled to Qualified Immunity.

Material disputes of fact exist regarding Bilal's conspiracy claims under Section 1983 and Section 1985(3). A conspiracy claim under Section 1983 requires proof of "the existence of (1) an agreement to do an illegal act and (2) an actual constitutional deprivation." *Whisenant v. City of Haltom City*, 106 F. App'x 915, 917 (5th Cir. 2004) (citation omitted). Defendants argue that "Plaintiff has produced no evidence of any agreement between Wheeler and Pierre to do any illegal act." Rec. Doc. 143-2 at 20. But the record shows that Wheeler and Pierre jointly agreed to conduct the unlawful stop of Bilal and his friends. For example, Wheeler stated "So I'm on the phone with Pierre. I'm like, you know, what do you think? He goes, I don't know, something's not right. I said, okay, cool, let's do a stop." *See* Ex. 7, (Wheeler Interview) at 7. At that point, Pierre had not even seen Bilal, but still agreed to help Wheeler conduct the stop. This states a conspiracy. *See Mack v. Newton*, 737 F.2d 1343, 1350-51 (5th Cir. 1984) (conspiracy claims are "rarely evidenced by explicit agreements" and "almost inevitably rest[] on the inferences that may fairly be drawn

19

from the behavior of the alleged conspirators" (citations omitted and cleaned up)). Moreover, as demonstrated *supra*, Bilal has shown the actual constitutional deprivations of an unlawful stop and the excessive use of force. Thus, Bilal's Section 1983 conspiracy claim should proceed to trial.

Material disputes of fact also exist on Bilal's Section 1985(3) claim. For conspiracy claims under Section 1985(3), plaintiffs must prove "(1) a conspiracy; (2) for the purpose of depriving a person of the equal protection of the laws; and (3) an act in furtherance of the conspiracy; (4) which causes injury to a person or a deprivation of any right or privilege of a citizen of the United States." *Lockett v. New Orleans City*, 607 F.3d 992, 1002 (5th Cir. 2010) (citation omitted).

There is a material dispute of fact regarding Wheeler's and Pierre's conspiracy to deprive Bilal of his constitutional rights, as also demonstrated for Bilal's Section 1983 conspiracy claim. The officers' intent to stop Bilal based on his race is clear through Wheeler's own statement to Bilal, where Wheeler said they conducted the stop because "you know, three young men, in a nice car, in this neighborhood." Ex. 1, Hankins Tr. 71:3-5. This statement, along with the absence of any reasonable suspicion for the stop, establishes a genuine dispute of material fact about whether Wheeler and Pierre harassed Bilal based on his race. *See, e.g.*, *Jones v. Bd. of Supervisors of the Univ. of La. Sys.*, 2015 WL 3409477, at *8 (E.D. La. May 27, 2015) (concluding plaintiffs pled a Section 1985(3) claim, in part by alleging defendant "harassed [a plaintiff] based on race"); *see also Imani v. City of Baton Rouge*, 2022 WL 2760799, at *47–49 (M.D. La. July 14, 2022) (denying defendants' motion for summary judgment on plaintiffs' conspiracy claim, where circumstantial evidence reflected defendants' acts furthering a common end and their making of arrests without justification). Thus, Bilal's conspiracy claim is supported by ample evidence.

### D. Bilal's Supervisory Liability Claim Against Defendants Perilloux, Najolia, Brenckle, Laurent, Petit and Brown Is Supported By the Evidence and These Defendants Are Not Entitled to Qualified Immunity.

To prevail on a supervisory liability claim, a plaintiff "must identify defendants who were either personally involved in the constitutional violation or whose acts are causally connected to the constitutional violation alleged." *Woods v. Edwards*, 51 F.3d 577, 583 (5th Cir. 1995). This requires a showing that (1) an individual failed to supervise, train, or discipline an officer; (2) a causal connection existed between the failure to supervise, train, or discipline and the violation of the plaintiff's rights; and (3) the failure to supervise, train, or discipline amounted to deliberate indifference to plaintiffs' constitutional rights. *City of Canton v. Harris*, 489 U.S. 378, 386–89 (1989); *see also Burge v. St. Tammany Parish*, 336 F.3d 363, 370 (5th Cir. 2003). "[D]eliberate indifference" requires evidence "that a municipal actor disregarded a known or obvious consequence of his action." *Bd. of Cnty. Comm'rs v. Brown*, 520 U.S. 397, 410 (1997). Deliberate indifference can occur through "action or inaction." *See Southard v. Tex. Bd. of Crim. Just.*, 114 F.3d 539, 550–51 (5th Cir. 1997).

