## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

**HANKINS**                                          **CIVIL ACTION**

**VERSUS**                                           **NO. 21-1129**

**WHEELER**                                          **SECTION "L"(1)**

## <u>ORDER AND REASONS</u>

Before the Court are two motions for summary judgment by Defendants: the first by Carl Perilloux, Ramon Pierre, and Kevin Wheeler (collectively, "the Hurstville Defendants") and Michael Brenckle, Jamel Brown, Darnell Laurent, Kerry Najolia, and Thaddeus Petit (collectively, "the SLFPA-E Defendants"), at R. Doc. 142; and the second by Tyrone Martin, Demetrius Jackson, Tommy Mercadal, and Leontine Mullins (collectively, "the HANO Defendants"), at R. Doc. 143. The Hurstville Defendants and the SLFPA-E Defendants seek summary judgment on qualified immunity for the responding officers and supervisory liability of the SLFPA-E Defendants. In addition, the Hurtsville and SLFPA-E Defendants ask this Court to dismiss Plaintiffs' remaining state law claims. The HANO Defendants seek summary judgment on qualified immunity for supervisory liability.

Plaintiff filed memoranda in opposition to Defendants' motions, at R. Doc. 151 and R. Doc. 152. Having considered the briefing and the applicable law, the Court rules as follows.

### I. BACKGROUND

This civil rights case arises out of a traffic stop of Plaintiff Bilal Hankins, a young Black man, and two other young Black males—another teenager and a pre-teen—by law enforcement officers who were working a private security detail in New Orleans on Saturday, June 13, 2020.

1

R. Doc. 22 at 1-4. Plaintiff Bilal Hankins, who was 18 years old at the time of the incident, alleges that he was socializing at his family's long-time residence in Uptown New Orleans with his friend, Tahj Pierre ("Tahj Pierre"), a college student. *Id.* at 12. Also present with Hankins and Tahj Pierre were Diondra Robbins, who leased an apartment in the front of Hankins's family's home, and Robbins's 12-year-old nephew, L.M. *Id.*

At some point in the evening, the four individuals realized that Robbins's white chihuahua, Duchess, was missing. *Id.* Duchess allegedly had an "underlying condition for which she needed medication, so it was important to find her quickly." *Id.* Around 11:30 p.m., Plaintiff, Tahj Pierre, and L.M. entered Pierre's black BMW—a high school graduation gift from Tahj Pierre's mother—to search for Duchess. *Id.* Tahj Pierre sat in the driver's seat. L.M. sat next to him in the front passenger seat, while Plaintiff occupied the rear driver's side seat. Tahj Pierre allegedly drove slowly down Camp Street heading west, calling and whistling for the dog. *Id.*

After driving a few blocks, the group observed a white police officer wearing an Orleans Levee District-Police Department ("OLD-PD") uniform. The officer sat in a parked OLD-PD car at the intersection of Camp and Valmont Streets. *Id.* The officer, Defendant Kevin Wheeler ("Officer Wheeler"), was an off-duty employee of the OLD-PD who was working a private detail for the Hurstville Security and Neighborhood Improvement District ("Hurstville"), a political entity that employs law enforcement officers to patrol the neighborhood. *Id.* at 5. Plaintiff alleges that two entities—the Southeast Louisiana Flood Protection Authority-East ("SLFPA-E") and the Lakefront Management Authority ("LMA")—exercise authority over the OLD-PD. *Id.* at 5.

Tahj Pierre allegedly drove alongside Officer Wheeler's vehicle while Plaintiff waved to Officer Wheeler and asked if he had seen a dog. *Id.* at 13. When Officer Wheeler said "No,"

Plaintiff explained that they were searching for a dog and provided a description of Duchess. Plaintiff asked Officer Wheeler to assist with the search, apparently by keeping an eye out for the dog. *Id.*

Plaintiff and his friends continued to drive around searching for Duchess. Unbeknownst to the group, Officer Wheeler allegedly called Defendant Officer Ramon Pierre ("Officer Pierre") for backup. Officer Pierre was an off-duty employee of the police department of the Housing Authority of New Orleans ("HANO"). *Id.* at 4. Like Officer Wheeler, Officer Pierre was working that night as a private patrol officer for Hurstville. He was in plain clothes and driving an unmarked vehicle. *Id.* at 13-14.

Officer Wheeler allegedly informed Officer Pierre of his encounter with Plaintiff. Officer Wheeler expressed skepticism that Plaintiff was truly searching for a dog. Officer Wheeler allegedly based his skepticism on the late hour and the slow speed at which Tahj Pierre was driving and his belief that in that area "it was common for 'certain people' to drive slowly in search of potential targets for burglary and carjacking, leaning out of windows and pulling on car door handles to see if they were unlocked." *Id.* Officer Wheeler ran a license plate check on Tahj Pierre's BMW; the check showed that the vehicle had not been reported as stolen, but that it was registered to a woman living in New Orleans East, which is about 10 miles away from their present location. The officers, each in their respective vehicles, followed Plaintiff and his companions for several blocks. *Id.* at 14.

