UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

**BILAL HANKINS**                                      **CIVIL ACTION**

**VERSUS**                                             **NO. 21-1129**

**KEVIN WHEELER ET AL.**                               **SECTION "L"(1)**

## ORDER & REASONS

Before the court is a motion for summary judgment filed by Defendants Tyrone Martin, Demetrius Jackson, Tommy Mercadel, and Leontine Mullins (collectively, "the HANO Supervisors"). R. Doc. 192. Plaintiff Bilal Hankins opposes the motion. R. Doc. 198. The HANO Supervisors replied. R. Doc. 200. After considering the record, briefing, and the applicable law, the Court now rules as follows.

**I.    BACKGROUND**

This civil rights case arises out of a traffic stop whereby law enforcement officers working a part-time private security detail allegedly committed constitutional violations when conducting a traffic stop of three young Black teenagers. R. Doc. 1. Plaintiff Bilal Hankins alleges that on June 13, 2020, he was socializing with his friend, Tahj Pierre, at Hankins's residence in Uptown New Orleans. Shortly thereafter, his neighbor and her 12-year-old nephew, L.M., informed him that their dog was missing. Hankins, Pierre, and L.M. decided to search for the dog using Tahj Pierre's new BMW, which he had recently received as a high school graduation present from his mother. Tahj Pierre sat in the driver's seat, L.M. sat next to him in the front passenger seat, and Hankins occupied the rear driver's side seat. Tahj Pierre allegedly drove slowly down Camp Street heading west while the three called and whistled for the dog. *Id.*

1

After driving a few blocks, the group observed a police officer, Defendant Kevin Wheeler, sitting in his parked Orleans Levee District-Police Department ("OLD-PD") police car at the intersection of Camp and Valmont Streets and wearing an OLD-PD uniform. *Id.* Officer Wheeler was an off-duty employee of the OLD-PD who was working a private detail for the Hurstville Security and Neighborhood Improvement District ("Hurstville"), an entity that employs law enforcement officers to patrol the neighborhood. *Id.* at 5. Tahj Pierre allegedly drove alongside Officer Wheeler's vehicle while Hankins waved to him and asked if he had seen a dog. *Id.* at 13. When Officer Wheeler said no, Hankins explained that they were searching for his neighbor's dog, provided a description, and asked him to assist with the search. *Id.*

Hankins, Tahj Pierre, and L.M. then continued their search for the dog. Unbeknownst to the group, Officer Wheeler allegedly called Defendant Ramon Pierre for backup. Officer Pierre was an off-duty officer of the Housing Authority of New Orleans Police Department ("HANO"). *Id.* at 4. Like Officer Wheeler, Officer Pierre was working that night as a private patrol officer for Hurstville. He was in plain clothes and driving an unmarked vehicle. *Id.* at 13-14. Officer Wheeler informed Officer Pierre of his encounter with Hankins and his friends and allegedly expressed skepticism as to whether the group was truly searching for a dog. *Id.* Officer Wheeler allegedly based his suspicion on the slow speed at which Tahj Pierre was driving and his belief that "it was common for 'certain people' to drive slowly in search of potential targets for burglary and carjacking, leaning out of windows and pulling on car door handles to see if they were unlocked." *Id.* Officer Wheeler also allegedly ran a license plate check on Tahj Pierre's BMW, but the check showed that the vehicle had not been reported as stolen. *Id.*

The Officers, each in their respective vehicles, followed the group for several blocks and eventually turned on their flashing lights alerting them to stop. *Id.* at 14-15. Hankins and his friends

2

kept driving at the same slow speed because they initially did not believe that the flashing lights were for them given that they had just approached Officer Wheeler for help. *Id.* Instead, they assumed the police were called to some other emergency and that the Officers were signaling that they needed to pass. *Id.* Tahj Pierre thus turned down a side street to allow the Officers to continue along the narrow road they were driving along, but they turned down the same side street. *Id.* Officer Wheeler then allegedly shouted over his intercom for Tahj Pierre to exit the car with his hands up. *Id.* Tahj Pierre quickly complied, pulling over near a neighborhood elementary school and exiting the BMW. *Id.* at 15-16. As he did so, Hankins put his hands out the car window to show he was unarmed, and L.M. moved his head outside of the window to see what was happening. *Id.* at 16.

