**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

| | | |
|---|---|---|
| **BILAL HANKINS** | * | **CIVIL ACTION NO. 21-1129** |
| | * | **JUDGE ELDON E. FALLON** |
| **VERSUS** | * | |
| | | **MAGISTRATE JUDGE** |
| | | **JANIS VAN MEERVELD** |
| **KEVIN WHEELER, ET AL.** | | |

\*     \*     \*     \*     \*     \*     \*     \*     \*

**ORDER & REASONS**

Before the Court is a Motion for Summary Judgment pursuant to of Federal Rule of Civil Procedure 56(a) filed by Defendant the Housing Authority of New Orleans ("HANO"). R. Doc. 292. Plaintiff Bilal Hankins opposed the motion. R. Doc. 304. HANO replied. R. Doc. 305. Having considered the briefing in light of the applicable law and record facts, the Court will GRANT HANO's Motion for the following reasons.

## I.    BACKGROUND

The Court has outlined the facts underlying this action in several previous orders and will thus enumerate here only the facts relevant to the present motion. This matter arises from alleged constitutional violations that occurred during an investigatory stop by law enforcement officers. On the evening of June 13, 2020, Officers Kevin Wheeler and Ramon Pierre were working a paid private security detail for the Hurstville Security District ("Hurstville"). R. Doc. 22 at 4. At the time, Officer Wheeler was primarily employed by the Orleans Levee District, and Officer Pierre was primarily employed by HANO. *Id.*

Hankins contends that, after an acquaintance lost her dog, he and several friends were driving around a New Orleans neighborhood searching for it at approximately one o'clock in the

morning. *Id.* at 2. During their search, they briefly encountered Officer Wheeler and asked him if he had seen a dog. *Id.* Suspicious of Hankin and his companions' activities in the neighborhood and explanation of their presence during the early morning hours, Officer Wheeler ran the vehicle's license plate and learned that it was registered to a woman who lived approximately fifteen miles away. *Id.* Officer Wheeler then contacted Officer Pierre and the two officers conducted an investigatory stop of the vehicle. Although the parties dispute the details of the encounter, they agree that the stop lasted approximately four minutes and Hankins was not asked to exit the vehicle.

Following the stop, Hankins's mother filed complaints with HANO and other entities. As part of a routine investigation, HANO Sergeant Jackson reviewed the incident and determined that the allegations of misconduct against Officer Pierre were not sustained. *See* R. Doc. 304-1 at 8.

Hankins subsequently filed suit in the United States District Court for the Eastern District of Louisiana against Officer Wheeler, Officer Pierre, HANO, and the HANO supervisors responsible for disciplining Officer Pierre, among other parties. The HANO supervisors moved for summary judgment, which this Court granted. R. Doc. 218. The Fifth Circuit ultimately affirmed the ruling. R. Doc. 279. However, HANO itself did not join that motion and therefore remains a defendant to this action.

As is relevant here, Hankins asserts *Monell* claims against HANO, alleging that HANO's policies, patterns, or practices subjected Hankins to excessive force and unreasonable search based on alleged failures train, supervise, and discipline Officer Pierre. R. Doc. 22 at 29–30.

## II.    PRESENT MOTION

In its Motion for Summary Judgment, HANO argues that (1) Hankins cannot establish that HANO's policies, patterns, or practices subjected Hankins to a violation of his constitutional

rights; (2) HANO had no duty to supervise Officer Pierre's secondary employment with Hurstville; and (3) Hankins cannot establish that HANO was deliberately indifferent to the need to train, supervise, or discipline Officer Pierre. R. Doc. 292-1.  Hankins opposed, arguing that genuine issues of material fact exist as to the constitutionality of HANO's policies, practices, or customs and whether these policies were a "moving force" behind Hankins's injury. R. Doc. 304. HANO replied, re-urging the same arguments presented in its original motion, and arguing that any facts remaining in dispute are not material. R. Doc. 305.

### III.    LEGAL STANDARD

#### a.  Summary Judgement

Summary judgment is appropriate if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "Material facts" are facts that might affect the outcome of the suit under the governing law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  A dispute about a material fact is "genuine" if the evidence is such that a reasonable jury could return a verdict for the non-moving party. *Id.* "The non-movant cannot satisfy the summary judgment burden with conclusory allegations, unsubstantiated assertions, or only a scintilla of evidence." *King v. Goebel*, No. CIV.A. 10-2708, 2012 WL 6482783 (E.D. La. Dec. 13, 2012) (*citing Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994)). "The party moving for summary judgment must demonstrate the absence of a genuine issue of material fact, but need not negate the elements of the non-movant's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The Court must resolve any factual controversies in favor of the nonmoving party, "but only when there is an actual controversy, that is, when both parties have submitted evidence of contradictory facts." *Little*, 37 F.3d at 1075 (5th Cir. 1994).

