**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

| | | |
|---|---|---|
| **BILAL HANKINS** | * | **CIVIL ACTION NO. 21-1129** |
| | * | **JUDGE ELDON E. FALLON** |
| **VERSUS** | * | |
| | | **MAGISTRATE JUDGE JANIS VAN MEERVELD** |
| **KEVIN WHEELER, ET AL.** | | |

* * * * * * * *

**ORDER & REASONS**

Before the Court is a Motion for Summary Judgment pursuant to Federal Rule of Civil Procedure 56(a) filed by Defendants Michael Brenckle, Jamel Brown, Darnell Laurent, Kerry Najolia, Thaddeus Petit (collectively, the "SLFPA-E Officers") and Carl Perilloux. R. Doc. 321. Plaintiff Bilal Hankins opposes the motion, R. Doc. 329, and Defendants filed a reply memorandum in its support, R. Doc. 335. Having heard the parties at oral argument and having considered the briefing in light of the applicable law and record facts, the Court will GRANT IN PART and DENY IN PART Defendants' Motion for the following reasons.

## I. BACKGROUND AND PRESENT MOTION

The Court has outlined the facts underlying this action in several previous orders and will thus enumerate here only the facts relevant to the present motion. This matter arises from alleged constitutional violations that occurred during an investigatory stop by law enforcement officers. On the evening of June 13, 2020, Officers Kevin Wheeler and Ramon Pierre were working a paid private security detail for the Hurstville Security District ("Hurstville"). R. Doc. 22 at 4. At the time, Officer Wheeler was primarily employed by the Orleans Levee District, overseen by the

Southeast Louisiana Flood Protection Authority-East ("SLFPA-E") and Officer Pierre was primarily employed by the Housing Authority of New Orleans ("HANO"). *Id.*

Hankins contends that, after an acquaintance lost her dog, he and several friends were driving around a New Orleans neighborhood searching for it at approximately one o'clock in the morning. *Id.* at 2. During their search, they briefly encountered Officer Wheeler and asked him if he had seen a dog. *Id.* Suspicious of Hankin and his companions' activities in the neighborhood and explanation of their presence during the early morning hours, Officer Wheeler ran the vehicle's license plate and learned that it was registered to a woman who lived approximately fifteen miles away. *Id.* Officer Wheeler then contacted Officer Pierre and the two officers conducted an investigatory stop of the vehicle. *Id.* Although the parties dispute the details of the encounter, they agree that the stop lasted approximately four minutes and Hankins was not asked to exit the vehicle.

Hankins subsequently filed suit in the United States District Court for the Eastern District of Louisiana against Officer Wheeler, Officer Pierre, Hurstville, SLFPA-E, HANO, and the supervisors employed by those agencies who allegedly bore the responsibility for supervising and training Officers Wheeler and Pierre, among other parties. As is relevant to the instant motion, Hankins alleged that the agencies' supervisors violated 42 U.S.C. § 1983 due to their failure to train, supervise, and discipline Officers Wheeler and Pierre. R. Doc. 22 at 28–29. The HANO supervisors moved for summary judgment, which this Court granted. R. Doc. 218. The Fifth Circuit affirmed that ruling. R. Doc. 279. The supervising SLFPA-E Officers and Perilloux, the supervisor at Hurstville, now ask the Court to grant summary judgment in their favor as to Hankins's claims against them as well, arguing those claims fail for the same or similar reasons as Hankins's claims against the HANO supervisors. R. Doc. 321-1.

In their Motion for Summary Judgment, the SLFPA-E Officers argue that they are entitled to qualified immunity as to Hankins's claims that they failed to adequately supervise, train, or discipline Officer Wheeler. *Id.* at 1. Perilloux, as supervisor of Hurstville, for which Officer Wheeler and Pierre were performing a paid detail on the night of the subject incident, also claims that he is entitled to qualified immunity as to Hankins's claims that he failed to adequately supervise, train, or discipline Officers Wheeler and/or Pierre. *Id.* In opposition, Hankins argues that genuine issues of material fact preclude the entry of summary judgment in favor of Defendants. R. Doc. 329.