Here, Defendants do not dispute that Perilloux is responsible for supervising, training, and disciplining Wheeler and Pierre. But they tellingly fail to contest Bilal's assertions that Perilloux was deliberately indifferent to the well-known or obvious consequences of his failures to train, supervise, and discipline, which are constitutional violations like those that occurred here. Perilloux's deposition reveals that he took no meaningful steps to train, supervise, or discipline Hurstville patrol officers. Ex. 10, Perilloux Tr. 37:16-40:22. Instead, he relied entirely and blindly on Wheeler's and Pierre's supervisors from other entities. Ex. 10, Perilloux Tr. 33:5-36:25.

Najolia, Brenckle, Laurent, Petit and Brown of OLD-PD also were deliberately indifferent to the well-known or obvious consequences of failing to train, supervise, or discipline Wheeler for his paid detail work. These Defendants admit that they did not supervise Wheeler while he was on

patrol at Hurstville. This failure to supervise necessarily led to a failure to train and discipline because none of these supervisors were aware of Wheeler's conduct during paid details. Wheeler's prior uses of excessive force and false reports, including that which led to his firing from the New Orleans Police Department, only increased the well-known and obvious risk stemming from failures to train, supervise, and discipline him. Ex. 4, Wheeler Termination). Bilal's expert agrees that these Defendants' inaction was unjustified. *See, e.g.*, Ex. 6, Busken Report at 21 ("Hurstville Paid Detail are essentially performing police duties without supervision and monitoring. Based on my training, knowledge, and expertise, this creates a well-known and obvious risk that police officers will violate the law.").

Defendants argue that "Wheeler was not under the supervision or authority of the OLD, SLFPA-E, or its employees." Rec. Doc. 143-2 at 24. This is wrong. These Defendants must supervise Wheeler while he is on patrol at Hurstville. For instance, Wheeler cannot work a paid detail without these Defendants' approval, Wheeler is clothed with the authority of an OLD-PD officer, including through use of an OLD-PD vehicle, gun, and uniform, and he must follow the OLD-PD's rules and regulations while on the paid detail. Ex. 2, Wheeler Tr. at 32:2-5; 35:5-37:14; 41:5-23; 44:6-21. Even Perilloux expects that Wheeler will follow OLD-PD's rules and regulations while on patrol at Hurstville. Ex. 10, Perilloux Tr. 33:5-25.

## III.   THIS COURT SHOULD RETAIN SUPPLEMENTAL JURISDICTION OVER BILAL'S STATE LAW CLAIMS, WHICH ARE SUPPORTED BY AMPLE EVIDENCE.

Defendants do no more than make the mere passing reference that they are entitled to summary judgment on Bilal's state law claims for the same reasons as for Bilal's federal claims. They are wrong. Bilal's evidence establishes a genuine dispute of fact regarding all of his state law claims: (1) aggravated assault; (2) assault; (3) intentional infliction of emotional distress; and (4) negligent infliction of emotional distress.

22

*Assault and Aggravated Assault Claims*. In Louisiana, a violation of a criminal statute can be the basis for a civil cause of action. First, "[a]ssault is an attempt to commit a battery, or the intentional placing of another in reasonable apprehension of receiving a battery." LA. R.S. 14:36. To state a claim for assault, a plaintiff must allege: "(1) the intent-to-scare mental element (general intent); (2) conduct by the defendant of the sort to arouse a reasonable apprehension of bodily harm; and (3) the resulting apprehension on the part of the victim." *Martin v. Am. Midstream Partners, LP*, 386 F. Supp. 3d 733, 741 (E.D. La. 2019). Second, "[a]ggravated assault is an assault committed with a dangerous weapon." LA. R.S. 14:37. For this claim, a plaintiff must allege that a defendant "made an attempt to commit a battery, or intentionally placed the victim in reasonable apprehension of receiving a battery by the discharge of a firearm." *State in Int. of C.B., 52,245*, 251 So. 3d 562, 566 (La. App. 2 Cir. June 27, 2018).

Here, Wheeler and Pierre brandished their weapons at Bilal and his friends, which placed Bilal in reasonable apprehension of injury. Ex. 1, Hankins Tr. 61:11-16; 62:8-13; 64:9-10. Thus, evidence supports Bilal's assault and aggravated assault claims.

*Intentional Infliction of Emotional Distress*. This claim has three elements: (1) defendants' conduct was extreme and outrageous; (2) plaintiffs suffered severe emotional distress; and (3) the defendants desired to inflict severe emotional distress or knew that it was certain or substantially certain to result from his conduct. *Sullivan v. Malta Park*, 156 So. 3d 751, 757 (La. Ct. App. 2014). As shown above, Wheeler's and Pierre's actions toward Bilal were extreme and outrageous. Both Wheeler and Pierre brandished their guns and thus used excessive force against Bilal, who was entirely compliant. Ex. 1, Hankins Tr. 61:11-16; 62:8-13; 64:9-10; Ex. 3, Pierre Tr. 84:7-9. Every reasonable person would know that brandishing guns at Bilal under the facts here would cause emotional distress, which it did. *See* Ex. 5, Hankins Decl. ¶¶ 7–16.