After driving slowly for several more blocks, the officers turned on their vehicles' flashing lights. *Id.* at 15. Plaintiff and his friends did not stop or pull over, but continued driving at the same slow speed because they initially did not believe that the flashing lights were for them given that they had approached Officer Wheeler for help. Plaintiff alleges that he and his

friends assumed the police were called to some other emergency and that the officers were flashing their car lights to signal that they needed to pass. *Id.* Tahj Pierre thus turned down a side street to allow the officers to continue along the narrow road they were driving along. Plaintiff alleges that he was surprised when the officers turned down the same side street. *Id.* Officer Wheeler then ordered the driver, Tahj Pierre, to pull over and exit the car with his hands up. *Id.* Tahj Pierre quickly complied, pulling over near a neighborhood elementary school and exiting the BMW with his hands up. *Id.* at 15-16.

As Tahj Pierre did so, Plaintiff put his hands out the car window to show he was unarmed, and L.M. moved his head outside of the window to see what was happening. *Id.* at 16. Plaintiff alleges that he and his friends saw that both officers were brandishing firearms at them. *Id.* Officers Wheeler and Pierre dispute this fact, both alleging that neither drew a weapon. R. Doc. 22-18 at 3; R. Doc. 22-5 at 11. Officer Wheeler testified in his deposition that he raised a flashlight, rather than a gun, in the direction of Plaintiff. R. Doc. 22-5 at 8.

Plaintiff alleges that, attempting to remain calm, he asked the officers the reason for the stop. Officer Wheeler stated that he had run a license plate check showing that the car was registered to a woman in New Orleans East, a neighborhood located about 10 miles across the city. *Id.* at 17. Officer Wheeler allegedly demanded to know what the group was doing in this neighborhood. *Id.* Plaintiff explained that he resided in the neighborhood, that Tahj Pierre was visiting, and that the car was registered to Tahj Pierre's mother, who lived in New Orleans East. *Id.*

Plaintiff suggested that Officer Wheeler check the address on Tahj Pierre's driver's license. *Id.* Plaintiff stated that the address on the license would match the address on the car registration. *Id.* at 17. Tahj Pierre then produced his license. Officer Wheeler took his license and

returned to his patrol car. *Id.* Meanwhile, Plaintiff alleges, Officer Pierre "kept his weapon up, providing cover." *Id.* When Officer Wheeler returned from his vehicle, Plaintiff alleges, "his whole demeanor changed." *Id.* at 17. Officer Wheeler asked Plaintiff to repeat the details about the lost dog and to provide his address. Officer Wheeler allegedly then said, "I thought you guys were yanking my chain," adding, in an attempt at a joke, "you know, three young men, in a nice car, in this neighborhood." *Id.* The officers allowed Plaintiff, Tahj Pierre, and L.M. to leave. *Id.* at 18. The stop lasted less than five minutes.

### 1. Claims

Plaintiff Hankins filed the present lawsuit, asserting the following claims: (1) excessive force under the Fourth and Fourteenth Amendments against Officers Wheeler and Pierre; (2) unreasonable seizure under the Fourth and Fourteenth Amendments against Officers Wheeler and Pierre; (3) conspiracy to violate Plaintiff's Fourth and Fourteenth Amendments against Officers Wheeler and Pierre; (4) failure to train, supervise, and discipline Officers Wheeler and Pierre against Defendants Hurstville, HANO, Southeast Louisiana Flood Protection Authority – East ("SLFPA-E"), and Kerry Najolia, Michael Brenckle, Darnell Laurent, Thaddeus Petit, Jamel Brown, Carl Perilloux, Tyrone Martin, Demetrius Jackson, Tommy Mercadal, Leontine Mullins; (5) *Monell* violations for policies, patterns, or practices that subjected Plaintiff to an unreasonable search and excessive use of force against Hurstville, HANO and SLFPA-E; (6) aggravated assault against Officers Wheeler and Pierre; (7) assault against Officers Wheeler and Pierre; (8) intentional infliction of emotional distress against Officers Wheeler and Pierre; (9) negligent infliction of emotional distress against Officers Wheeler and Pierre. *Id.* at 25-34; and (10) negligent hiring/supervision against Hurstville, Defendant Perilloux, and SLFPA-E for

negligence in hiring and supervision of Officers Wheeler and Pierre. The other occupants of the vehicle are not parties to the lawsuit.

In answer, Defendants HANO, Lieutenant Tyrone Martin, Sergeant Demetrius Jackson, Sergeant Tommy Mercadal, and Sergeant Leontine Mullins (collectively, "HANO Defendants") generally deny liability, contending, among other things, that they have no duty to Plaintiff. R. Doc. 91. HANO specifically denies that Officer Pierre was working within the course and scope of his employment with HANO at the time of the alleged incident. *Id.* at 5.