At this point, Hankins and his friends allegedly saw both Officers brandishing firearms at them, and they asked the Officers what the reason for the stop was. *Id.* Officer Wheeler stated that he had run a license plate check showing that the car was registered to a woman in New Orleans East, a neighborhood located across the city. *Id.* at 17. Officer Wheeler demanded to know what the group was doing in the Uptown area. *Id.* Hankins explained that he resided in the neighborhood, that Tahj Pierre was visiting, and that the car was registered to Tahj Pierre's mother who lived in New Orleans East. *Id.* Hankins suggested that Officer Wheeler check the address on Tahj Pierre's driver's license. Officer Wheeler took the license and returned to his patrol car. *Id.* Meanwhile, Officer Pierre allegedly "kept his weapon up, providing cover." *Id.* When Officer Wheeler returned from his vehicle, Hankins claims that "his whole demeanor changed." *Id.* at 17. Officer Wheeler asked Hankins to repeat the details about the lost dog and to provide his address. Officer Wheeler then allegedly said, "I thought you guys were yanking my chain," adding "you know, three young men, in a nice car, in this neighborhood." *Id.* The Officers then allowed Hankins, Tahj Pierre, and

3

L.M. to leave. *Id.* at 18. The whole incident lasted around four minutes, and Hankins, the sole Plaintiff in this case, remained in the car the entire time.

Hankins subsequently brought § 1983 unlawful seizure and excessive force claims against Officers Kevin Wheeler and Ramon Pierre; *Monell* liability claims against Hurstville, HANO, and SFLPA-E; and supervisory claims against each of the officers' supervisors at Hurstville, HANO, and SFLPA-E.[1] Additionally, Hankins alleged various state law claims, such as negligent infliction of emotional distress and negligent hiring. After limiting discovery to the issue of qualified immunity as to Officers Wheeler and Pierre, this Court found that there was no genuine issue of material fact as to whether there was a constitutional violation of either Hankins's right to be free from an unlawful seizure or his right to be free from excessive force under the Fourth and Fourteenth Amendments. R. Doc. 176. Accordingly, the Court granted summary judgment to the Defendants on all federal constitutional claims because each relied upon an underlying constitutional violation and dismissed all state law claims for lack of jurisdiction. *Id.*

On appeal, the Fifth Circuit reversed this Court's ruling and remanded the case for further proceedings. *Hankins v. Wheeler*, 109 F.4th 839 (5th Cir. 2024). The Circuit held that "material fact disputes" existed as to whether the Officers had reasonable suspicion of criminal activity, which precluded a summary judgment finding on both Hankins's unreasonable seizure and excessive force claims. *Id.* at 846. Effectively, the Circuit's holding requires a jury to determine whether Officers Wheeler and Pierre committed a constitutional violation against Hankins.

## II.     PRESENT MOTION

After the Circuit's decision was issued in August of 2024, the HANO Supervisors filed a Renewed Motion for Summary Judgment. R. Doc. 192. Each of the HANO Supervisors are law

---

[1] The other occupants of the vehicle, Tahj Pierre and L.M., did not join in this lawsuit and have not brought claims of their own against the Defendants.

4

enforcement officers who work at the HANO Police Department and supervise Officer Ramon Pierre in the course and scope of his employment at HANO. HANO is a separate Defendant and has not joined in this motion. Hankins sued the four HANO Supervisors in their individual capacities for failure to supervise, train, and discipline Officer Pierre, which he alleges was a contributing factor in causing the alleged constitutional violations against him.

The HANO Supervisors note that neither this Court nor the Fifth Circuit have reached the issue as to whether they, specifically, were entitled to qualified immunity regarding Hankins's supervisory claims. Rather, they assert the only legal question that has been addressed thus far is whether there was an underlying constitutional violation as it relates to the claims brought against Officers Wheeler and Pierre. Thus, the HANO Supervisors argue that this Court should decide their Renewed Motion for Summary Judgment because it is strictly limited to Hankins's claims against the HANO Supervisors for failure to supervise, train, and discipline.