### IV.    DISCUSSION

### a. HANO Has No Duty to Supervise Secondary Employment

In its opinion affirming this Court's dismissal of Hankin's claims against the HANO supervisors, the Fifth Circuit held that Louisiana law imposes no duty upon HANO to supervise its employee officers while they are engaged in secondary employment with a separate entity. R. Doc. 279 at 6–7; see also *Wright v. Skate Country, Inc.*, 98-0217 (La. App. 4 Cir. 5/12/99), 734 So. 2d 874, 881; *Brasseaux v. Town of Mamou*, 99-1584 (La. 1/19/00), 752 So. 2d 815, 820 (holding that a municipal employer is not liable for an officer's conduct unless the officer was acting within the course and scope of municipal employment); *Powers v. U.S.*, 783 F.3d 570 (5th Cir. 2015) (holding that the fact that an officer was required to conduct himself in accordance with NOPD rules "did not transform his work for a private employer to employment on behalf of the city."). In support of his argument that material issues of fact preclude summary judgment on his *Monell* claim against HANO for failure to supervise Officer Pierre, Hankins relies on the deposition testimony of HANO Lieutenant Martin, who acknowledged at deposition that HANO does not supervise its employees while they are working for Hurstville or other entities. R. Doc. 304 at 17. But because HANO owes no duty to do so, HANO can have no liability for this lack of supervision. Accordingly, the entry of summary judgment in HANO's favor as to Hankin's *Monell* failure to train claim is appropriate.

### b. Hankins Cannot Establish that HANO was Deliberately Indifferent to the Need to Train or Discipline its Officers.

In order to impose liability upon a government entity for a constitutional violation under § 1983, a plaintiff must identify: (1) a policymaker; (2) an official policy or custom; and (3) a constitutional violation for which the policy or custom was the moving force. *Monell v. Dep't of Soc. Serv.*, 98 S. Ct. 2018, 2037 (1978). A municipality's failure to train or discipline its employees can rise to the level of a constitutional violation only where the plaintiff can demonstrate deliberate

4

indifference. *City of Canton, Ohio v. Harris*, 489 U.S. 378, 388 (1989). Deliberate indifference is a stringent standard, requiring proof that the municipality disregarded a known or obvious consequence of its actions. *Board of County Com'rs of Bryan County, Okl. v. Brown*, 520 U.S. 397, 410 (1997).

As to failure to train, the Supreme Court has instructed that "[i]n resolving the issue of a city's liability, the focus must be on the adequacy of the training program in relation to the tasks the particular officers must perform." *City of Canton,* 489 U.S. at 390. The Court further cautioned that "[t]hat a particular officer may be unsatisfactorily trained will not alone suffice to fasten liability on the city," because the officer's alleged shortcomings may result from factors unrelated to any deficiency in the municipality's training program. *Id.* at 390–91. Here, Hankins identifies no evidence of a deficient training program, no pattern of similar constitutional violations, and no facts demonstrating that HANO was deliberately indifferent to a known need for additional training. Instead, Hankins relies primarily on alleged deficiencies in Officer Pierre's conduct and speculation that additional training or supervision might have prevented the incident. But the Supreme Court has expressly rejected such reasoning, warning that virtually every plaintiff could identify something a municipality "could have done" to prevent an alleged constitutional violation. *Id.* at 391–92. Imposing liability on that basis would effectively impose *respondeat superior* liability upon municipalities, contrary to *Monell*. *Id.* at 392.

The same reasoning defeats Hankins's failure to discipline claim. The record contains no evidence that HANO maintained a policy or custom of disregarding officer misconduct. To the contrary, the evidence reflects that prior allegations of insubordination against Officer Pierre resulted in disciplinary measures, including reprimands and suspension. *See* R. Doc. 291-1 at 29. Nor does Hankins identify any pattern of similar incidents that would have placed HANO on notice

of a need for additional disciplinary action. At most, Hankins challenges the adequacy of HANO's response to the incident underlying this litigation. However, post-incident actions cannot themselves establish the deliberate indifference necessary to support municipal liability. *See, e.g., City of Okl. City v. Tuttle*, 471 U.S. 808, 824 (1985) (holding that "considerably more proof than the single incident" is necessary to establish fault on behalf of the government and casual connection). To hold otherwise would invite precisely the sort of "endless exercise of second-guessing municipal employee-training programs" that the Supreme Court cautioned against in *City of Canton*. 489 U.S.at 392.

Here, Hankins has produced no evidence of an official policy, widespread custom, or pattern of similar violations that would have placed HANO on notice of a need for additional training or discipline. Nor has Hankins identified evidence demonstrating that any alleged deficiency in HANO's practices was the "moving force" behind the alleged violation of Hankins's constitutional rights. Hankins thus fails to show that any genuine issue of material fact precludes the entry of summary judgment in HANO's failure as to his claims for *Monell* failure to train and discipline.

## V.    CONCLUSION

Accordingly, for the foregoing reasons,

**IT IS ORDERED** that HANO's Motion for Summary Judgment, R. Doc. 292, is **GRANTED**.

New Orleans, Louisiana, this 8th day of June, 2026.

THE HONORABLE ELDON E. FALLON