## II. LEGAL STANDARD

Summary judgment is appropriate if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "Material facts" are facts that might affect the outcome of the suit under the governing law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute about a material fact is "genuine" if the evidence is such that a reasonable jury could return a verdict for the non-moving party. *Id. "*The non-movant cannot satisfy the summary judgment burden with conclusory allegations, unsubstantiated assertions, or only a scintilla of evidence." *King v. Goebel*, No. CIV.A. 10-2708, 2012 WL 6482783 (E.D. La. Dec. 13, 2012) (*citing Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994)). "The party moving for summary judgment must demonstrate the absence of a genuine issue of material fact, but need not negate the elements of the non-movant's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The Court must resolve any factual controversies in favor of the nonmoving party, "but only when there is an actual controversy, that is, when both parties have submitted evidence of contradictory facts." *Little*, 37 F.3d at 1075 (5th Cir. 1994).

## III. DISCUSSION

"Qualified immunity shields government officials from civil damages liability unless the official violated a statutory or constitutional right that was clearly established at the time of the challenged conduct." *Heaney v. Roberts*, 846 F.3d 795, 801 (5th Cir. 2017) (quoting *Reichle v. Howards*, 566 U.S. 658, 664 (2012)). To determine whether an official is entitled to qualified immunity, the court must assess: "(1) whether the plaintiff has alleged a violation of a clearly established constitutional right; and (2) if so, whether the defendant's conduct was objectively reasonable in light of clearly established law at the time of the incident." *Jacobs v. W. Feliciana Sheriff's Dep't*, 228 F.3d 388, 393 (5th Cir. 2000). For this reason, courts will not deny immunity unless "existing precedent . . . placed the statutory or constitutional question beyond debate." *Id.* at 741. Here, the Fifth Circuit previous reversal of this Court's grant of summary judgment based on qualified immunity to Officers Wheeler and Pierre indicates that Hankins has sufficiently alleged a violation of a clearly established right. As such, the first element is no longer in dispute. Rather, the Court's decision will turn on whether Defendants' conduct regarding the supervision, training, and discipline of their subordinate, Officer Wheeler or Pierre, was objectively reasonable given the law that existed in June of 2020 when the alleged incident occurred.

### A. The SLFPA-E Officers

#### 1. Failure to Supervise

The SLFPA-E Officers assert that they are entitled to qualified immunity as to Hankins's claim relative to their alleged failure to supervise Officer Wheeler. When a defendant invokes the defense of qualified immunity on summary judgment, the burden is on the plaintiff to demonstrate the inapplicability of the defense. *See Kitchen v. Dallas Cty.*, 759 F.3d 468, 476 (5th Cir. 2014). "Under section 1983, supervisory officials are not liable for the actions of subordinates on any

theory of vicarious liability." *Thompkins v. Belt*, 828 F.2d 298, 303 (5th Cir. 1987). Rather, a supervisory official may be held liable only if "he affirmatively participates in the acts that cause the constitutional deprivation, or [] he implements unconstitutional policies that causally result in the constitutional injury." *Gates v. Tex. Dep't of Protective & Regul. Servs.*, 537 F.3d 404, 435 (5th Cir. 2008). For a supervisor to be found liable for a failure to supervise, the plaintiff must show (1) that the supervisor failed to supervise the subordinate official; (2) a causal link exists between the failure to supervise and the violation of the plaintiff's rights; and (3) the failure to supervise amounts to deliberate indifference. *Porter v. Epps*, 659 F.3d 440, 446 (5th Cir. 2011).

Here, as the Court previously held with reference to the HANO supervisors, the SLFPA-E Officers cannot be held liable for a failure to supervise Officer Wheeler within the context of his secondary employment with Hurstville because they had no duty to do so. *See* R. Doc. 218 at 8–10. At the time of the alleged incident in June of 2020, Louisiana jurisprudence consistently held that for purposes of liability, an off-duty officer working a private detail is the employee of the company paying the detail, not of the city or the police department. *See Wright v. Skate Country*, Inc., 98-0217 (La. App. 4. Cir. 5/12/99); 734 So. 2d 874 ("A review of the caselaw on this issue reveals that only two cases . . . have been reported in the last quarter of the 20th century; both of those held that the governing body cannot be held liable."); *Duryea v. Handy*, 96– 1018 (La. App. 4 Cir. 10/3/97), 700 So. 2d 1123; *Luccia v. Cummings*, 94–416 (La. App. 5 Cir. 11/16/94), 646 So. 2d 1142, writ denied, 94–2983 (La. 2/3/95), 649 So. 2d 406; *Kramer v. Continental Casualty Co.*, 92–1131 (La. App. 3 Cir. 6/22/94), 641 So. 2d 557. Hankins points to La. Rev. Stat. § 38:330.7(B) as the source of an alleged duty, which states that the SLFPA-E "may employ a superintendent of police security to supervise the police security personnel of all levee districts[.]" However, the permissive "may" used in that statute cannot be read to impose a duty to do so.