23

As described *supra* at § II.B.1 and detailed in Bilal's declaration, this incident has caused Bilal significant and prolonged emotional distress, including vivid and terrifying nightmares, difficulty sleeping, and acute anxiety and panic upon seeing police officers. *Id.* ¶¶ 9–12. Bilal also now suffers from severe antisocial tendencies, withdrawing from his friends and family as a result of the incident. *Id.* ¶¶ 13–15. Wheeler's and Pierre's conduct has profoundly and negatively impacted Bilal's mental health; Bilal no longer feels safe in his neighborhood and is not the high functioning, social person that he was prior to the incident. *See* Ex. 5, Hankins Decl. ¶¶ 9–16. Thus, evidence supports this claim.[7] The degree of mental suffering and credibility of Bilal's suffering are essential, contested issues that a jury must resolve.

***Negligent Infliction of Emotional Distress***.  The elements of this claim are (1) defendants owed an independent, direct duty to the plaintiff; (2) the duty afforded protection to plaintiff for the risk and harm caused; (3) the duty was breached; and (4) the plaintiff suffered genuine, serious mental anguish. *Directv, Inc. v. Atwood*, 2003 WL 22765354, at *3 (E.D. La. Nov. 19, 2003). As law enforcement officers, Wheeler and Pierre owed a duty to Bilal to act reasonably. *Mathieu v. Imperial Toy Corp.*, 646 So. 2d 318, 322 (La. 1994).

Bilal's sworn declaration details the acute and prolonged emotional distress he has experienced because of Wheeler's and Pierre's conduct. *See* Ex. 5, Hankins Decl. ¶¶ 9-16. As described above, Bilal regularly confronts sustained and significant anxiety, sleeplessness, nightmares, antisocial tendencies, and feelings of unsafety and mistrust. Evidence of anxiety and nightmares, at a minimum, create a genuine dispute of material fact about whether Bilal suffered

---

[7] *See, e.g.*, *Graham v. Dallas Area Rapid Transit*, 288 F. Supp. 3d 711, 736 (N.D. Tex. 2017) (relying on plaintiff's affidavit testimony to find that plaintiff raised a genuine dispute of material fact as to the police officers' entitlement to summary judgment based on qualified immunity); *Painter Fam. Invs., Ltd. v. Underwriters at Lloyds, Syndicate 4242 Subscribing to Pol'y No. 42-7560009948-L-00*, 2012 WL 13171208, at *2 (S.D. Tex. Jan. 12, 2012) (same).

severe emotional distress. *Loupe v. O'Bannon*, 2018 WL 343850, at *8 (M.D. La. Jan. 8, 2018).

Thus, the evidence supports Bilal's negligent infliction of emotional distress claim.

## <u>CONCLUSION</u>

For the foregoing reasons, the Court should deny Defendants' motion for summary

judgment based on qualified immunity.

Dated:  April 5, 2023                     Respectfully submitted,

*/s/ Christopher M. Andrews*
Christopher M. Andrews (*pro hac vice*)
candrews@cooley.com
Cooley LLP
55 Hudson Yards
New York, NY 10001
Telephone: (212) 479-6862

Patrick E. Gibbs (*pro hac vice*)
pgibbs@cooley.com
Cooley LLP
3175 Hanover Street
Palo Alto, CA  94304
Telephone: (650) 843-5000

Amara Lopez (*pro hac vice*)
alopez@cooley.com
Cooley LLP
355 S. Grand Avenue
Los Angeles, CA 90071
Telephone: (213) 561-3220

Tina Jensen (*pro hac vice*)
tjensen@cooley.com
Cooley LLP
4401 Eastgate Mall
San Diego, CA 92121
Telephone: (858) 550-6000

*And*

Bridget Wheeler
LA Bar No. 37546
Stephanie Willis
LA Bar No. 31834
swillis@laaclu.org
Nora Ahmed (*pro hac vice*)
Nahmed@laaclu.org
ACLU Foundation of Louisiana
1340 Poydras Street, Suite 2160
New Orleans, LA 70112
Telephone: (504) 522-0628

*Counsel for Plaintiff Bilal Hankins*

### CERTIFICATE OF SERVICE

I hereby certify that a copy of the above and foregoing pleading has been served upon all counsel of record by electronic transmission, this 5th day of April 2023.

*Christopher M. Andrews*