Defendant Hurstville and Officers Kevin Wheeler, Ramon Pierre, and Carl Perilloux (collectively, "Hurstville Defendants"), along with SLFPA-E and Officers Kerry Najolia, Michael Brenckle, Darnell Laurent, Thaddeus Petit, and Jamel Brown (collectively, the "SLFPA-E Defendants") deny liability, deny that Officer Wheeler was employed by the Orleans Levee District Police Department during the time of the incident, and assert the defense of qualified immunity of Officer Wheeler. R. Doc. 90 at 6.

## II.    PRESENT MOTIONS

Defendants filed the present motions for summary judgment, arguing that Officers Wheeler and Pierre did not violate the Plaintiff's constitutional rights, that there is no supervisory liability for the superior officers, and that Officers Wheeler and Pierre are entitled to qualified immunity because their stop of Plaintiff was reasonable and they did not use excessive force in their interactions with him.

Furthermore, the SLFPA-E Defendants claim that, because Officer Wheeler was working a detail for Hurstville, and was not "on the clock" for SLFPA-E when the challenged conduct occurred, SLFPA-E Defendants had no supervisory liability over him and thus cannot be liable for any violation of Plaintiff's constitutional rights even if the officers violated his rights.

Similarly, the HANO Defendants argue that they are entitled to qualified immunity regarding Plaintiff's negligent hiring and supervision claim. They argue that none of the HANO Defendants were present during the challenged conduct, and none had any responsibility for the hiring of Officer Pierre. R. Doc. 142-1 at 12.

Finally, the SLFPA-E Officers and Hurstville Officers argue that Plaintiff's state law claims should be dismissed under Louisiana's discretionary immunity statute or that this Court should decline to exercise jurisdiction over them if it dismisses Plaintiff's federal law claims.

## III.   APPLICABLE LAW

### A.  Summary Judgment Standard

Summary judgment is proper if the pleadings and the evidence gathered in discovery "show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (citing Fed. R. Civ. P. 56(c)). "Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which the party will bear the burden of proof at trial." *Id.* The moving party bears the burden of "informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." *Id.* at 323.

"A factual dispute is 'genuine' if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. A fact is 'material' if it might affect the outcome of the suit under the governing substantive law." *Beck v. Somerset Techs., Inc.*, 882 F.2d 993, 996 (5th Cir. 1989) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). When ruling on a motion for summary judgment, a court may not resolve credibility issues or weigh evidence.

*Delta & Pine Land Co. v. Nationwide Agribusiness Ins. Co.*, 530 F.3d 395, 398-99 (5th Cir. 2008); *Int'l Shortstop, Inc. v. Rally's Inc.*, 939 F.2d 1257, 1263 (5th Cir. 1991). Moreover, the court must assess the evidence and "review the facts drawing all inferences most favorable to the party opposing the motion." *Reid v. State Farm Mut. Auto. Ins. Co.*, 784 F.2d 577, 578 (5th Cir. 1986). However, "conclusory allegations," "unsubstantiated assertions," or "only a scintilla of evidence" are not sufficient to show a genuine dispute of material fact. *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994).

### B.  Qualified Immunity

For lawsuits brought against public officials under 42 U.S.C. § 1983, the Supreme Court has established the doctrine of qualified immunity. The doctrine aims "to balance two competing societal interests: 'the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably.'" *Joseph ex. rel. Est. of Joseph v. Bartlett*, 981 F.3d 319, 328 (5th Cir. 2020) (quoting *Pearson v. Callahan*, 555 U.S. 223, 231 (2009)). When this immunity from suit is invoked, the summary judgment burden shifts from the public official-defendant—that is, the moving party on whom the burden traditionally rests—to the plaintiff. *Id.*

As a preliminary matter, "[to] even get into the qualified-immunity framework, the government official must 'satisfy his burden of establishing that the challenged conduct was within the scope of his discretionary authority.'" *Sweetin v. City of Tex.*, 48 F.4th 387, 392 (5th Cir. 2022) (citing *Cherry Knoll, L.L.C. v. Jones*, 922 F.3d 309, 318 (5th Cir. 2019)). "An official acts within his discretionary authority when he performs non-ministerial acts within the boundaries of his official capacity." *Cronen v. Tex. Dep't of Human Servs.*, 977 F.2d 934, 939 (5th Cir. 1992). Courts "look to state law" to determine whether an official was acting within the

scope of his duties. *Sweetin*, 48 F.4th at 392.