### III.  APPLICABLE LAW

Summary judgment is proper when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The court must view the evidence in the light most favorable to the nonmovant. *Coleman v. Hous. Indep. Sch. Dist.*, 113 F.3d 528, 533 (5th Cir. 1997). Initially, the movant bears the burden of presenting the basis for the motion; that is, the absence of a genuine issue as to any material fact or facts. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The burden then shifts to the nonmovant to come forward with specific facts showing there is a genuine dispute for trial. *See* Fed. R. Civ. P. 56(c)*; Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986). "A dispute about a material fact is 'genuine' if the evidence is such that a reasonable jury could return a verdict for the

nonmoving party." *Bodenheimer v. PPG Indus., Inc.*, 5 F.3d 955, 956 (5th Cir. 1993) (citation omitted).

## IV.   ANALYSIS

The HANO Supervisors request that this Court declare that they are entitled to qualified immunity as to Hankins's: (1) failure to supervise, (2) failure to train, and (3) failure to discipline claims. As an initial matter, the Court must detail how the HANO Supervisors' qualified immunity defense operates and the overarching analysis utilized to determine if it is applicable in this case. "Qualified immunity shields government officials from civil damages liability unless the official violated a statutory or constitutional right that was clearly established at the time of the challenged conduct." *Heaney v. Roberts*, 846 F.3d 795, 801 (5th Cir. 2017) (quoting *Reichle v. Howards*, 566 U.S. 658, 664 (2012)). To determine whether an official is entitled to qualified immunity, the court must assess: "(1) whether the plaintiff has *alleged* a violation of a clearly established constitutional right; and (2) if so, whether the defendant's conduct was objectively reasonable in light of clearly established law at the time of the incident." *Jacobs v. W. Feliciana Sheriff's Dep't*, 228 F.3d 388, 393 (5th Cir. 2000) (emphasis added). For this reason, courts will not deny immunity unless "existing precedent . . . placed the statutory or constitutional question beyond debate." *Id.* at 741. Here, the Fifth Circuit's previous ruling indicates that Hankins has sufficiently alleged a violation of a clearly established right because the constitutionality of Officer Wheeler and Officer Pierre's actions during the alleged incident is shrouded in factual disputes. As such, the first element is no longer in dispute. Rather, the Court's decision will turn on whether the HANO Supervisors' conduct regarding the supervision, training, and discipline of their subordinate, Officer Pierre, was *objectively reasonable* given the law that existed in June of 2020 when the alleged incident occurred.

### A. The Court May Consider the HANO Supervisors' Motion.

Before analyzing each of Hankins's claims, the Court would like to acknowledge the Fifth Circuit has previously determined that certain disputed facts regarding the alleged unlawful seizure and excessive use of force precluded summary judgment as to Officers Wheeler and Pierre.[2] However, the Court finds that the Fifth Circuit's decision does not prevent it from ruling on the present motion. This is so because the Court can assess whether the HANO Supervisors are entitled to qualified immunity on these supervisory claims if it operates under the presumption that Hankins's constitutional rights were in fact violated by Officers Wheeler and Pierre as alleged. This approach allows the Court to consider the merits of the motion without forcing the HANO Supervisors to wait for a jury to evaluate Hankins's seizure and excessive force claims. Indeed, the Court's decision to proceed with the motion is in line with direct instruction from the Fifth Circuit that "a defendant's entitlement to qualified immunity should be determined 'at the earliest possible stage of the litigation.'" *Carswell v. Camp*, 54 F.4th 307, 312 (5th Cir. 2022) (quoting *Ramirez v. Guadarrama*, 3 F.4th 129, 133 (5th Cir. 2021)). Additionally, courts in other circuits have conducted a similar analysis as the one proposed here and ruled on an employer's qualified immunity defense to supervisory claims while the constitutionality of the involved officer's actions remained pending. *See Yatsko v. Brazzioli*, 2021 WL 5772527 at *1 (6th Cir. 2021) (upholding summary judgment in favor of a municipality even though the underlying facts surrounding the interaction between the plaintiff and the police officer were heavily disputed). The Court will thus proceed accordingly.

---

[2] The Court also notes that the Fifth Circuit has recently issued an opinion in *Martinez v. City of Rosenberg, Texas*, No. 23-20539 that addresses similar issues to those in this Court's prior summary judgment finding. However, that decision is not relevant to what is before the Court here. In *Martinez*, the Circuit affirmed the district court's finding that the officer who committed the alleged underlying constitutional violation was objectively unreasonable. But on this motion, the inquiry is limited to the HANO Supervisors' qualified immunity defense, which functions slightly differently and has not yet been determined by either the Circuit in its previous ruling or this Court.