Moreover, as Defendants point out, La. Rev Stat. § 38:326(A)(1)(a) makes clear that the authority of levee district police is to be "responsible for maintaining order and exercising general police power on and off the levees, within the area of the levee district or levee and drainage district, and upon its surrounding waters." That is, levee district police officers are responsible for providing law enforcement functions within the district and while employed by that district. Accordingly, La. Rev. Stat. § 38:330.7 must be read to contemplate supervision by a superintendent of the levee police officers only while on duty and patrolling in the district on levee police business; it does not impose on the SLFPA-E Officers a duty to supervise their officers while engaged in secondary employment. Accordingly, the SLFPA-E Officers are entitled to the entry of summary judgment in their favor as to Hankins's claim for failure to supervise.

**2. Failure to Train**

In order to succeed on a § 1983 claim for a failure to train, a plaintiff must show (1) that the supervisor failed to train the subordinate official; (2) a causal link exists between the failure to train and the violation of the plaintiff's rights; and (3) the failure to train amounts to deliberate indifference. *Porter*, 659 F.3d at 446. Therefore, Hankins cannot overcome the SLFPA-E Officers' qualified immunity without showing that their failure to train was objectively unreasonable in light of the requirement not to be deliberately indifferent to his rights. *Smith v. Carruth*, No. CV 15-4570, 2017 WL 785345, at *5 (E.D. La. Mar. 1, 2017); *see also Hare v. City of Conrinth, Miss.*, 135 F.3d 320, 327-28 (5th Cir. 1998) (explaining the "minimum standard not to be deliberately indifferent" informs whether a defendant acted objectively unreasonable); *Thompson v. Upshur Cty., TX*, 245 F.3d 447, 460 (5th Cir. 2001) (noting that when a defendant moves for summary judgment based on qualified immunity on deliberate indifference claims, plaintiff must show that "all reasonable officials similarly situated would have then known that the [failure to train]"

constituted deliberate indifference in violation of the Constitution). Additionally, "for liability to attach based on an 'inadequate training' claim, a plaintiff must allege with specificity how a particular training program is defective." *Zarnow v. City of Wichita Falls*, 614 F.3d 161, 170 (5th Cir. 2010) (quoting *Roberts v. City of Shreveport*, 397 F.3d 287, 293 (5th Cir. 2005)). Indeed, "the focus must be on the adequacy of the training program in relation to the tasks the particular officers must perform." *Roberts*, 397 F.3d at 293. Moreover, to defeat qualified immunity, a plaintiff must show the supervisors knew of "a pattern of similar violations arising from training . . . that is so clearly inadequate as to be obviously likely to result in a constitutional violation." *Brumfield v. Hollins*, 551 F.3d 322, 329 (5th Cir. 2008).

Here, Hankins cannot meet his burden to show that any failure to train Officer Wheeler constituted deliberate indifference. Deliberate indifference is "a stringent standard of fault" requiring "more than negligence or even gross negligence." *Estate of Davis ex rel. McCully v. City of N. Richland Hills*, 406 F.3d 375, 379, 381 (5th Cir. 2005). Deliberate indifference requires the plaintiff to show the official actually knew of and consciously disregarded a substantial risk of serious harm. *Damond v. City of Rayville*, 127 F.4th 935, 940 (5th Cir. 2025). Hankins has not identified a pattern of unconstitutional stops, complaints of racial profiling, or similar misconduct by Officer Wheeler that could have put the SLFPA-E Officers on notice that Officer Wheeler and any deficit in his training constituted a substantial risk of serious harm. Hankins relies heavily on Officer Wheeler's previous termination from the New Orleans Police Department ("NOPD") to have provided this notice. However, prior conduct provides notice only when it is "fairly similar to what ultimately transpired." *Sanders-Burns v. City of Plano*, 594 F.3d 366, 381 (5th Cir. 2010). The incident occasioning Officer Wheeler's termination from the NOPD was not an investigatory stop, involved a taser rather than a gun, and did not contain any allegation of racial profiling. It

was thus not similar to the subject incident. Accordingly, nothing about the prior incident made it predictable that Wheeler would conduct an allegedly unlawful stop during a private security detail.