After an officer shows that he was acting pursuant to his discretionary authority, there are two prongs which a plaintiff must overcome in order to defeat summary judgment. First, the plaintiff must demonstrate that the actor claiming immunity violated his constitutional or statutory right. Second, the plaintiff must show that the "violated right was 'clearly established' at the time of the alleged violation." *Id.* at 329. "'Clearly established' means that, at the time of the officer's conduct, the law was sufficiently clear that every 'reasonable official would understand that what he is doing is unlawful.'" *Dist. of Columbia v. Wesby*, 138 S. Ct. 577, 590 (2018) (internal quotation marks omitted). The Supreme Court has "repeatedly stressed that courts must not define clearly established law at a high level of generality, since doing so avoids the crucial question whether the official acted reasonably in the particular circumstances that he or she faced.'" *Wesby*, 138 S. Ct. at 590 (internal quotation marks omitted).

In sum, when a public official makes a good-faith invocation of qualified immunity, it is the plaintiff's burden: (1) to demonstrate a genuine dispute of material fact and to show "that a jury could return a verdict entitling the plaintiff to relief for a constitutional [or statutory] injury," and (2) to show that the allegedly violated right was clearly established by "identify[ing] a case—usually, a body of relevant case law—in which an officer acting under similar circumstances . . . was held to have violated the Constitution." *Joseph*, 981 F.3d at 329 (quoting *Wesby*, 138 S. Ct. at 590).

This Court has the discretion to decide which of the two prongs of the qualified immunity analysis should be addressed first. *See Pearson*, 555 U.S. at 236.  In other words, the Court may choose to analyze the second prong—that is, the clearly established prong—immediately without first deciding whether there was a violation of rights. *See id.*

IV.    ANALYSIS

A. Discretionary Authority and Off-Duty Police Officers

At the outset, the Plaintiff argues that Officers Wheeler and Pierre are not eligible to claim the defense of qualified immunity in this instance, because neither officer was acting within his discretionary authority, per *Sweetin*, 48 F.4th at 392 ("Wylie was not acting within the scope of his discretionary authority because state law does not give a permit officer the authority to conduct [traffic] stops of any kind."). R. Doc. 152 at 13. In other words, Plaintiff argues that conducting a traffic stop and "brandishing a firearm" at Plaintiff does not fall under the statutory authority that Hurstville has to "provide or enhance security patrols in the district" under its enabling statute, La. Stat. Ann § 33:9091.11(E)(5).

Plaintiff further argues that the statutes that provide OLD and HANO officers jurisdiction within their own districts—La. Stat. Ann §§ 40:456.1(A); 38.326(A)(1)(a); (A)(2))—do not go so far as to cover the officers' actions while on Hurstville patrol. In pertinent part, Plaintiff argues, the HANO-related statute (applicable to Pierre) gives HANO the right to "appoint and commission peace officers who shall enforce laws, rules, and regulations to secure the protection of persons, properties, or interests relating to HANO." La. Stat. Ann § 40:456.1(A). Further, Plaintiff argues, Wheeler's status as a levee police officer did not give him the authority to seize Plaintiff because the jurisdiction of the levee district is limited to "on and off the levees, within the area of the levee district or levee and drainage district, and upon its surrounding waters." La. Stat. Ann § 38:326(A)(1)(a). Because Wheeler is a "special officer," Plaintiff argues, La. Stat. Ann § 40.1379.1(B) applies to him. That statute provides that:

> The special officer, when performing those tasks requiring a special officer's commission, shall have the same powers and duties as a peace officer; provided, however, that when not performing these tasks directly related to the special officer's commission, he shall be regarded as a private citizen and his commission

shall not be in effect.

Because he was not performing tasks "directly related" to his special officer commission, Plaintiff argues, Wheeler should be regarded as a private citizen. R. Doc. 151 at 15-16.

However, the Fifth Circuit extends qualified immunity to police officers working for a private employer when off duty in at least some circumstances, generally in instances in which an off-duty officer is acting to "enforc[e] the general laws." *Davidson v. AT&T Mobility, LLC*, No. 3:17-CV-0006-D, 2019 U.S. Dist. LEXIS 19854, at *10 (N.D. Tex. Feb. 7, 2019); *see also, e.g., Morris v. Dillard Dep't Stores, Inc.*, 277 F.3d 743, 755 (5th Cir. 2001) (an off-duty police officer was entitled to qualified immunity after arresting a plaintiff while working as a store security guard). *Compare Delcambre v. Delcambre*, 635 F.2d 407, 408 (5th Cir. 1981) (dismissing a § 1983 claim involving an assault by an on-duty officer, because the assault "arose out of an argument over family and political matters and [the plaintiff] was neither arrested nor threatened with arrest").

It should be noted that much of this Fifth Circuit jurisprudence is based explicitly on Texas law, as these cases specifically state that "[u]nder Texas law, 'off-duty' status is not a limitation upon his or her discharge of police authority in the presence of criminal activity." *Defrates v. Podany*, 789 F. App'x 427, 431 n.2 (5th Cir. 2019) (citing *Laughlin v. Olszewski*, 102 F.3d 190, 192 n.1 (5th Cir. 1996)).