### B. The HANO Supervisors Cannot Be Held Liable for a Failure to Supervise Officer Pierre Within the Context of His Secondary Employment Because They Had No Duty to Supervise Him.

The HANO Supervisors assert that they are entitled to qualified immunity on Hankins's failure to supervise claim. When a defendant invokes the defense of qualified immunity on summary judgment, the burden is on the plaintiff to demonstrate the inapplicability of the defense. *See Kitchen v. Dallas Cty.*, 759 F.3d 468, 476 (5th Cir. 2014). "Under section 1983, supervisory officials are not liable for the actions of subordinates on any theory of vicarious liability." *Thompkins v. Belt*, 828 F.2d 298, 303 (5th Cir. 1987). Rather, a supervisory official may be held liable only if "he affirmatively participates in the acts that cause the constitutional deprivation, or [] he implements unconstitutional policies that causally result in the constitutional injury." *Gates v. Tex. Dep't of Protective & Regul. Servs.*, 537 F.3d 404, 435 (5th Cir. 2008). For a supervisor to be found liable for a failure to supervise, the plaintiff must show (1) that the supervisor failed to supervise the subordinate official; (2) a causal link exists between the failure to supervise and the violation of the plaintiff's rights; and (3) the failure to supervise amounts to deliberate indifference. *Porter v. Epps*, 659 F.3d 440, 446 (5th Cir. 2011). However, before reaching issues such as causation and deliberate indifference, the Court must assess whether it is clearly established that a "supervisor would be liable for constitutional violations perpetrated by his subordinates *in that context*." *See Camilo-Robles v. Hoyos*, 151 F.3d 1, 6 (1st Cir. 1998) (emphasis added).

Here, the HANO Supervisors argue that they cannot be held liable for a failure to supervise because they had no duty to supervise in the first place. More specifically, they note that at the time of the alleged violation, Officer Pierre was working a second job with Hurstville. As such, they contend that there is no statutory or jurisprudential law that requires them to supervise their

8

officers while they work secondary jobs for other employers, such as private paid details. Hankins claims, however, that the HANO Supervisors' duty to supervise Officer Pierre is rooted in the text of the HANO Police Department Operations Manual (the "Manual"). For instance, the Manual requires HANO officers seeking paid detail work to get full permission from their supervisors and considers them to still be "representatives of the [HANO] Police Department" while on the other job. R. Doc. 197-15. Furthermore, he alleges that the HANO Supervisors' total lack of oversight evidences their "deliberate indifference" to his constitutional rights and ultimately contributed to the unlawful seizure and use of excessive force against him. After reviewing the applicable case law, the Court agrees with the HANO Supervisors for the following reasons.

**1. The HANO Supervisors Have No Legal Duty to Supervise Under Louisiana Law.**

Each of the HANO Supervisors have admitted in their respective depositions that they did not supervise Officer Pierre at all when he worked the Hurstville private detail in question. R. Doc. 197-6, R. Doc. 197-7, R. Doc. 197-8, R. Doc. 197-9; R. Doc. 197-10. However, the Court finds that this lack of supervision cannot supply Hankins a cause of action for a failure to supervise because the HANO Supervisors had no duty to supervise Officer Pierre while he was working for a different employer. At the time of the alleged incident in June of 2020, Louisiana jurisprudence consistently held that for purposes of liability, an off-duty officer working a private detail is the employee of the company paying the detail, not of the city or the police department. *See Wright v. Skate Country, Inc.*, 98-0217 (La. App. 4. Cir. 5/12/99); 734 So. 2d 874 ("A review of the caselaw on this issue reveals that only two cases . . . have been reported in the last quarter of the 20th century; both of those held that the governing body cannot be held liable."); *Duryea v. Handy,* 96–1018 (La. App. 4 Cir. 10/3/97), 700 So. 2d 1123; *Luccia v. Cummings,* 94–416 (La. App. 5 Cir. 11/16/94), 646 So. 2d 1142, *writ denied,* 94–2983 (La. 2/3/95), 649 So. 2d 406; *Kramer v.*

*Continental Casualty Co.,* 92–1131 (La. App. 3 Cir. 6/22/94), 641 So. 2d 557. Given courts have overwhelmingly found that the private hiring entity is legally responsible for an officer's actions in the course and scope of their secondary employment, it appears Hurstville has a duty to supervise Officer Pierre within the context of its own paid details, not the HANO Supervisors. The Court refuses to impose supervision requirements on HANO Supervisors where the law clearly indicates there is a lack of an employment relationship that can serve as a basis for such a duty.