Moreover, a single dissimilar event cannot be construed as a "pattern of similar violations." *Brumfield*, 551 F.3d at 329. While single-incident liability has been recognized, that exception "is generally reserved for those cases in which the government actor was provided no training whatsoever." *Hutcheson v. Dallas Cnty.*, 994 F.3d 477, 483 (5th Cir. 2021). Defendants have provided evidence that Officer Wheeler completed all training that was required under Louisiana law, including instruction on use of force, firearms, and racial profiling, among others. *See* R.. Doc. 321-1 at 17. Hankins can therefore not rely on a theory of single-incident liability to prove his failure to train claim against the SLFPA-E Officers. The SLFPA-E Officers are entitled to the entry of summary judgment as to this claim.

**3. Failure to Discipline**

Hankins's failure to discipline claim against the SLFPA-E Officers fails on the same basis as does his failure to train claim. Claims based upon an alleged failure to discipline require, *inter alia*, a showing of deliberate indifference. *Porter*, 659 F.3d at 446. Officer Wheeler did not have any record of past similar incidents that could have put the SLFPA-E Officers on notice of any substantial risk of serious harm. Moreover, Hankins cannot rely on post-incident conduct to support this claim. *See Deville v. Marcantel*, 567 F.3d 156, 171 (5th Cir. 2009) (explaining that actions taken after an alleged constitutional violation cannot have caused that violation and cannot be the moving force behind a plaintiff's alleged injury). Accordingly, summary judgment in favor of the SLFPA-E Officers is appropriate as to Hankins's failure to discipline claim as well.

**B. Perilloux**

**1. Failure to Supervise**

Defendants argue that Hankins cannot establish supervisory liability against Perilloux on any theory because Perilloux was Hurstville's "detail coordinator, handled only scheduling, GPS review, and payroll" and "had no authority to train, investigate, or discipline" officers. R. Doc. 321-1 at 5. But as the employing entity, Hurstville unquestionably had a duty under Louisiana law to supervise Officers Wheeler and Pierre at the time of the subject incident. Although operating as Hurstville's supervising officer, Perilloux disclaimed supervising officers' conduct while they worked for Hurstville, knowing that no other individual or entity was supervising those officers. *See* R. Doc. 329 at 15. As Hankins argues, a reasonable jury could find that Perilloux exercised operational authority over the Hurstville detail and that his failure to provide any supervision whatsoever constituted deliberate indifference, is causally related to the subject incident, and was objectively unreasonable.[1] Accordingly, the Court will deny summary judgment as to Hankins's claim against Perilloux for failure to supervise.

**2. Failure to Train and Failure to Discipline**

Unlike Hankins's failure to supervise claim, Hankins's failure to train and failure to discipline claims against Perilloux cannot survive summary judgment for the same reasons that those claims against the SLFPA-E Officers must be dismissed. Hankins has not shown that there is any genuine issue of material fact precluding the Court from concluding that no reasonable jury could find that Perrilloux was deliberately indifferent to the need to train or discipline Officer

[1] At oral argument, Defendants averred that the supervisory void Plaintiff asserts this situation created does not exist, arguing that Hurstville operated as the supervisor of day-to-day operations, with the primary employing agency stepping in to supervise in the aftermath should an event necessitating the use of police power actually occur. Even if true, this system still provides no legally responsible party for supervision of police conduct during such an event itself. This supervisory void is especially clear given Defendants arguments that neither Hurstville and Perilloux nor Officers Wheeler and Pierre's primary employing agencies and their supervisors can be held liable for the subject incident.

Wheeler. Additionally, the Fifth Circuit has already affirmed this Court's holding that Officer Pierre's disciplinary history did not give rise to notice of a substantial risk of serious harm that could constitute deliberate indifference. R. Doc. 279 at 10–11. The entry of summary judgment is appropriate as to these claims.

## IV. CONCLUSION

Accordingly, for the foregoing reasons,

**IT IS ORDERED** that Defendants' Motion for Summary Judgment, R. Doc. 321, is **GRANTED IN PART** as to Hankins's federal claims raised against the SLFPA-E Officers and Hankins's failure to train and failure to discipline claims against Perilloux, and **DENIED IN PART** as to Hankins's claim against Perilloux for failure to supervise. The Court declines to dismiss Hankins' state law claims against any defendant at this time as that issue has not been adequately briefed.

New Orleans, Louisiana, this 17th day of September, 2026.



THE HONORABLE ELDON E. FALLON