However, in Louisiana, district courts have also focused on the question of whether an officer is acting under the color of state law to evaluate if qualified immunity can be invoked for an off-duty officer. For example, in *Levens v. Gaspard*, an off-duty sheriff's deputy was eating at a barbecue restaurant when a party bus full of intoxicated passengers entered the restaurant. No. 21-35, 2023 U.S. Dist. LEXIS 40350, at *2 (E.D. La. Mar. 10, 2023). One intoxicated patron

began arguing with the restaurant owner. *Id.* After the restaurant owner asked the patron to leave, the off-duty officer grabbed the patron and moved him to the door of the restaurant, at which point the patron fell down. *Id.* at *3. The plaintiff alleged that the off-duty officer had forcibly restrained him and did not identify himself as a police officer. *Id.* at *3-4. The off-duty officer argued that he was entitled to qualified immunity because he was acting under color of state law, even though he was "off-duty and out of uniform at the time of the incident." *Id.* at *8.

The *Levens* court applied the Fifth Circuit's test for "under color of state law," which asks "(1) whether the officer misuse[d] or abuse[d] his official power, and (2) if there is a nexus between the victim, the improper conduct, and [the officer's] performance of official duties."  2023 U.S. Dist. LEXIS 40350, at *8 (citing *Bustos v. Martini Club Inc.*, 599 F.3d 458, 464-65 (5th Cir. 2010)). Even though the officer in *Levens* was off duty and out of uniform, "[b]ecause Plaintiff admitted in his deposition that he knew Gaspard was a sheriff's deputy and because Gaspard called for other sheriffs as backup, the Court agrees with the parties and finds that Gaspard was acting under color of state law." *Id; see also Cobb v. Jones*, No. 14-0745, 2015 U.S. Dist. LEXIS 135067, at *6 (W.D. La. Oct. 2, 2015) (holding that an off-duty police officer was clearly acting under state law because "it is undisputed that [the officer] seized Plaintiff by tackling him, handcuffing him and preventing him from moving freely until officers from the Natchitoches Police Department arrived at the scene").

In the present case, there is no dispute of material fact as to whether Defendants were acting under color of state law when they stopped Plaintiff and his companions. Both have officer commissions that give them law enforcement authority in the area where the traffic stop took place. *See* La. R.S. 40:456.1(D); La. R.S. 38:326(a). Furthermore, Plaintiff testified that he approached Officer Wheeler because he believed him to be a police officer, and Officers

Wheeler and Pierre ran a license plate check on Tahj Pierre's car and conducted the stop in their capacity to "enforc[e] the general laws" rather than as part of any private or personal mission. Finding that the officers were acting within their "discretionary authority," this Court turns to its analysis of whether the Defendants violated Plaintiff's constitutional rights during the stop.

## B. Plaintiff's Fourth Amendment Claims

### 1. Unreasonable Seizure/the Traffic Stop

"[W]henever a police officer accosts an individual and restrains his freedom to walk away, he has 'seized' that person." *Terry v. Ohio*, 392 U.S. 1, 16 (1968). In determining whether a seizure was reasonable, "we look to the totality of the circumstances, balancing 'the nature and quality of the intrusion on the individual's Fourth Amendment interests against the countervailing governmental interests at stake.'" *Stephenson v. McClelland*, 632 F. App'x 177, 184 (5th Cir. 2015) (citing *Graham v. Connor*, 490 U.S. 386, 396-97 (1989)).

The Supreme Court held in *Terry v. Ohio* that a temporary investigative stop of an individual is constitutionally allowed if it is based on reasonable suspicion of criminal activity. 392 U.S. at 88. A police officer may initiate a traffic stop if he or she has "an objectively reasonable suspicion that some sort of illegal activity, such as a traffic violation" has occurred. *United States v. Bams*, 858 F.3d 937, 942 (5th Cir. 2017). An officer's reasonable suspicion of criminal activity asserted to justify a *Terry* stop must be grounded on a "particularized and objective basis" and "the totality of the circumstances—the whole picture—must be taken into account." *United States v. Cortez*, 449 U.S. 411, 417 (1981); *see also United States v. Silva*, 957 F.2d 157, 160 (5th Cir. 1992) ("The presence or absence of reasonable suspicion must be determined in light of the totality of the circumstances confronting a police officer, including all information available to the officer at the time of the decision to stop a person."). "Reasonable

suspicion must be supported by particular and articulable facts, which, taken together with rational inferences from those facts, reasonably warrant an intrusion." *United States v. Michelletti*, 13 F.3d 838, 840 (5th Cir. 1994).

Under *Terry*, after an initial stop, the officer's actions must be "reasonably related in scope to the circumstances that justified the stop of the vehicle in the first place," and the "stop must be temporary and last no longer than is necessary to effectuate the purpose of the stop, unless further reasonable suspicion, articulated by reasonable facts, emerges." *Bams*, 858 F.3d at 942 (quoting *United States v. Andres*, 703 F.3d 828, 832 (5th Cir. 2013)). "The constitutionally tolerable duration of any seizure 'is determined by the seizure's mission.'" *United States v. Portillo-Saravia*, 379 F. Supp. 3d 600, 613 (S.D. Tex. 2019) (quoting *Rodriguez v. United States*, 575 U.S. 348, 354 (2015)). The mission of a traffic stop is "to address the traffic violation that warranted the stop . . . and attend to related safety concerns." *Rodriguez*, 575 U.S. at 354 (citation omitted).