### 2. HANO's Manual Cannot Establish a Duty to Supervise.

Further, the Court finds Hankins's contention that the Manual establishes the HANO Supervisors' duty to supervise to be unavailing. R. Doc. 197-15. While the Court acknowledges that the Manual implies HANO is more involved in its officers' paid detail work than meets the eye, these policies cannot, in and of themselves, establish a duty of supervision in light of the Fifth Circuit's decision in *Powers v. U.S.*, 783 F.3d 570 (5th Cir. 2015). In that case, the court considered whether the City of New Orleans was considered the employer of officers working off-duty details. *Id.* In affirming the district court's holding that paid detail work was not employment by the City, the court reasoned that the fact that an officer was required to "conduct himself in accordance with NOPD rules" did not transform his work for a private employer to public employment on behalf of the City. *Id.* It is an undisputed fact in the present case that the Manual requires Officer Pierre to act as a representative of HANO and subjects him to HANO procedures while working private details for Hurstville. However, *Powers* makes clear that such policies do not "transform" Officer Pierre's private work for Hurstville to public employment with HANO that would then impose supervision requirements. *See id.* The Manual thus cannot serve as the basis for the HANO Supervisors' duty to supervise as alleged by Hankins.

Rather, when addressing supervisory liability over secondary employment in the context

of a qualified immunity analysis, courts in other circuits have found that whether there is a duty to supervise is contingent upon citation to positive law. For example, in *Yatsko v. Graziolli*, the Northern District of Ohio assessed whether a city's police department could be held liable for an officer-involved shooting that took place while the officer worked as a security guard for another entity. 458 F.Supp.3d 702 (N.D. Ohio 2020). Despite the fact the officer was required to wear his city police uniform, carry his issued firearm, obtain approval from the police department, fill out a form to obtain approval, and submit a worker's compensation letter, the court granted the defendant's motion for summary judgment on the plaintiff's supervision claims. *Id.* at 710. The court reasoned that there was a lack of citation to law or evidence that the police department was required to supervise officers on paid details. *Id.* at 718. On appeal, the Sixth Circuit affirmed the district court's decision, noting the plaintiff relied "only on a conclusory assertion that the city requires its officers to comply with police rules and regulations on secondary employment and yet does not supervise those officers." *Yatsko*, 2021 WL 5772527 at *5 (6th Cir. 2021). Like the plaintiff in *Yatsko*, Hankins improperly places an emphasis on the Manual and general, conclusory assertions that a duty to supervise exists in this context. Yet, he has crucially failed to point the Court to any case law or statutory law that imposes liability on police departments for failing to supervise their officers while they work private, paid details. In fact, the law clearly indicates otherwise.

    **3. In the Event There is a Duty to Supervise, Hankins Still Cannot Meet the Deliberate Indifference Standard.**

Even if the HANO Supervisors did have a duty to supervise Officer Pierre while he was working secondary employment, Hankins's failure to supervise claim still fails because he does not present any facts indicating that they were deliberately indifferent to the risk of a constitutional violation. "Deliberate indifference is a stringent standard of fault, requiring proof that a municipal

11

actor disregarded a known or obvious action." *Estate of Davis ex rel. McCully v. City of N. Richland Hills*, 406 F.3d 375, 381 (5th Cir. 2005) (quoting *Bd. of Cty. Comm'rs of Bryan Cty. v. Brown*, 520 U.S. 397, 410 (1997) (alteration omitted)). Hankins contends that deliberate indifference can be shown by the mere fact that the HANO Supervisors do not supervise their employees working private paid details. However, there is a lack of specific evidence as to prior instances showing that Officer Pierre was likely to engage in unlawful activity against Hankins. For the same reasons discussed *infra* with respect to Hankins's failure to train claim, it thus cannot be said that the HANO Supervisors could have known, much less have been deliberately indifferent to the risk, that Officer Pierre would cause a constitutional violation using an unlawful stop or excessive force, assuming this was the case.