Defendants allege that, near midnight, Officer Wheeler saw the Plaintiff's car driving slowly, with passengers "hanging out the windows of the vehicle." R. Doc. 142-1 at 9. Plaintiff alleges that neither he nor the other passengers of the car were hanging out of the windows, but agrees that the passengers were looking out of the side windows for the missing dog. R. Doc. 152 at 12. After that, neither party disputes that Plaintiff approached Officer Wheeler and told him he was looking for a lost dog. *Id.* Plaintiff alleges that during this exchange he gave his address to Officer Wheeler; Officer Wheeler alleges that this did not occur. R. Doc. 152 at 8; R. Doc. 142-2 at 2; R. Doc. 151-1 at 5. Neither party disputes that, subsequently, Plaintiff and his friend continued their search, proceeding slowly and at least looking out of the windows. Office Wheeler ran a license plate search on the car and discovered that, while it had not been reported

14

as stolen, it was registered to a woman at an address in New Orleans East. R. Doc. 151-1 at 5; R. Doc. 152 at 9. R. Doc. 152 at 9; R. Doc. 142-2 at 2. Officer Wheeler alleges that he then called Officer Pierre and had a discussion with him about whether to stop the car given "the late hour of the night, the history of vehicle break-ins in the neighborhood, [and] his personal experience seeing car burglars drive slowly along residential streets and hang out of car windows pulling on door handles of parked cars." R. Doc. 143-2 at 4.

Officer Pierre then drove to the scene in his personal truck, which was equipped with blue lights, and he started following the vehicle on Camp Street. Officer Pierre alleged that, at this time, he saw the front seat passenger "leaning out of the window in a manner consistent with an attempt to pull on car door handles." R. Doc. 151-1 at 6. Officer Pierre activated his blue light intending to pull the BMW over to conduct a stop. The BMW did not stop immediately and instead continued on and turned onto another street. The Plaintiff alleges that the driver thought that the officers were intending to pass them in order to proceed to another incident. R. Doc. 22 at 16. However, after Officers Wheeler and Pierre followed Plaintiff and his companions down the same side street, the BMW came to a stop and the officers conducted their stop.

To support his argument that the search was unreasonable, Plaintiff cites *Gonzalez v. Huerta*, in which the Fifth Circuit found a seizure to be unconstitutional when the police officer conducted a stop of a man and his daughter after receiving a report of a "suspicious" vehicle in a school parking lot where there was "a recent history of burglaries of motor vehicles at the same location." 826 F.3d 854, 857-58 (5th Cir. 2016). These two facts alone were not enough to constitute reasonable suspicion on the part of the seizing officer: "[T]he basic scenario of a reportedly suspicious person in an area where criminal activity had occurred in the past . . . does not support the conclusion that a particular individual is engaged in criminal conduct." *Id.* at 857.

The appeals panel noted that it would not "be unusual for a car to be legally parked in a school parking lot on a weekday afternoon as school employees are leaving for the day." *Id.*

In this instance, unlike in *Gonzalez*, Officers Wheeler and Pierre were not relying only on a report of a "suspicious" car in an area that had previous car break-ins. The facts are undisputed that the stop took place in the late evening, and that the car in which the Plaintiff sat was driving slowly. It is undisputed that, slightly before midnight, Plaintiff told Officer Wheeler that he and his companions were searching for a dog. The facts are undisputed that Officer Wheeler ran the vehicle's license plate before he stopped the car, and that he saw that it was registered to a woman who lived about 10 miles away from the location where the car was driving. Under the circumstances, Officers Wheeler and Pierre articulated a reasonable suspicion that criminal activity might be occurring. It is further undisputed that the stop took four minutes and twenty-seven seconds. This represents a reasonable time for Officers Wheeler and Pierre to speak with the Plaintiff and his companions and confirm the details of Tahj Pierre's license and the car he was driving before letting them continue their search. No one was arrested, handcuffed, or physically restrained. The Plaintiff, in fact, remained in the rear of the vehicle throughout the stop. He was never told to exit the vehicle or put up his hands.

Plaintiff argues that his affirmatively approaching Officer Wheeler and asking for help finding the dog should have obviated the need for any stop, but the officers did not believe the Plaintiff in view of the address of the car's registered owner and the late hour of the night. That interaction does not alter the other facts with which Officers Wheeler and Pierre were confronted when they chose to conduct the stop. This Court recognizes that being stopped by law enforcement officers when one is indeed following the law may be, at best, a disconcerting experience. However, in this instance Officers Wheeler and Pierre acted on their objectively

reasonable suspicion and then ended their interaction with Plaintiff in a reasonable amount of time, and apologized for the inconvenience of the stop.