Accordingly, the Court concludes that the HANO Supervisors are entitled to qualified immunity on Hankins's failure to supervise claim because without a requisite duty to supervise established by law, there can be no liability.

### C. The HANO Supervisors Are Entitled to Qualified Immunity as to Hankins's Failure to Train Because Hankins Cannot Show Deliberate Indifference.

The Court next addresses the HANO Supervisors' assertion that they are entitled to qualified immunity with respect to Hankins's failure to train claim. Unlike the failure to supervise claim, the HANO Supervisors clearly had a duty to train Officer Pierre. When a police department allows its officers to engage in private detail work, it should only permit those who are properly trained on all matters relevant to policing to do so. The Court will thus presume that the HANO Supervisors had a requisite duty to properly train Officer Pierre before allowing him to work the Hurstville detail, which subjects them to potential liability. As such, the Court must now assess the reasonableness of the HANO Supervisors' actions regarding their training of Officer Pierre. *See Jacobs*, 228 F.3d at 393.

In order to succeed on a § 1983 claim for a failure to train, a plaintiff must show (1) that the supervisor failed to train the subordinate official; (2) a causal link exists between the failure to train and the violation of the plaintiff's rights; and (3) the failure to train amounts to deliberate indifference. *Porter*, 659 F.3d at 446. Therefore, Hankins cannot overcome the HANO Supervisors' qualified immunity without showing that their failure to train was objectively unreasonable in light of the requirement not to be deliberately indifferent to his rights. *Smith v. Carruth*, No. CV 15-4570, 2017 WL 785345, at *5 (E.D. La. Mar. 1, 2017); *see also Hare v. City of Conrinth, Miss.*, 135 F.3d 320, 327-28 (5th Cir. 1998) (explaining the "minimum standard not to be deliberately indifferent" informs whether a defendant acted objectively unreasonable); *Thompson v. Upshur Cty., TX*, 245 F.3d 447, 460 (5th Cir. 2001) (noting that when a defendant moves for summary judgment based on qualified immunity on deliberate indifference claims, plaintiff must show that "all reasonable officials similarly situated would have then known that the [failure to train]" constituted deliberate indifference in violation of the Constitution). Additionally, "for liability to attach based on an 'inadequate training' claim, a plaintiff must allege with specificity how a particular training program is defective." *Zarnow v. City of Wichita Falls*, 614 F.3d 161, 170 (5th Cir. 2010) (quoting *Roberts v. City of Shreveport*, 397 F.3d 287, 293 (5th Cir. 2005)). Indeed, "the focus must be on the adequacy of the training program in relation to the tasks the particular officers must perform." *Roberts*, 397 F.3d at 293. Here, Hankins specifically alleges that Officer Pierre lacked training related to racial profiling, reasonable suspicion, or what constitutes a valid and legal stop, in the year prior to the incident or of the incident.

1. **There is a Lack of Sufficient Evidence to Prove Officer Pierre Had a Past Pattern of Similar Violations.**

While the HANO Supervisors dispute the contention that Officer Pierre lacked training on these matters, the crux of their argument is that Hankins cannot establish the third element of his

failure to train claim: deliberate indifference. "Deliberate indifference is a stringent standard of fault, requiring proof that a municipal actor disregarded a known or obvious action." *See Estate of Davis*, 406 F.3d at 381 (5th Cir. 2005) (quoting *Bryan Cty.*, 520 U.S. at 410 (alteration omitted)). "Actions and decisions by officials that are merely inept, erroneous, ineffective, or negligent do not amount to deliberate indifference and do not divest officials of qualified immunity." *Id.* (quoting *Alton v. Tex. A&M Univ.*, 168 F.3d 196, 201 (5th Cir. 1999)). Deliberate indifference requires plaintiff to demonstrate the defendant had notice of "at least a pattern of similar violations arising from training or supervising that is so clearly inadequate as to be obviously likely to result in a constitutional violation." *Brumfield v. Hollins*, 551 F.3d 322, 329 (5th Cir. 2008) (internal modifications and quotation omitted). A plaintiff pointing "only to his own incident as proof of a policy of deliberate indifference" is generally insufficient. *Anokwuru v. City of Houston*, 990 F.3d 956, 966 (5th Cir. 2021). Further, "[f]or an official to act with deliberate indifference, the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Pompey v. Cheney*, 214 Fed. Appx. 463, 464 (5th Cir. 2007) (citing *Smith v. Brenoettsy*, 158 F.3d 908, 912 (5th Cir. 1998)).