This Court finds that there is no genuine dispute of material facts as to whether the Plaintiff was subjected to an reasonable seizure by Officers Wheeler and Pierre. Finding that the officers did not violate Plaintiff's constitutional rights when they stopped the car in which Plaintiff was traveling, the Court now turns to Plaintiff's excessive force claim.

## 2. **Excessive Force**

Claims of excessive force under the Fourth Amendment are also governed by a "reasonableness" standard "judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Graham v. Connor*, 490 U.S. 386, 397 (1989). "[T]he 'reasonableness' inquiry in an excessive force case is an objective one: the question is whether the officers' actions are 'objectively reasonable' in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation." *Id.* When officers detain an individual during the course of a traffic stop, they are "authorized to take such steps as [are] reasonably necessary to protect their personal safety and to maintain the status quo during the course of the stop." *Davila v. United States*, 713 F.3d 248, 260 (5th Cir. 2013) (citing *United States v. Hensley*, 469 U.S. 221, 235 (1985)). To prevail on a claim of excessive force, a Plaintiff must show "(1) an injury (2) which resulted from the use of force that was clearly excessive to the need and (3) the excessiveness of which was objectively unreasonable." *Rockwell v. Brown*, 664 F.3d 985, 991 (5th Cir. 2011). The second and third factors "collapse into a single objective-reasonableness inquiry" which is informed by "the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Peña v. City of Rio Grande City*,

879 F.3d 613, 619 (5th Cir. 2018) (citing *Graham v. Connor*, 490 U.S. 386, 396 (1989)).

Defendants argue that Plaintiff suffered a *de minimis* injury that cannot be proved by competent medical evidence; Defendants also argue that Officer Wheeler pointed a flashlight rather than a gun at the occupants of the car. Without any reference to a weapon, this would be a clear case of a constitutionally permitted *Terry* stop conducted without excessive force. The question posed by this case, however, is whether the pointing of guns at the car by Officers Wheeler and Pierre, if true, would alter the result and transform this stop into a prohibited seizure in which the officers employed an excessive use of force.

The Fifth Circuit has held that "pointing a gun can be reasonable given the circumstances, and that 'the momentary fear experienced by the plaintiff when a police officer point[s] a gun at him" does not necessarily rise to the level of a constitutional violation. *Crane v. City of Arlington*, 50 F.4th 453, 468 (5th Cir. 2022). In this case, accepting as true Plaintiffs' allegations that Offices Wheeler and Pierre pointed their weapons at the car for a brief period of time, this would not be sufficient to satisfy the requirements of an unreasonable stop and excessive use of force in the light of the totality of the circumstances, including the type of previous crime in the area, the late hour, the address of the car's registered owner, the slow-moving car with the windows open, and the driver's failure to immediately stop the vehicle when Officer Pierre activated his blue light.

Considering the second and third *Graham* factors, Plaintiff does not contest the time of the stop or the fact that Tahj Pierre failed to stop at first, allegedly because he did not realize that Officer Wheeler activated his light so that he would stop. Plaintiff does not allege that either officer moved closer to him or to his companions with a weapon, or that they verbally threatened the car's passengers with use of the guns. Plaintiff alleges that he and his companions did not

realize that they were being pulled over, and turned onto a side street to let Officer Wheeler pass, at which time they realized that they were being asked to pull over. The Court can credit this version of events while also recognizing that, to a reasonable officer, an initial failure to stop would not come across as "compliant" behavior.

Plaintiff cites *Flores v. Rivas* for the proposition that "it is objectively unreasonable for a police officer to brandish a deadly weapon at . . . compliant subjects." EP-18-CV-297-KC, 2020 WL 563799, at *7–9 (W.D. Tex. Jan. 31, 2020). However, in that case, an officer confronted a group of children playing outside a recreation center during a birthday party, threw one of the children to the ground, pointed his gun and shouted an expletive at them. *Id.* at *3. That case is very different than the one at issue here, in which Officers Wheeler and Pierre conducted a stop, late in the evening, of a motorist and his companions, driving slowly in a car registered to a woman who lived 10 miles away.