Here, Hankins has provided the Court only two specific complaints involving Officer Pierre to establish deliberate indifference. The first occurred in 2015 when Officer Pierre violated internal HANO procedure by disobeying his supervisor's instructions to be at a specific spot on patrol. R. Doc. 197-13; R. Doc. 152 at 20-21. The second occurred in 2019 when Officer Pierre again violated internal HANO procedure but this time by failing to report his whereabouts to his supervisors in a timely manner. *Id.* However, the Court finds that this evidence is insufficient to show the HANO Supervisors acted with "deliberate indifference" with regard to a failure to train Officer Pierre. The Fifth Circuit has held that "[p]rior indications cannot simply be for any and all

'bad' or unwise acts, but rather must point to the specific violations." *Lewis v. Pugh*, 289 Fed. Appx. 767, 772-73 (5th Cir. 2008). As such, the incidents used to establish a past pattern of violations must be fairly similar to what ultimately transpired. *Anokwuru*, 990 F.3d at 966. Applying this rationale to present case, the Court concludes there are virtually no similarities between violations of internal police department procedure regarding location reporting and an unreasonable stop or excessive use of force. Unlike the incident involving Hankins, these past instances of insubordination do not: (1) involve the public citizens, (2) have anything to do with reasonable searches and seizures, or (3) pertain to racial profiling in any way. It thus cannot be said that the HANO Supervisors had knowledge that there was a risk of Officer Pierre committing constitutional violations like those allegedly visited upon Hankins. *See Estate of Davis*, 406 F.3d at 381 (5th Cir. 2005).

To the extent that Hankins relies on Officer Pierre's deposition testimony to establish a past pattern of violations, the Court finds that he is still unable to meet his high burden of showing deliberate indifference. At his deposition, Plaintiff's counsel specifically asked Officer Pierre if he "ever had a complaint filed against [him] . . . for [his] conduct during a stop," to which he answered in the affirmative. R. Doc. 197-4 at 65:1-17. However, no further testimony was elicited as to these past complaints because it appears Officer Pierre could not remember anything about them, and Hankins has not provided further details through any other form of evidence. *Id.* The Court simply has no information on when these alleged complaints were made, what the nature of the alleged complaints were, whether the complaints were resolved, or whether any of the HANO Supervisors even had any knowledge of the complaints. As such, the Court finds a generic assertion that complaints have been made, without something more, does not create a genuine issue of material fact to overcome summary judgment on qualified immunity. The Court's decision is further

supported by the fact other courts on summary judgment have held plaintiffs were unable to show deliberate indifference even where they provided far more exacting evidence of past violations than what is before the Court here. *See Dotson v. Edmonson*, 2018 WL 501512, at *12 (E.D. La. Jan 22, 2018) (rejecting a claim of pattern of practice where plaintiff only provided three prior incidents involving unlawful stops); *Lewis*, 289 Fed. Appx. at 769-770 (finding that plaintiff did not meet deliberate indifference standard where plaintiff provided specific evidence as to four prior excessive force and unlawful arrest claims); *Pineda v. City of Houston*, 291 F.3d 325, 330 (5th Cir. 2008) (finding a plaintiff must demonstrate that the supervisor whose alleged deliberate indifference caused the violation had actual or constructive knowledge of the pattern of similar violations). Furthermore, this lack of detail makes it impossible for the Court to endeavor in an analysis as to the similarity between these past non-specific complaints and the alleged incident involving Hankins as it did regarding Officer Pierre's violations of internal HANO procedures. The Court attempted to prompt Plaintiff's counsel for more information at both oral argument and multiple status conferences, but they indicated each time no further discovery was necessary and that the motion may be decided with the evidence as submitted. Thus, what the Court is left with is cursory, vague evidence that is insufficient to meet such a stringent standard as deliberate indifference.