Nor do the facts of other cases cited by Plaintiff indicate that the drawing of guns— during a lawful *Terry* stop, while remaining at a distance from Plaintiff—would constitute excessive force sufficient to amount to a Fourth Amendment violation. The plaintiff cites *Manis v. Cohen*, a case in which an employee of a repossession agency arrived at the defendants' home to repossess their vehicle. The plaintiff in *Manis* alleged that, while he was waiting in his tow truck, one of the defendants—an off-duty police officer and the owner of the car—ran out of the home, "opened the passenger side door, got into the truck's cab, and aimed the gun at Plaintiff's head, all the while demanding that he 'drop' the repossessed unit." *Manis v. Cohen*, CIVIL ACTION NO. 3:00-CV-1955-P, 2001 U.S. Dist. LEXIS 19453, at *4 (N.D. Tex. Nov. 28, 2001). The Court's finding that Defendant had "no legal justification in using any force whatsoever" hinged on the facts of that case, in which a police officer held his gun to the head of an

individual who was lawfully repossessing his car. The use of force in *Cohen* is dissimilar to the case at hand, in which Defendants conducted a lawful stop of a car, which was owned by someone miles away, driving slowly around midnight with all occupants looking outside of their windows. Further, while Plaintiff alleges that the guns were pointed in the general direction of the car, he does not argue that either officer pointed a gun at him, approached him with a weapon, or ordered him out of the car.

In all, this Court concludes that, in light of the totality of the circumstances, it was reasonable for Defendants to point their guns at the car as they conducted a *Terry* stop late at night, in light of the totality of the circumstances that existed at the time. As a result, this Court finds that Officers Wheeler and Pierre did not violate Plaintiff's constitutional rights even if Plaintiff's allegations are true, and that Defendants are entitled to qualified immunity on the excessive force claim.

### C. Constitutional Conspiracy, Supervisory Liability and *Monell* Claims

Plaintiff's remaining federal claims all hinge on the constitutionality of the officers' actions. As a result, Plaintiff's claim that Officers Wheeler and Pierre engaged in a conspiracy to violate his rights must be dismissed. *See Curtis v. Sowell*, 761 F. App'x 302, 306 n.3 (5th Cir. 2019) ("[Plaintiff's] federal conspiracy claim cannot stand without an underlying constitutional violation."). In addition, "without an underlying constitutional violation . . .there can be no supervisory liability." *Perniciaro v. Lea*, 901 F.3d 241, 259 (5th Cir. 2018). The same is true of *Monell* claims for policies, patterns, or practices that result in constitutional violations. *Hicks-Fields v. Harris County*, 860 F.3d 803, 808 (5th Cir. 2017) ("As is well established, every *Monell* claim requires an underlying constitutional violation.").[1] Because the Court here finds no

---

[1] Neither set of Defendants directly addresses *Monell* liability for policies, patterns, or practice. This Court notes that, while claims for supervisory liability and policies, patterns, and practices often deal with overlapping sets of

underlying constitutional violation, it need not consider the argument by the HANO Defendants that Plaintiff's claims for failure to train and supervise fail because "Louisiana jurisprudence has established that an off-duty police officer working a private, paid detail is the employee of the company paying the detail, not of the entity by which he is otherwise employed." R. Doc. 161 at 7.

**D.  State Law Claims**

Defendants also ask that the Court dismiss the Plaintiff's state law claims, for aggravated assault against Officers Wheeler and Pierre; assault against Officers Wheeler and Pierre; intentional infliction of emotional distress against Officers Wheeler and Pierre; and negligent infliction of emotional distress against Officers Wheeler and Pierre. R. Doc. 143-2 at 24. Defendants argue that the state claims should be dismissed if the federal claims are dismissed, due to Louisiana's discretionary immunity statute; in the alternative, they ask that the Court decline to exercise supplemental jurisdiction if the federal claims do not survive. Plaintiff argues that summary judgment on these claims should be denied on the same testimony that supports summary judgment on the issues of § 1983 and qualified immunity. R. Doc. 151 at 30-32.

"A district court's decision whether to exercise [supplemental] jurisdiction after dismissing every claim over which it had original jurisdiction is purely discretionary." *Briley v. Barreca*, No. 20-907, 2021 U.S. Dist. LEXIS 15101, at *6 (E.D. La. Jan. 27, 2021) (citing *Carlsbad Tech., Inc. v. HIF Bio, Inc.*, 556 U.S. 635, 639 (2009)). Because this Court has dismissed the federal claims in this suit, it declines to exercise supplemental jurisdiction over the state law claims.

---

facts and actors, the Fifth Circuit analyzes them separately. *See Calhoun v. City of Hous. Police Dep't*, 855 F. App'x 917, 922 (5th Cir. 2021). Here, however, because the law is clear that neither claim can exist without an underlying constitutional violation, this Court need not disentangle Defendants' references to policies and patterns throughout their briefing on supervisory liability.

## V.    JUDGMENT

For the reasons above, **IT IS HEREBY ORDERED** that the Motions for Summary Judgment at R. Doc. 142 and R. Doc. 143 be **GRANTED** with regard to Plaintiff's excessive force, unreasonable seizure, conspiracy, failure to train or supervise, and *Monell* claims. The Court declines to exercise supplemental jurisdiction over the remaining state law claims, and dismisses those without prejudice.

New Orleans, Louisiana, this 6th day of September, 2023.

_____
**THE HONORABLE ELDON E. FALLON**
**UNITED STATES DISTRICT JUDGE**