### 2. The Facts Do Not Warrant an Application of Single Incident Liability.

Finally, the Court recognizes that in rare instances, a single incident of a constitutional violation might establish deliberate indifference. This exception exists only "where the facts giving rise to the violation are such that it should have been apparent to the supervisor that a constitutional violation was the highly predictable consequence of a particular policy or failure to train." *Burge v. St. Tammany Parish*, 336 F.3d 363, 373 (5th Cir. 2003). However, the Fifth Circuit has clarified

that single-incident liability is a narrow exception and "is generally reserved for those egregious cases in which the state actor was provided no training whatsoever." *Anokwuru*, 990 F.3d at 966; *see also City of Canton v. Harris*, 489 U.S. 378 (1989) (finding of deliberate indifference where officer had rudimentary first-aid training but not enough to recognize a serious illness); *Brown v. Bryan Cty.*, 219 F.3d 450 (5th Cir. 2000) (holding sheriff's failure to train amounted to deliberate indifference due to his knowledge of the officer's "youth [and] inexperience"). Here, the Court finds that on these facts, single-incident liability is not warranted. Unlike those cases where courts found the exception applied, it is undisputed that Officer Pierre had years of experience working as a HANO officer and continued to receive extensive training. For instance, the Court notes that Officer Pierre's records indicate he was in compliance with La. R.S. 40:2404.2 every year including 2020 when the incident involving Hankins occurred. R. Doc. 192-2; R. Doc. 192-9 at ¶¶ 14, 15, 16; R. Doc. 192-10; R. Doc. 192-11. This law notably requires peace officers to receive 20 hours of training annually on topics including "de-escalation, bias policing recognition, sudden in-custody death, and crisis intervention training." La. Stat. Ann. § 40:2404.2(c). The Court thus concludes this is not a situation where there has been such an "egregious" lack of training to justify the limited application of single-incident liability.

   Accordingly, the HANO Supervisors are entitled to qualified immunity on Hankins's failure to train claim. Because Hankins cannot show that they were deliberately indifferent to his rights with respect to Office Pierre's training, the HANO Supervisors did not act objectively unreasonable as a matter of law. *See Hare,* 135 F.3d at 327-28 (noting a plaintiff's failure to meet deliberate indifference means they cannot show a defendant was objectively unreasonable).

### D. The HANO Supervisors Are Entitled to Qualified Immunity Because an After-the-Fact Failure to Discipline Cannot Be the Moving Force of the Constitutional Violations Against Hankins.

Lastly, the Court addresses the HANO Supervisors' assertion of qualified immunity as to Hankins's failure to discipline claim. To establish that a supervisor is liable for an officer's constitutional violation on the basis of a failure to discipline, there must be a causal connection between a supervisor's action or inaction and "the constitutional deprivations visited on the plaintiff." *Berry v. McLemore*, 670 F.2d 30, 33 (5th Cir. 1982). Hankins asserts that HANO conducted nothing more than a cursory investigation of the incident. More specifically, he contends that the HANO Supervisors failed to record any interviews taken; take notes on statements; and only asked Officer Pierre three questions. The HANO Supervisors argue, however, that even if Hankins could demonstrate that they did not properly investigate or discipline Officer Pierre following the incident, an after-the-fact failure to investigate cannot possibly have been the cause of the earlier constitutional violation.

The Fifth Circuit has held that a single incident of a failure to discipline (even if proven) *following* the alleged constitutional violation cannot be the cause or "moving force" of the alleged incident. *Id.* Here, Hankins's failure to discipline claim appears to be entirely based on the alleged discipline or lack thereof that occurred *after* the incident involving him and Officer Pierre. The Court finds that such evidence is of no moment and agrees with the HANO Supervisors than after-the-fact failure to investigate cannot serve to make the HANO Supervisors liable for an earlier constitutional violation. There is simply no correlation, much less causation, between the alleged constitutional violations against Hankins and the deficiencies in the HANO Supervisors' investigation that occurred *afterward*. To find otherwise defies logic. Accordingly, the HANO Supervisors are also entitled to qualified immunity on Hankins's failure to discipline claim.

## V.     CONCLUSION

Considering the foregoing reasons;

**IT IS HEREBY ORDERED** that the HANO Supervisors' Renewed Motion for Summary Judgment, R. Doc. 192, is **GRANTED**. Hankins's failure to supervise, failure to train, and failure to discipline claims only with regard to Tyrone Martin, Demetrius Jackson, Tommy Mercadel, and Leontine Mullins are **DISMISSED** with prejudice.

New Orleans, Louisiana, this 23rd day of December, 2024.

_____
ELDON E. FALLON
UNITED STATES DISTRICT JUDGE